Julie Cavanaugh-Bill (State Bar No. 11533)
Cavanaugh-Bill Law Offices
Henderson Bank Building
401 Railroad Street, Suite 307
Elko, NV 89801
(775) 753-4357
julie@cblawoffices.org

William Falk (Utah Bar No. 16678)
2980 Russet Sky Trail
Castle Rock, CO
(319) 830-6066
falkwilt@gmail.com

Terry J. Lodge (Ohio Bar No. 29271) *Pro Hac Vice Application To Be Filed*
316 N. Michigan St., Suite 520
Toledo, OH 43604-5627
(419) 205-7084
tjlodge50@yahoo.com

Attorneys for Reno-Sparks Indian Colony and Atsa koodakuh wyh Nuwu

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| WESTERN WATERSHEDS PROJECT, *et al.*,<br><br>Plaintiffs,<br><br>and<br><br>RENO-SPARKS INDIAN COLONY and ATSA KOODAKUH WYH NUWU/ PEOPLE OF RED MOUNTAIN<br><br>Plaintiff-Intervenor,<br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | ) Case No. 3:21-cv-103-MMD-CLB<br>)<br>) **RENO-SPARKS INDIAN**<br>) **COLONY AND ATSA**<br>) **KOODAKUH WYH NUWU**<br>) **COMPLAINT FOR VACATUR,**<br>) **EQUITABLE AND INJUNCTIVE**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1

<table>
<tr><td>Defendants</td><td>)</td></tr>
</table>

Defendants                              )
                                        )
and                                     )
                                        )
LITHIUM NEVADA CORP.                    )
                                        )
        Defendant-Intervenor            )
_____ )

## INTRODUCTION

1.  This action is brought under the National Historic Preservation Act (NHPA),
54 U.S.C. §§ 300101 *et seq.*, its implementing regulations and the
Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* Plaintiffs, Reno-Sparks
Indian Colony (RSIC) and Atsa koodakuh wyh Nuwu/People of Red Mountain,
challenge the Bureau of Land Management, Winnemucca District Office's (BLM)
and Defendant-Intervenor Lithium Nevada Corp.'s activities related to approving
the destruction of a massacre site; caves and stone outcroppings where Native
Americans sought refuge from American soldiers when those soldiers came to
force them on to reservations; ancient obsidian quarries used by Native
Americans for millennia; campsites used by Native Americans for millennia;
traditional food and medicine gathering grounds; traditional hunting grounds;
artifacts; and likely burial sites with Native American remains in Peehee mu'huh
in northern Nevada before completing the NHPA's Section 106 required
consultation process, as provided for at 36 Code of Federal Regulations (CFR)
Section 800, Protection of Historic Properties (2004). The original name for
Thacker Pass in the local Numic dialect spoken by members of Atsa koodakuh

2

wyh Nuwu/People of Red Mountain is "Peehee mu'huh," which will be used instead of "Thacker Pass."

2.  Specifically, Plaintiffs challenge BLM's failure to comply with the NHPA in issuing a Record of Decision (ROD) for the Thacker Pass Lithium Mine Project (the Project) without making a reasonable and good faith effort to identify Indian tribes that should have been consulted with because they attach religious and cultural significance to Peehee mu'huh, in contravention of 36 CFR § 800.2(c)(2)(ii)(A); without providing to Indian tribes who attach religious and cultural significance to Peehee mu'huh a reasonable opportunity to identify their concerns about historic properties, advise on the identification and evaluation of historic properties, articulate their views on the undertaking's effects on such properties, and participate in the resolution of adverse effects, also in contravention of 36 CFR § 800.2(c)(2)(ii)(A); without seeking and considering the views of the public in a manner that reflects the nature and complexity of the undertaking, in contravention of 36 CFR § 800.2(d)(1); and for issuing a ROD before a draft Memorandum of Agreement with the Nevada State Historic Preservation Officer (SHPO) was made available for public comment, in contravention of the 2014 BLM-SHPO State Protocol Agreement ("the Protocol").

3.  Despite these failures and pursuant to the illegal ROD, Defendant-Intervenor Lithium Nevada Corp. plans to begin physical disturbance including mechanical trenching operations of Peehee mu'huh to begin as early as July 29,

3

2021. Mechanical trenching operations will destroy traditional cultural and historic properties and will restrict subsequent consideration of alternatives to avoid, minimize, or mitigate the Project's adverse effects on historic properties. Because BLM has failed to comply with the NHPA, failed to adequately consult Indian tribes or the general public, and failed to offer the MOA for public comment, BLM cannot adequately avoid or mitigate adverse effects to traditional cultural and historic properties in Peehee mu'huh. Any physical disturbance of Peehee mu'huh must not happen until BLM is in compliance with the NHPA's Section 106 consultation process.

## JURISDICTION

4.  This Court has jurisdiction pursuant to 28 USC § 1331 as this action arises under the laws of the United States.

5.  An actual controversy exists between the parties within the meaning of 28 USC § 2201(a). This Court may grant declaratory relief and additional relief, including an injunction, pursuant to 28 USC §§ 2201, 2202 and 5 USC §§ 705, 706.

6.  BLM's failure to comply with the requirements of the NHPA, 54 U.S.C. §§ 300101 *et seq.*, is arbitrary, capricious, and not in accordance with the procedures required by law pursuant to the APA and is thus subject to judicial review. 5 USC §§ 701-706.

7.  BLM's failure to comply with the requirements of the NHPA, 54 U.S.C. §§

4

300101 *et seq.*, also constitutes agency action that is unreasonably delayed and/or unlawfully withheld as provided by Section 706(1) of the APA and is thus subject to judicial review. 5 USC §§ 701-706.

## VENUE

8.  Venue is proper in the District of Nevada pursuant to 28 U.S.C. §§ 1391(b) and (e). The BLM Winnemucca District Office and named Defendant Ester M. McCullough, who issued and signed the FEIS and ROD, are located in Winnemucca, Nevada. The Thacker Pass Lithium Mine Project is located in Humboldt County, Nevada. The Reno-Sparks Indian Colony is located in Reno and Sparks, Nevada. And, all of the members of Atsa koodakuh wyh Nuwu/People of Red Mountain are located and reside in Nevada.

## PARTIES

9.  Plaintiff Reno-Sparks Indian Colony ("RSIC") is a federally-recognized Tribe located in Reno and Sparks, NV. RSIC consists of 1,157 members from the Paiute, Shoshone, and Washoe Nations. Ancestors of RSIC tribal members traditionally hunted and gathered in Peehee mu'huh. RSIC has several residents, members, and employees that have direct cultural connections to Peehee mu'huh, who practice ceremony in Peehee mu'huh, who hunt and gather in Peehee mu'huh, and who plan on doing so in the future.  RSIC attaches cultural and religious significance to Peehee mu'huh.

10.      Plaintiff Atsa koodakuh wyh Nuwu (translates to People of Red

5

Mountain) is an unincorporated association of members of the Fort McDermitt Paiute and Shoshone Tribe. Atsa koodakuh wyh Nuwu members include traditional elders and spiritual leaders. Atsa koodakuh wyh Nuwu formed to preserve their ancestral teachings, maintain oral histories, and practice the traditions their people have practiced for generations. Atsa koodakuh wyh Nuwu regularly meets in Peehee mu'huh to perform ceremony; to gather traditional foods and medicines; to teach their members and the public about the traditional uses of plants, animals, and minerals found in Peehee mu'huh; to share oral histories involving the site – especially the history of the massacre of their ancestors that gave Peehee mu'huh its name and the history of how their ancestors hid in Peehee mu'huh to avoid American soldiers; to observe artifacts created by their ancestors; and to educate the public about the religious, cultural, and historic importance of Peehee mu'huh to their people. Atsa koodakuh wyh Nuwu plans on continuing to visit Peehee mu'huh to engage in similar activities in the future.

11.      Defendant Bureau of Land Management is the agency responsible for preparation, approval and delivery of the Thacker Pass Lithium Mine Project Record of Decision, the Memorandum of Agreement with the Nevada State Historic Preservation Officer, and compliance with the NHPA.

12.      Defendant Deb Haaland is the Secretary of the Interior and is sued in her official capacity.

13.      Defendant-Intervenor Lithium Nevada Corp. ("Lithium Nevada")

6

proposes to construct, operate, reclaim, and close the Thacker Pass Lithium Mine Project. Lithium Nevada has successfully intervened as a defendant in this case.

### Peehee mu'huh

14.     Peehee mu'huh is located within the traditional territories of the Nuwu (Northern Paiute) people.

15.     The Plaintiffs' oral histories teach them that the Creator placed them in their traditional territories "with the stones." This means the Plaintiffs believe their ancestors have lived in their traditional territories from time immemorial. Eben Declaration, ¶ 21.

16.     Peehee mu'huh is historically significant both to the Nuwu and to other Americans, in general. When American soldiers were rounding the Nuwu up to violently force them on to reservations, many of the Plaintiffs' ancestors hid in Peehee mu'huh. The many caves and stone outcroppings in Peehee mu'huh offered a good vantage point for the Nuwu to watch for the dust kicked up by the horses of approaching soldiers from either the Quinn River Valley to the east or the Kings River Valley from the west. The Fort McDermitt Tribe descends from essentially two families who, hiding in Peehee mu'huh, managed to avoid being sent to reservations farther away from their ancestral lands. Hinkey Declaration, ¶ 9.

17.     Some of the Plaintiffs' ancestors were massacred in Peehee

mu'huh. In fact, this massacre is how Peehee mu'huh got its name. Peehee mu'huh means rotten moon. Peehee mu'huh is named so because the Plaintiffs' ancestors were massacred there while the hunters were away. When the hunters returned, they found their loved ones, murdered, unburied, rotting, and with their entrails spread across the sage brush in a part of the Pass shaped like a moon. Hinkey Declaration, ¶ 7

18.     The Proposed Plaintiffs believe that to build a lithium mine over Peehee mu'huh, where their ancestors were massacred, would be like building a lithium mine over Pearl Harbor, Arlington National Cemetery, or the Gettysburg Battlefield. Hinkey Declaration, ¶ 8.

19.     Peehee mu'huh is spiritually sacred to the Nuwu, including the Plaintiffs, and other Native peoples across Nevada, western Idaho, southern Oregon and northeastern California. Eben Declaration, ¶ 13.

20.     The Plaintiffs believe that Peehee mu'huh is a singularly powerful spiritual place blessed by the presence of their ancestors, other spirits, and golden eagles – who they consider to be directly connected to the Creator. Hinkey Declaration, ¶ 6.

21.     Peehee mu'huh is essential to the survival of the Plaintiffs' traditions. Their traditions are tied to the land. When the land is destroyed, the Plaintiffs' traditions are destroyed. Hinkey Declaration, ¶ 14.

22.     Peehee mu'huh is home to many of the Plaintiffs' traditional foods.

Some of the last choke cherry orchards traditionally used by the Proposed

Plaintiffs are found in Peehee mu'huh. The Plaintiffs gather choke cherries in

Peehee mu'huh to make choke cherry pudding, one of the Plaintiffs' oldest

breakfast foods. Hinkey Declaration, ¶ 14.

23.     Peehee mu'huh is also a rich source of two of the Nuwu's traditional

staple foods: yampa (wild potatoes) and biscuit root. There are significant

patches of biscuit root throughout Peehee mu'huh and the Plaintiffs' ancestors

wild-tended these patches and grew biscuit root gardens. Hinkey Declaration, ¶

14.

24.     The Plaintiffs hunt groundhogs, rabbits, and mule deer in Peehee

mu'huh. Mule deer are especially important to the Plaintiffs as a source of meat,

but the Plaintiffs also use every part of a mule deer for things like clothing and for

drum skins in the Plaintiffs' most sacred ceremonies. Hinkey Declaration, ¶ 14.

25.     Peehee mu'huh is one of the last places where the Plaintiffs can find

their traditional medicines. CoVID-19 made Peehee mu'huh even more important

for gathering their medicines than before. Last summer and fall, when the

pandemic was at its worst on the Fort McDermitt Reservation, the Plaintiffs went

to Peehee mu'huh to gather toza root, which is known as one of the world's best

anti-viral medicines. In Peehee mu'huh, the Plaintiffs also gather ibi, a chalky

rock, for ulcers and both internal and external bleeding and old-growth sage

brush for a strong tea used to treat respiratory illnesses. Hinkey Declaration, ¶

15.

9

## The Thacker Pass Lithium Mine Project

26.      The Thacker Pass Lithium Mine Project is massive and complex.
The Project area covers 17,933 acres of public land administered by the BLM,
Winnemucca District. 10,468 of those acres are associated with the Mine Plan
and 7,465 of them are associated with the Exploration Plan. Project facilities
include the development of an open pit mine; waste rock storage facilities; a
coarse gangue stockpile; a clay tailings filter stack; growth media stockpiles; haul
and secondary roads; and additional mine facilities to support mining and lithium
production operations. Thacker Pass Lithium Mine Project Record of Decision
and Plan of Operations Approval (ROD), pg. 3.

27.      The Final Environmental Impact Statement reports that "inventories
identified over one thousand (n=1020) cultural resource sites and a component of
a large cultural district: the Thacker Pass component of the Double
H/Whitehourse Obsidian Procurement District (DHWOPD)." This Thacker Pass
Component became its own National Register of Historic Places (NRHP)-eligible
district in 2009. Thacker Pass Lithium Mine Project Final Environmental Impact
Statement (FEIS) pg. 4-82

28.      The Mining and Exploration Plans' direct effects area intersect 923
archaeological and architectural resources. 56 of these are eligible for listing on
the NRHP. FEIS, 4-82. The indirect effects area intersects 134 archaeological
and architectural resources. 35 of these are eligible for listing on the NRHP.
FEIS, 4-83.

29.      Ground disturbing activities and project infrastructure development could directly, indirectly, and cumulatively affect one or more of the NRHP integrity aspects of 85 historic properties and one district. FEIS, 4-83. BLM and Nevada SHPO have concurred that the Project would adversely affect 56 historic properties eligible for the NRHP. FEIS, 4-83.

30.      Even with the development of a HPTP, the FEIS explains that:

"there may still be permanent loss of cultural resources and a limited fragmentation of the Thacker Pass component of the DHWOPD. The use of routes and utility corridors surrounding the Project area would also increase and change access to areas leading to potential effects through new surface disturbances, unauthorized artifact collection, and vandalism at cultural resources." FEIS, 4-85.

**The National Historic Preservation Act, Section 106 Consultation Process**

31.      The National Historic Preservation Act (NHPA) obligates the Bureau of Land Management ("BLM"), in cooperation with Indian tribes, private organizations, and individuals "to administer federally owned, administered, or controlled historic property in a spirit of stewardship for the inspiration and benefit of present and future generations…" (54 U.S.C. § 300101(3)). When the NHPA was passed, Congress explained that the purpose of the NHPA is to remedy the dilemma that "historic properties significant to the Nation's heritage are being lost or substantially altered, often inadvertently, with increasing frequency" (*Montana Wilderness Ass'n v. Fry*, 310 F.Supp. 2d 1127, 1151 (D. Montana, 2004) (quoting 16 U.S.C. § 470(b)(3).

32.      36 Code of Federal Regulations § 800 *et seq* was promulgated to

govern implementation of NHPA's Section 106 consultation process. 36 CFR §

800.1(a) states the purposes of the section 106 process, in pertinent part:

"The section 106 process seeks to accommodate historic preservation concerns with theeeds of Federal undertakings through consultation among the agency official and other parties with an interest in the effects of the undertaking on historic properties, commencing at the early stages of project planning. **The goal of consultation is to identify historic properties potentially affected by the undertaking, assess its effects and seek ways to avoid, minimize or mitigate any adverse effects on historic properties** (emphasis added)."

33.     § 800.1(c) adds: "The agency official shall ensure that the section

106 process is initiated early in the undertaking's planning, so that a broad range

of alternatives may be considered during the planning process for the

undertaking."

34.     § 800.2(d)(1) describes the important role the public plays in helping

federal agencies steward historic properties for the inspiration and benefit of

present and future generations: "The views of the public are essential to informed

Federal decision-making in the section 106 process."

35.     Also, § 800.2(d)(1) requires that "[t]he agency official shall seek and

consider the views of the public in a manner that reflects the nature and

complexity of the undertaking and its effects on historic properties [and] the likely

interest of the public in the effects on historic properties…"

36.     36 CFR § 800.2(c)(2)(B)(ii) states that NHPA, Section 101(d)(6)(B)

"requires the agency official to consult with **any** Indian tribe or Native Hawaiian

organization that attaches religious and cultural significance to historic properties

that may be affected by an undertaking. The requirement applies regardless of the location of the historic property." (emphasis added)

37.     The Reno-Sparks Indian Colony, Fort McDermitt Paiute and Shoshone Tribe, Summit Lake Paiute Tribe, Burns Paiute Tribe of Oregon, Duck Valley Shoshone-Paiute Tribe, Lovelock Paiute Tribe, Battle Mountain Band Colony of the Te-Moak Tribe of Western Shoshone, Winnemucca Indian Colony, Cedarville Rancheria, Ft. Bidwell Indian Community, Fallon Paiute-Shoshone Tribe, and the Pyramid Lake Paiute Tribe attach religious and cultural significance to Pehee mu'huh. Eben Declaration, ¶ 13.

38.     Under § 800.2(c)(2)(B)(ii)(A),

"[t]he agency official shall ensure that consultation in the section 106 process provides the Indian tribe...**a reasonable opportunity to identify its concerns about historic properties, advise on the identification and evaluation of historic properties, including those of traditional religious and cultural importance, articulate its views on the undertaking's effects on such properties, and participate in the resolution of adverse effects**. It is the responsibility of the agency official **to make a reasonable and good faith effort** to identify Indian tribes...that shall be consulted in the section 106 process."

39.     § 800.2(c)(2)(B)(ii)(A) reminds agency officials, once again, that section 106 consultation should commence early in the planning process.

40.     The Reno-Sparks Indian Colony and all the tribes who attach religious and cultural significance to Peehee mu'huh have not had a reasonable opportunity to identify their concerns about historic properties, advise on the identification and evaluation of historic properties, articulate their views on the

undertaking's effects on such properties, and participate in the resolution of adverse effects. Eben Declaration, ¶¶ 7-8.

41.     § 800.2(c)(2)(B)(ii)(C) advises that "[c]onsultation with Indian tribes should be conducted in a manner sensitive to the concerns and needs of the Indian tribe…"

42.     Consultation conducted in a manner sensitive to the concerns and needs of Indian tribes would have accounted for the fact that the worst pandemic in at least 100 years was raging around the world, especially when those Indian tribes were disproportionately affected by the COVID-19 pandemic. Many tribal offices, including RSIC's and Fort McDermitt's, were closed for most of 2020.

43.     Originally, all of 36 CFR § 800 governed implementation of NHPA's Section 106 consultation process, but the BLM Nevada State Office, under a National Programmatic Agreement (NPA, 1997, as amended 2012) among BLM, the Advisory Council of Historic Preservation (ACHP), and the National Conference of State Historic Preservation Officers, replaced the procedures set forth in 36 CFR § 800.3 through § 800.7 with the 2014 BLM-State Historic Preservation Officer (SHPO) State Protocol Agreement ("the Protocol").

44.     The Protocol's Preamble declares that the Protocol is "…designed to enhance the participation of consulting parties, the general public and Native American tribes in the section 106 process…" The Protocol does not include many bright-line rules about public participation, but it does include one. Section V.F.4.a-b reads:

14

"4. BLM will negotiate a [Memorandum of Agreement] addressing adverse effects when BLM and SHPO agree that the adverse effects are known prior to the approval of the undertaking.

   a. The MOA establishes BLM-SHPO concurrence regarding the resolution of project-related adverse effects according to a [Historic Properties Treatment Plan], as well as other stipulations and measures that may be specified in the MOA. BLM must initiate consultation with SHPO regarding eligibility, effects, and resolution of adverse effects with sufficient lead time to allow for development of an MOA on a schedule meeting the undertaking's anticipated DR or ROD. BLM will also consult with Indian tribes and other consulting parties, as appropriate. The MOA must be signed by the appropriate parties <u>prior</u> to BLM's issuance of a DR or ROD for the undertaking.

   a. Draft PAs and MOAs should be made available for public comment." (emphasis with original.)

45.      Despite BLM and SHPO agreeing that adverse effects to historic properties in Peehee mu'huh were known prior to approval of the undertaking, the MOA was not signed by the appropriate parties prior to BLM's issuance of the ROD. Nor were draft Programmatic Agreements or Memorandums of Agreement made available for public comment.

46.      Inexplicably, the Notice of Availability of the Final Environmental Impact Statement for the Proposed Thacker Pass Project, published December 4, 2020, stated that "[t]he BLM and Nevada SHPO recently executed a Memorandum of Agreement to resolve adverse effects to the 57 historic properties." But, then, the Record of Decision contradicted the Notice of Availability and stated:

"In accordance with the requirements of Section 106 of the National Historic Preservation Act, the BLM coordinated and consulted with the State Historic Preservation Office (SHPO). The BLM received a letter dated Wednesday, October 7, 2020, providing the SHPO's concurrence on the cultural resource report and finding of adverse effect. A Memorandum of Agreement and treatment plan are being prepared, and the BLM will continue to consult with the SHPO on the Project and treatment plan in accordance with programmatic protocols."

## Consultation Timeline

47.     Proposed Plaintiffs' counsel submitted a Freedom of Information Act request to BLM requesting documentation on BLM's efforts at tribal consultation on June 10, 2021. This request was confirmed on the same day. The statutory 20-day timetable has passed and BLM has not responded to that request.

48.     According to the ROD, the following is the extent of BLM's "Native American Consultation" prior to issuing the ROD:

"The BLM has been in contact with tribal governments regarding this Project from its early stages (October 2018) and through the ensuing National Environmental Policy Act (NEPA) process.

In December 2019, BLM sent certified letters to Fort McDermitt, Pyramid Lake, Summit Lake, and Winnemucca Indian Colony "initiating formal consultation." These tribes are also on the Project EIS mailing list to receive updates, and the BLM notified the tribes of the availability of the draft EIS in July 2020. The tribes also received notification and copies of the final EIS by certified mail in December 2020. No comments or concerns have been raised during formal government to government consultation for the Project by the tribes." ROD, pg. 5.

49.     This was contradicted in a letter received by the RSIC on July 12, 2021 from Kathleen Rehberg, Field Manager, BLM Winnemucca, Humboldt River Field Office who stated that only the Fort McDermitt Paiute-Shoshone tribe, the

Summit Lake Paiute tribe, and the Winnemucca Indian Colony were invited to consult on the project and its impact. Rehberg Letter.

50.      In a case similar to this one, the 10th Circuit ruled: "The record reveals that the Forest Service did request information from the Sandia Pueblo and other local Indian tribes, but a mere request for information is not necessarily sufficient to constitute the 'reasonable effort' section 106 requires." *Pueblo of Sandia v. United States,* 50 F.3d 856, 860 (10th Cir.1995)

51.      In another case similar to this one, the BLM offered documentation of consultations with tribes different from the plaintiffs, with other agencies, and with the public. However, the federal district court noted:

"While this other consultation appears to be required and serves other important purposes, it doesn't substitute for mandatory consultation with the Quechan Tribe. In other words, that BLM did a lot of consulting in general doesn't show that its consultation with the Tribe was adequate under the regulations. Indeed, [the BLM] grouping tribes together (referring to consultation with 'tribes') is unhelpful: Indian tribes aren't interchangeable, and consultation with one tribe doesn't relieve the BLM of its obligation to consult with any other tribe that may be a consulting party under NHPA." *Quechan Tribe of Fort Yuma Indian Reservation v. US Dept. of Interior*, 755 F.Supp.2d 1104, 1118 (SD Calif. 2010)

52.      *The Quechan Tribe* court also stated: "...the BLM's communications are replete with recitals of law (including Section 106), professions of good intent, and solicitation to consult with the Tribe. But mere pro forma recitals do not, by themselves, show BLM actually complied with the law. *Id.*

53.      Furthermore, federal courts have ruled "[c]ontact, of course, is not

17

consultation, and 'consultation with one tribe doesn't relieve the [agency] of its obligation to consult with any other tribe." *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 205 F.Supp.3d 4, 32 (D. DC 2016) (citing *Quechan Tribe of Fort Yuma Indian Reservation v. U.S. Dep't of Interior*, 755 F.Supp.2d 1104, 1112, 1118 (S.D.Cal. 2010))

54.     The only so-called consultation the BLM can demonstrate for the Thacker Pass project are mere pro forma recitals, requests for information, and feeble attempts at contacting a fraction of the number of tribes who attach religious and cultural significance to Peehee mu'huh.

55.     On November 5, 2020, BLM and the SHPO entered into a Memorandum of Agreement approving the HPTP. Despite the FEIS (4-85) stating that the HPTP would be approved through consultation with local Native American tribes, no tribes participated in preparing this HPTP.

56.     On January 15, 2021, the Record of Decision was published.

57.     On May 13, 2021, Lithium Nevada Corporation informed the Plaintiffs that it intended to begin ground disturbance as soon as June 23, 2021. Talasi Brooks Declaration, ¶ 7.

58.     On June 3, 2021, Reno-Sparks Indian Colony delivered a letter to BLM officially requesting government-to-government consultation about historic properties in Peehee mu'huh under the NHPA. See: RSIC June 3 Correspondence to BLM Winnemucca.

59.     On June 24, Atsa koodakuh wyh Nuwu delivered a letter to BLM

requesting that BLM halt plans to physically disturb Peehee mu'huh until tribes who attach religious and cultural significance to the site can be adequately consulted under the NHPA and requesting that BLM recognize Atsa koodakuh wyh Nuwu as consulting party under the NHPA. See: Atsa koodakuh wyh Nuwu June 24 Correspondence to BLM Winnemucca.

60.     On July 12, 2021, the RSIC received a short response from Kathleen Rehberg, Field Manager, BLM Humboldt River Field Office, denying RSIC's request for NHPA, Section 106 consultation on historic properties affected by the Thacker Pass Project. The letter stated that the consultation period for the public and Native American tribes opened in January 2020 and closed November 5, 2020. With this illegal rejection of RSIC's request for government-to-government consultation under the NHPA, section 106, it became clear to RSIC that it must seek a court order to engage in NHPA, Section 106 consultation. See: Rehberg Letter.

## CLAIMS FOR RELIEF

61.     Proposed Plaintiffs incorporate by reference the allegations of all the foregoing paragraphs as if fully set forth herein.

62.     BLM's failure to make a reasonable and good faith effort to identify Indian tribes that should have been consulted with because they attach religious and cultural significance to Peehee mu'huh before issuing a ROD for the Thacker Pass Lithium Mine Project violates the NHPA and is unlawful.

63.     BLM's failure to provide to Indian tribes who attach religious and

cultural significance to the Peehee mu'huh a reasonable opportunity to identify their concerns about historic properties, advise on the identification and evaluation of historic properties, articulate their views on the undertaking's effects on such properties, and participate in the resolution of adverse effects violates the NHPA and is unlawful.

64.     BLM's failure to seek and consider the views of the public in a manner that reflects the nature and complexity of the Project and its effects on historic properties and the likely interest of the public in the effects on historic properties before issuing a Record of Decision for the Thacker Pass Lithium Mine Project violates the NHPA, is unlawful.

65.     BLM's failure to make a draft Memorandum of Agreement available for public comment before issuing a Record of Decision for the Thacker Pass Lithium Mine Project violates the NHPA and is unlawful.

**RELIEF**

66.     WHEREFORE, for all the foregoing reasons, Plaintiffs request that this Court issue:

67.     A judgment declaring that BLM's activities connected to plans for physical disturbance of Peehee mu'huh, pursuant to an Historic Properties Treatment Plan or otherwise, fail to comply with the NHPA.

68.     A judgment declaring that BLM failed to comply with the

20

requirements of the NHPA, and that such failure is arbitrary, capricious, and not in accordance with the procedures required by law pursuant to the APA, 5 USC §§ 701 through 706.

69.     A judgment declaring that BLM failed to comply with the NHPA and that such failure constitutes agency action that is unreasonably delayed and/or unlawfully withheld as provided by Section 706(1) of the APA.

70.     A judgment and order setting aside the illegally issued ROD pending compliance with the NHPA, including compliance with the 2014 BLM-SHPO Protocol Agreement.

71.     A judgment and order enjoining the BLM from authorizing any physical disturbance in Peehee mu'huh pending compliance with the NHPA, including compliance with the 2014 BLM-SHPO Protocol Agreement.

72.     A judgment granting Proposed Plaintiffs their costs and reasonable attorneys fees incurred in bringing this action, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 et. seq. and any other applicable statutory or equitable principles; and

73.     Any other relief this court deems just and proper.

Respectfully submitted this 20th day of July, 2021.

By: /s/Julie Cavanaugh-Bill
Julie Cavanaugh-Bill (State Bar No. 11533)
Cavanaugh-Bill Law Offices
Henderson Bank Building
401 Railroad Street, Suite 307
Elko, NV 89801
(775) 753-4357

julie@cblawoffices.org

William Falk (Utah Bar No. 16678)
2980 Russet Sky Trail
Castle Rock, CO 80108
(319) 830-6086
falkwilt@gmail.com

## Certificate of Service

I hereby certify that on July 29, 2021, I filed the foregoing using the United States District Court CM/ECF, which caused all counsel of record to be served electronically.

By: /s/Julie Cavanaugh-Bill
Julie Cavanaugh-Bill (State Bar No. 11533)

22