1  Louis M. Bubala III (Nevada Bar No. 8974)
   KAEMPFER CROWELL
2  50 West Liberty Street, Suite 700
   Reno, Nevada  89501
3  Telephone:  (775) 852-3900
   Facsimile:   (775) 327-2011
4  Email:  lbubala@kcnvlaw.com

5  Rick Eichstaedt (Washington Bar No. 36487)
   Will comply with L.R. IA 11-2 within 14 days
6  WHEAT LAW OFFICES
   25 West Main Avenue, Suite 320
7  Spokane, Washington 99201
   Telephone:    (509) 251-1424
8  Email:  rick@wheatlawoffices.com

9  Attorneys for the Burns Paiute Tribe

10

11                    **UNITED STATES DISTRICT COURT**

12                         **DISTRICT OF NEVADA**

13 BARTELL RANCH LLC, *et al.*,              | *Lead Case:*
                                             | Case No.:  3:21-cv-00080-MMD-CLB
14                        Plaintiffs,
15        *vs.*
16 ESTER M. MCCULLOUGH, *et al.*,
17                        Defendants.
18 WESTERN WATERSHEDS PROJECT, *et al.*,     | *Consolidated with:*
                                             | Case No.:    3:21-cv-00103-MMD-CLB
19                        Plaintiffs,
20        *vs.*
21 UNITED STATES DEPARTMENT OF THE           | **BURNS PAIUTE TRIBE'S MOTION TO
   INTERIOR, *et al.*,                       | INTERVENE AS PLAINTIFF AND
22                        Defendants.        | MEMORANDUM IN SUPPORT**

23        Proposed Intervening Party the Burns Paiute Tribe ("Tribe") moves to intervene as a

24 plaintiff in the *Western Watersheds* case.  Fed. R. Civ. P. 24(a), (b).

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada  89501

# I.   MOTION TO INTERVENE

This Motion is supported by the proposed complaint, **Exhibit 1**, and the declaration of Diane Teeman, the Tribe's cultural and heritage director, **Exhibit 2**.[1]  Counsel for the Tribe has conferred with the parties to this case.  Counsel for the environmental and tribal plaintiffs indicated support for this Motion.  Counsel for the Bartell plaintiffs indicated they are neutral as to this motion.  The government and mining defendants did not respond to the Tribe's inquiry.

## II.   Memorandum

The Tribe should be permitted to intervene, either as a matter of right or permissively, based upon the impact to the Tribe's interests and rights resulting from this litigation.

### A.   BACKGROUND.

#### 1.   *Interests of the Tribe.*

The Burns Paiute Tribe is a federally recognized Indian Tribe.  Teeman Decl. ¶ 2.  Since time immemorial, the Burns Paiute Tribe has occupied and utilized approximately 5,250 square miles of land in central-southeastern Oregon, northern Nevada, northwestern California, and western Idaho, including the Pass area that is subject to this litigation.  *Id*. ¶ 3.  The scope of the Tribe's traditional territory is depicted on the following map:

---

[1]   The declaration was prepared before consolidation of the cases, and its caption reflects the *Western Watersheds* litigation. The caption does not alter the substance of the declaration.

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501



**Traditional Territory (Burns Paiute Tribe)**

The Burns Paiute Tribe traditional aboriginal territory extends from the east foothills of the Cascades up north to The Dalles, extending east into Boise, Idaho, south to Smokey Spring, Nevada, and into California, to the southern tip of Goose Lake.

Scale: 1:3,000,000

Map included as Teeman Decl. ¶ 3.

Members of the Burns Paiute Tribe were basket makers, who used fibers of willow, sagebrush, tule plant, and Indian hemp to weave baskets, sandals, fishing nets, and traps.  Teeman Decl. ¶ 4.  Tribal members hunted, fished, and gathered edible plants, harvesting their diet from lakes, marshes, streams, and uplands throughout their territory.  *Id.*

As tribal members travelled throughout their traditional territory, they buried their dead, and left evidence of their use and occupation of the land, including the areas impacted by this litigation.  Teeman Decl. ¶ 5.  This evidence of the Tribe's long-standing use and occupation

includes clothing made from animal and bird hides and sandals made from sagebrush fibers believed to approximately 10,000 years old.  *Id.*

The Tribe's ancestors resisted encroachment of settlers, refused to cede their lands, and fought to preserve their traditional life ways.  Teeman Decl. ¶ 6.  A treaty of "Peace and Friendship" was eventually signed, but never ratified.  *Id.*  An Executive Order established a 1.8-million-acre reservation for the Tribe in the Malheur Valley in Oregon in 1869, but it was short-lived.  *Id.*  An uprising resulted in the abandonment of the reservation.  *Id.*  After the conflict, the Tribe's surviving members were forcibly marched over 300 miles to Fort Simcoe and Fort Vancouver in Washington State.  *Id.*  Some tribal members escaped the forts and later those remaining at the forts were allowed to leave.  *Id.*  In their absence, the Malheur Reservation was opened to public settlement.  *Id.*  A makeshift tribal encampment was established on the outskirts of the town of Burns, Oregon.  *Id.*  Since that time, the Tribe has purchased land that eventually became the Burns Paiute Reservation.  *Id.* ¶ 7.

Despite this history, the Tribe has preserved its language and many traditional subsistence and cultural practices.  Teeman Decl. ¶ 8.  Many traditional cultural practices endured and are still practiced among living tribal members.  *Id.*  Tribal members continue to hunt, gather food, and do beadwork and drum-making in traditional ways and continue to have strong ties to the landscape throughout its traditional territory.  *Id.* ¶ 9.  The Tribe and its members continue to attribute significant cultural and spiritual value throughout its ancestral territory.  *Id.*

 2.  *Significance of Thacker Pass to the Burns Paiute Tribe.*

The Tribe and its members attach significant religious and cultural value to Thacker Pass. Teeman Decl. ¶ 10.  It is considered a spiritually powerful place that contains the remains of tribal ancestors and, according to tribal beliefs, their spirits.  *Id.*  It contains plants and wildlife that the tribal members hunted and gathered and continue to hunt and gather, including chokecherries and

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

mule deer.  *Id.*  It is also habitat to golden eagles, which tribal members believe have a spiritual connection to the Creator.  *Id.*  The area was also an important place for the gathering of obsidian used to make arrowheads and other tools.  *Id.*

The Thacker Pass area is a shared use area by regional tribes, including the Burns Paiute Tribe, who continue to attribute cultural, spiritual, and historic value to the area.  Teeman Decl. ¶ 11.  Thacker Pass, known as *Peehee mu'huh* or "rotten moon," is the location of a massacre where tribal members were murdered and left unburied.  *Id.*  In more recent times, tribal members used caves and rocks in Thacker Pass to hide to evade removal from their lands.  *Id.* ¶ 12.

The Tribe believes that the actions associated with the Thacker Pass Lithium Mine Project ("Project") threaten areas of significant historic and cultural significance to the Tribe in Thacker Pass. Teeman Decl. ¶ 12.  The Final Environmental Impact Statement ("FEIS") for the Project states that the area contains over 1,000 cultural resource sites, including the Double H/Whitehorse Obsidian Procurement District, which would be impacted by the Project.  *Id.* ¶ 14.  The BLM and the Nevada State Historic Preservation Officer have also concluded that the Project would adversely affect 56 historic properties eligible for listing on the National Register of Historic Places.  *Id.* ¶ 15.

3.   *Tribal Involvement in the Thacker Pass Lithium Mine Project.*

The Burns Paiute Tribe did not learn about the proposed Project until May 2021.  Teeman Decl. ¶ 16.  The Tribe has never received information from the Department of the Interior, the Bureau of Land Management ("BLM"), the mining company, or anyone else about the Project or engaged in government-to-government consultation about the Project, including any impacts to cultural resource sites or proposed mitigation measures to address impacts to cultural resources, including the development of a cultural resource memorandum of agreement.  *Id.* ¶ 17.

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

Once the Tribe learned about the Project, the Tribal Council sent a letter on June 16, 2021, to the Winnemucca District Office of the BLM.  Teeman Decl., Attachment A.  In this letter, the Tribe requested that "any plan for mechanical trenching operations and other construction activities" associated with the Project be halted "until meaningful government-to-government consultation with [the Tribe] and all of the tribes that are connected to Thacker Pass has concluded."  *Id.* at 1.

No response was provided to the Tribe to this letter.  Teeman Decl. ¶ 20.  Because of the lack of response and the actions of the Reno-Sparks Indian Colony and the Atsa koodakuh wyh Nuwu/People of Red Mountain to intervene in this proceeding, the Burns Paiute Tribal Council voted to intervene.

**B.   ARGUMENT.**

**1.   The Tribe satisfies the requirements for intervention as of right.**

A proposed intervenor must satisfy four criteria to intervene as a matter of right.  *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986).  The requirements are:

1.   The applicant's motion must be timely;

2.   The applicant must assert an interest relating to the property or transaction which is the subject of the action;

3.   The applicant must be so situated that without intervention, the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and

4.   The applicant's interest must not be adequately represented by the existing parties.

*Id.*  As shown below, the Tribe meets all four criteria.

///

///

///

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

*a.   The Motion to Intervene is timely.*

In determining whether a motion to intervene is timely, three factors are weighed: (1) the state of the proceeding in which the applicant seeks to intervene, (2) the prejudice to other parties, and (3) the reason for and length of any delay. *County of Orange*, 799 F.2d at 537.

Here, any delay on the part of the Tribe is justified.  The Tribe filed the motion just over a month after it sent the BLM a letter about the Project and it became apparent that the BLM was not going to reply.  Teeman Decl., Attachment A, ¶¶1 9-20.

Moreover, the matter is early in the proceeding—there is no administrative record filed. The Reno-Sparks Indian Colony ("RSIC") and Atsa koodakuh wyh Nuwu/People of Red Mountain's motion to intervene was only granted on Wednesday, July 28, 2021.  This motion to intervene is filed approximately two months before the Plaintiffs' motion for summary judgment and brief in support of their motion for judgment is due on September 24, 2021, under the Joint Case Management Plan, and nearly five months before the deadline for the Defendants' replies in support of summary judgment on December 12, 2021.

Counsel for Burns Paiute has consulted with counsel for RSIC and Atsa koodakuh wyh Nuwu/People of Red Mountain.  If granted intervention, the Tribal parties intend to file one set of pleadings to streamline the matter and any order of the Court could be conditioned accordingly. This would eliminate any hint of prejudice to the parties.

*b.   The Tribe has a significant interest in the subject of this action.*

The Ninth Circuit has "rejected the notion that Rule 24(a)(2) requires a specific legal or equitable interest." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980); *see also Blake v. Pallan*, 554 F.2d 947, 952 (9th Cir. 1977).  Rather, "the 'interest' test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuess v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

1   Here, the Tribe has deep and long-standing connections to the lands and cultural resources

2   impacted by the Project if it goes forward, and they should be allowed to defend those interests as

3   an intervenor, including its interest in ensuring that cultural and archaeological resources are

4   protected and that proper consultation with the Tribe occurs.  Teeman Decl. ¶¶ 10-15.

5   *c.  Denying intervention to the Tribe would impair its ability to protect its interest.*

6   The Tribe meets this requirement because the disposition of this action "may as a practical

7   matter" impair or impede the Tribe's ability to safeguard its protectable interests.  *See Smith v. Los*

8   *Angeles Unified Sch. Dist.*, 830 F.3d 843, 862 (9th Cir. 2016); *Arakaki v. Cayetano*, 324 F.3d

9   1078, 1083 (9th Cir. 2003).  That test is met here.  A decision in favor of defendants would have

10  far-reaching practical consequences for the Tribe's ability to safeguard its protectable interests—

11  archaeological and cultural resources—and ensure that the federal government engages in

12  consultation with tribal governments.  Therefore, Tribe meets the third Rule 24(a)(2) factor.

13  *d.  The existing parties will not adequately represent the Tribe.*

14  An applicant for intervention of right need only make a minimal showing that

15  "representation of [its] interest 'may be' inadequate."  *Trbovich v. United Mine Workers*, 404 U.S.

16  528, 538 n.10 (1972); *see also California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th

17  Cir. 1986).  A would-be intervenor is adequately represented if the following factors are met:

18      1.  The interests of a present party to the suit are such that it will undoubtedly make
        all of the intervenor's arguments;

19

20      2.  The present party is capable of and willing to make such arguments; and

21      3.  The intervenor would not offer any necessary element to the proceedings that
        the other parties would neglect.

22  *County of Fresno*, 622 F.2d at 438–39.

23  Here, the existing plaintiffs have not raised issues regarding the lack of protection of

24  cultural resources or the lack of consultation; the Tribe, as a sovereign tribal government, has

interests separate from, and as critical as, the interests advanced by other plaintiffs in this matter. Teeman Decl. ¶¶ 10-15.  Moreover, if other plaintiffs prevail in this case, as they should, it is possible that this Court may craft a remedy that will not address and could harm the Tribe's unique sovereign interest, including obligations of the federal government to consult with the Tribe. To support this contention, federal courts have ruled that "consultation with one tribe doesn't relieve the [agency] of its obligation to consult with any other tribe." *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 205 F.Supp.3d 4, 32 (D.D.C. 2016) (citing *Quechan Tribe of Fort Yuma Indian Reservation v. U.S. Dep't of Interior*, 755 F.Supp.2d 1104, 1112 & 1118 (S.D. Cal. 2010)). "Defendants' grouping tribes together (referring to consultation with 'tribes') is unhelpful: Indian tribes aren't interchangeable, and consultation with one tribe doesn't relieve the BLM of its obligation with any other tribe that may be a consulting party under NHPA." *Quechan Tribe*, 775 F. Supp.2d at 1112.  No other party can adequately represent the sovereign interest of the Tribe.

**2.    In the alternative, the Tribe satisfies the requirements for permissive intervention.**

In the alternative, this Court should exercise its discretion to grant the Tribe permission to intervene under Rule 24(b).  That rule provides in pertinent part that, "On timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  Generally, permissive intervention requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013) (quotation marks and citation omitted).

In determining whether to exercise its discretion to grant permissive intervention, the Court considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  The Tribe meets these requirements.

First, jurisdiction is easily established because this is a federal-question case. 28 U.S.C. §1331; *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir 2011) (explaining that jurisdictional requirement of permissive intervention satisfied where case presented federal question).  Second, the Tribe's motion is timely, as explained above.  Third, also for the reasons described above, this case squarely presents a common question of law and fact between the Tribe's claims and the main action, primarily whether the federal defendant complied with its obligations under the NEPA, NHPA, and other federal environmental/cultural resource statutes.  Finally, defendants will suffer no conceivable prejudice, at this stage in the proceedings, due to intervention by the Tribe.  Allowing the Tribe to intervene will aid the Court to better assess the effects and lawfulness of the Action Agencies' decision.

For these reasons, this Court should exercise its discretion to allow Tribe to intervene.

### III.    CONCLUSION

For the reasons discussed above, the Tribe is entitled to intervene as of right.  Alternatively, this Court should allow the Tribe to intervene on a permissive basis.

Dated this 2nd day of August, 2021          KAEMPFER CROWELL

By:/s/*Louis M. Bubala III*
LOUIS M. BUBALA III

WHEAT LAW OFFICE

By:*/s/Rick Eichstaedt*
RICK EICHSTAEDT

Attorneys for Burns Paiute Tribe

1

<u>**CERTIFICATE OF SERVICE**</u>

2         Pursuant to FRCP 5(b), I certify that I am an employee of Law Offices of Kaempfer

3  Crowell, that I am over the age of 18 and not a party to the above-referenced case, and that on

4  August 2, 2021 I filed and served the foregoing **BURNS PAIUTE TRIBE'S MOTION TO**

5  **INTERVENE AS PLAINTIFF AND MEMORANDUM IN SUPPORT** as indicated:

6    **X**   **BY NOTICE OF ELECTRONIC FILING**: through Electronic Case Filing System of the
       United States District Court, District of Nevada, to the individuals and/or entities at their
7     email addresses.

8     I declare under penalty of perjury that the foregoing is true and correct.

9     DATED:  August 2, 2021.

10

11                            */s/  Merrilyn Marsh*
                            An Employee of KAEMPFER CROWELL

12

13

14

15

16

17

18

19

20

21

22

23

24

**KAEMPFER CROWELL**
50 West Liberty Street, Suite 700
Reno, Nevada 89501