TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

ARWYN CARROLL (MA Bar 675926)
LEILANI DOKTOR (HI Bar 11201)
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 305-0465
Fax: (202) 305-0506
arwyn.carroll@usdoj.gov
leilani.doktor@usdoj.gov

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| BARTELL RANCH LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ESTER M. MCCULLOUGH, *et al.,* <br><br> Defendants. | Case No. 3:21-cv-80-MMD-CLB <br> Related Case No. 3:21-cv-103-MMD-CLB <br> (Consolidated) |
| WESTERN WATERSHEDS PROJECT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.,* <br><br> Defendants. | **FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO INTERVENING PLAINTIFFS' MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER DENYING PRELIMINARY INJUNCTION** |

The Reno-Sparks Indian Colony ("RSIC") and Atsa Koodakuh wyh Nuwu/People of the Red Mountain ("the People") have not provided the Court with any basis for reconsidering its decision denying their motion for a preliminary injunction. They have not demonstrated any error of law, let alone "clear error," that would support a finding that they are likely to succeed on the merits of their claims or will be irreparably harmed by the limited ground disturbance contemplated by the Historic Properties Treatment Plan (HPTP). They also have not carried their burden of demonstrating why their "new" evidence could not have been submitted in the course of the original proceedings. But even if they had, the evidence is merely cumulative of that already considered by the Court and does not offer a basis for reconsideration. Plaintiff-Intervenors' motion for reconsideration should therefore be denied.

## BACKGROUND

Plaintiffs and Plaintiff-Intervenors in this action challenge the United States Bureau of Land Management's decision approving two plans of operations for a lithium mine in Humboldt County, Nevada ("the Project"). As part of that decision-making process, and consistent with the National Historic Preservation Act (NHPA) and its implementing regulations, BLM reached out to multiple tribes with an expressed interest in the Thacker Pass area and sought public comment on the Project's potential impacts on historical properties and potential mitigation of those impacts. Also as part of the NHPA process, a contractor prepared the HPTP to further evaluate and mitigate those potential impacts. As thoroughly explained in prior briefing, the HPTP contemplates a disturbance of less than 0.25 acres—and mechanical excavation of less than 0.04 acres—in several sites located entirely within the boundaries of the Project area.[1]

---

[1] See Fed. Defs' Opp'n to Pls.' Mot. for Prelim. Inj. at 7–10, *W. Watersheds Project v. Bureau of Land Management*, Case No. 3:21-cv-103-MMD-CLB (D. Nev. consolidated July 30, 2021)

RSIC and the People moved to intervene in this action on July 20, 2021—the day before the Court heard the other Plaintiffs' motion for a preliminary injunction—to assert a single claim alleging that BLM failed to comply with the NHPA before issuing its decision.[2] Shortly after the Court permitted intervention, RSIC and the People (joined by the Burns Paiute Tribe) moved for a preliminary injunction against ground-disturbing activities contemplated by the HPTP.[3] In asserting a likelihood of success on the merits, Plaintiff-Intervenors argued, among other things, that: (1) BLM had not made the requisite "reasonable and good faith effort to identify Indian tribes" for consultation, *see* 36 C.F.R. §§800.2 (c)(2)(ii)(A), 800.3(f)(2); (2) BLM did not afford the public an opportunity to participate, *see id.* §§ 800.2(d)(1), 800.3(f)(2); and (3) BLM's consultation with other tribes failed to satisfy the NHPA's consultation requirements.[4] Plaintiff-Intervenors also argued that they would be irreparably harmed even by the limited scope of excavation conducted under the HPTP because of the cultural and historical significance they attached to Thacker Pass as the site of a massacre.[5]

The Court declined to issue preliminary injunctive relief.[6] It first concluded that "the People lack prudential standing to assert a claim under the NHPA" because they

---

ECF No. 30; Declaration of Mark E. Hall ¶ 4, *W. Watersheds Project v. Bureau of Land Management*, Case No. 3:21-cv-103-MMD-CLB (D. Nev. consolidated July 30, 2021) ECF No. 30-1; Fed. Defs' Opp'n. to Pl.-Intervenors' Prelim. Inj. Mot. at 20, ECF No. 65; Second Declaration of Mark E. Hall ¶ 7, ECF No. 65-26; Fed. Defs' Surreply at 3–4, ECF No. 84.

[2] The Burns Paiute Tribe, which joins RSIC's and the People's motion but presents no additional arguments in its support, *see* ECF No. 99, also intervened to assert claims alleging violations of the NHPA, among others.

[3] Pl.-Intervenors' Mot. for Prelim. Inj., ECF No. 45.

[4] *Id.* at 9–18; RSIC and the People's Reply in Supp. of Mot. for Prelim. Inj. ("Pl.-Intervenors' Reply') at 5–6, ECF No. 73.

[5] Pl.-Intervenors' Mot. for Prelim. Inj. at 18–19; Pl.-Intervenors' Reply at 11–12.

[6] Order of September 3, 2021, ECF No. 92.

are not a federally recognized Indian tribe and did not affirmatively request consultation,[7] and that RSIC could not assert claims under the NHPA "on behalf of other tribes that [its counsel] does not represent, who are not participating in this case."[8] It then concluded that RSIC was not likely to succeed on the merits of its claims based on unrebutted evidence supporting BLM's "reasonable decision not to consult the [RSIC and the Burns Paiute Tribe] because representatives of both Tribes disclaimed an interest in the area including the Project area" during earlier communications "and neither tribe subsequently put BLM on notice that they considered the Project area sacred or culturally significant until after BLM issued the ROD."[9] Finally, though acknowledging RSIC's interests in the Thacker Pass area, it determined that the limited excavation under the HPTP is not likely to cause irreparable harm. Specifically, it found that Plaintiff-Intervenors' evidence concerning a massacre site did not establish that burial sites were likely to be disturbed by the excavation under the HPTP in light of previous exploration and extensive disturbance of the area—during which no sites have been located—and that, even if they are, the HPTP affords protections.[10]

Plaintiff-Intervenors now move for reconsideration of only two of the Court's conclusions. First, they argue that the Court erred by rejecting the argument that they lack standing to assert claims challenging BLM's consultation efforts under the NHPA with *other* tribes not party to this litigation. Second, they argue that the Court erred in concluding that they have not demonstrated irreparable harm from the limited HPTP-related excavations, contending that (1) mere procedural injury

---

[7] *Id.* at 5–7.

[8] *Id.* at 7.

[9] *Id.* at 10.

[10] *Id.* at 21–22.

amounts to irreparable harm and (2) new evidence supports their position that a massacre occurred near the Project area.

But the Court need not revisit well-trod ground. RSIC and the People have not demonstrated any clear error of law in the Court's decision or that newly discovered evidence would alter the landscape in their favor. To the contrary, these arguments were appropriately rejected the first time around. And the new evidence—most of which could have been submitted previously—is merely cumulative of that already before the Court during the preliminary injunction proceedings. The Court should therefore deny Plaintiff-Intervenors' motion for reconsideration.

## LEGAL STANDARD

"Motions for reconsideration are disfavored" in this District. LR 59-1(b). Still, they "may be brought under Rules 59(e) and 60(b)." *Addington v. Bank of Am., N.A.*, No. 3:12-CV-00548-MMD, 2013 WL 5888146, at *1 (D. Nev. Oct. 31, 2013) (citing *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir.1993)). A motion for reconsideration under Rule 59(e) should not be granted "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma. GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (citation omitted). "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

"Under Rule 60(b), a court may relieve a party from a final judgment, order or proceeding only in the following circumstances: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief from the judgment." *On Demand Direct Response, LLC v. McCart-Pollak*, No. 2:15-CV-01576-

MMD-GWF, 2019 WL 1413294, at *1 (D. Nev. Mar. 28, 2019), *aff'd sub nom. On Demand Direct Response, LLC v. Shana Lee McCart-Pollak*, 842 F. App'x 151 (9th Cir. 2021).

"Mere dissatisfaction with the court's order, or belief that the court is wrong in its decision," on the other hand, "is *not* grounds for reconsideration." *Bird v. Recontrust Co.*, No. 3:10-CV-00649-RCJ, 2014 WL 3696703, at *1 (D. Nev. July 23, 2014) (citing *Twentieth Century–Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir.1981)) (emphasis added). Likewise, such motions are not "an avenue to re-litigate the same issues and arguments upon which the court already has ruled," *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005) (citation omitted), or "the proper vehicles for rehashing old arguments, and are not intended to give an unhappy litigant one additional chance to sway the judge," *Addington*, 2013 WL 5888146, at *1 (internal quotations omitted). Finally, "[m]otions for reconsideration are disfavored" in this District. LR 59-1(b).

## ARGUMENT

RSIC and the People cannot satisfy the reconsideration standard. They have not raised any legal error committed by the Court. To the contrary, they merely rehash arguments already presented to and properly rejected by the Court. Nor do they present any newly discovered evidence that would alter the Court's decision. They fail to meet their burden of explaining why the evidence could not previously have been presented and the evidence is cumulative of evidence already considered by the Court in any event. Even if the "new" evidence had timely been presented, and even if it could alter the Court's analysis and conclusions regarding irreparable harm, Plaintiff-Intervenors have not established and cannot establish a likelihood of success on the merits. Thus, they cannot change the outcome of the Court's preliminary-injunction decision, and their motion for reconsideration should be denied.

## I.     The Court did not commit any legal error

RSIC and the People seek reconsideration on the basis that the Court committed two legal errors. Neither merits reconsideration. Both of these arguments were presented to the Court during the preliminary injunction proceedings, and so are not proper grounds for reconsideration. And both positions are wrong as a matter of law.

### A.     RSIC and the People cannot succeed on the merits of claims premised on the sufficiency of consultation with *other* tribes

RSIC and the People first argue that the Court erred in concluding that they cannot succeed on the merits of claims predicated on the consultation rights of other tribes.[11] To the contrary, they argue, they may assert claims alleging procedural error during consultation with other tribes because RSIC and the People are "interested members of the public" with their own interests in the Thacker Pass area such that the alleged procedural errors violate RSIC's own "procedural rights."[12]

First, RSIC and the People have not satisfied the reconsideration standard with respect to this argument, which they raised during the preliminary injunction proceedings. Specifically, they argued that BLM's consultation with the tribes it determined to consult with failed to satisfy the procedural requirements of the NHPA and its implementing regulations[13] and that RSIC and the People had standing to assert claims deriving from procedural injury.[14] The parties discussed, and RSIC and the People had an opportunity to address, the authority on which the

---

[11] *See* Mot. for Recons. at 2–3, 7 (citing Order at 7).

[12] *Id.* at 7–8.

[13] Pl.-Intervenors' Mot. for Prelim. Inj. at 10–18.

[14] *Id.* at 3–7.

Court based its ruling.[15] And the Court rejected RSIC's position that it could assert claims that BLM failed to satisfy its consultation obligations with *other* tribes.[16]

RSIC and the People thus fall afoul of the requirement that motions for consideration not be used as "an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown*, 378 F. Supp. 2d at 1288 (citation omitted). RSIC and the People are not "entitled to reconsideration" because they "merely repeat[ ] arguments [they] already raised, and which the Court considered and rejected—either explicitly or impliedly," in the earlier order. *Walker v. Intelli-heart Servs., Inc.*, No. 3:18-CV-00132-MMD-CLB, 2020 WL 1694771, at *2 (D. Nev. Apr. 7, 2020).

Equally important, RSIC and the People are not entitled to reconsideration of the Court's decision on this point because the law does not support their position. The Court therefore committed no legal error, let alone "clear error." Rather, the Court properly rejected their argument that "procedural standing" allows them to assert such claims because their own interests may be harmed if the Project proceeds with *any* error in consultation.[17]

RSIC and the People cannot establish "procedural standing" to assert claims of insufficient consultation with *other* tribes. In the Ninth Circuit, "[a] plaintiff alleging procedural harm can demonstrate injury in fact by showing (i) the agency violated certain procedural rules, (ii) those rules protect a concrete interest of the plaintiff, and (iii) it is 'reasonably probable' that the challenged action threatens that concrete interest." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1160 (9th Cir.

---

[15] *See* Order at 7 (relying on *San Juan Citizens Alliance v. Norton*, 586 F. Supp. 2d 1270, 1294 (D.N.M. 2009)); Lithium Nevada's Opp'n to Pl.-Intervenors' Mot. for Prelim. Inj. at 13–14, ECF No. 66 (citing *San Juan Citizens Alliance*); Pl.-Intervenors' Mot. for Prelim. Inj. at 4–5 (citing *Montana Wilderness Ass'n v. Fry*, 310 F. Supp. 2d 1127 (D. Mont. 2004));

[16] Order at 7.

[17] *See* Mot. for Recons. at 9–14.

2017). "It is a well-established rule that a litigant may assert only his own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties." *Coal. of Clergy, Lawyers, and Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002) (citations omitted). Similarly, Plaintiffs alleging procedural injury must show "that *they* have a procedural right that, if exercised, *could* protect *their* concrete interests." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008) (quotations and citations omitted) (emphasis added).

Here, RSIC and the People describe their own interests in the Thacker Pass area—but the Court has already correctly concluded that they lack standing to protect those interests by asserting the procedural rights of others.[18] With respect to NHPA consultation, the procedural consultation requirements are designed to protect the "concrete interest" of the party asserting a right to consultation. That is, its "tribal consultation requirement inures to the benefit of the tribes themselves, which suffer injury when they are not consulted." *Wishtoyo Found. v. U.S. Fish & Wildlife Serv.*, No. CV 19-03322-CJC(ASX), 2019 WL 6998665, at *6 (C.D. Cal. Oct. 16, 2019) (quoting *La Cuna De Aztlan Sacred Sites Prot. Circle Advisory Comm. v. W. Area Power Admin.*, No. EDCV 12–0005–VAP(SPx), 2012 WL 6743790, at *6 (C.D. Cal. Nov. 29, 2012)). In light of that, courts have consistently concluded that "only the tribe itself may bring a claim for failure to comply with the consultation provision." *La Cuna De Aztlan.*, 2012 WL 6743790, at *6. If an agency's "tribal consultation process was indeed defective, any injury stemming from its defects was suffered by the parties who were entitled to consultation, not by" third-parties. *Wishtoyo Found.*, 2019 WL 6998665, at *6.

This makes sense. The NHPA establishes a procedure for government-to-government consultation between the United States and federally recognized Indian Tribes. *Snoqualmie Indian Tribe v. F.E.R.C.*, 545 F.3d 1207, 1216 (9th Cir. 2008)

---

[18] Order at 6–7.

(citing implementing regulations). As multiple courts in this Circuit have acknowledged, allowing one party to assert that BLM failed to fully consult with *another* tribe "would, in effect, be allowing Plaintiffs to disregard [that] Tribe's right to be the final arbiter and, thereby, the final spokesman for intra-tribal affairs through a procedure characterized by one court as a 'back door method of . . . attempting to represent the tribe without approval or authority.'" *San Juan Citizens All.*, 586 F. Supp. 2d at 1293 (quoting *National Indian Youth Council v. Andrus*, 501 F.Supp. 649, 684 (D.N.M.1980)); *see also Wishtoyo Found.*, 2019 WL 6998665, at *6; *La Cuna De Aztlan*, 2012 WL 6743790, at *6. Allowing a third party to sue under NHPA alleging insufficient consultation with a tribe "would vitiate the congressional goal of treating the tribes as sovereigns in the NHPA's consultation provisions" by allowing the third party "to assert whether or not the tribe's rights had been violated." *La Cuna De Aztlan Sacred Sites Prot. Circle Advisory Comm. v. U.S. Dep't of the Interior* No. EDCV 11–1478–GW(SSx), 2012 WL 12903070, at *5 (C.D. Cal. Sept. 20, 2012); *see also San Juan Citizens All.*, 586 F. Supp. 2d at 1293 (allowing such a claim "would violate the regulatory requirement to recognize the tribe as a sovereign authority." (citing 36 C.F.R. § 800.2(c)(2)(ii))).

In fact, though alleging a "clear error," RSIC and the People cite no case in which a third party has established standing under the NHPA to challenge the sufficiency of an agency's consultation with another tribe. They merely reassert *Montana Wilderness Ass'n*, 310 F. Supp. 2d 1127 (D. Mont. 2004), which they cited and argued during the preliminary-injunction proceedings.[19] But that case remains inapposite. In response to BLM's argument that a given plaintiff was not a member of a tribe that would be consulted and so lacked standing to challenge its compliance with the NHPA, the court clearly situated that plaintiff's standing in the alleged

---

[19] Mot. for Recons. at 13; *see* Pl.-Intervenors' Mot. for Prelim. Inj. at 5 (discussing *Montana Wilderness Association*).

deprivation of *his own* opportunity to participate, as a member of the public, in the NHPA process. *Mont. Wilderness*, 310 F. Supp. 2d. at 1151 (citing 30 C.F.R. §§ 800.1(a) (describing the purpose of the NHPA process), 800.2(a)(4) (describing consultation requirement); 800.2(d) (describing nature of the *public's* involvement in the NHPA process)). And it grounded its merits decisions in its conclusion that BLM failed to engage in an NHPA process that included the public—not on the basis that BLM failed to consult sufficiently with any given tribe. *Id.* at 1153–54.

Here, by contrast, the Court has determined that BLM was not required to consult with the People, who are not a federally recognized tribe, and that BLM's determination of which tribes to consult with—which excluded RSIC—was reasonable and in good faith.[20] Plaintiff-Intervenors do not seek to disturb these rulings. Their own interests in Thacker Pass do not entitle them to assert claims challenging processes in which they are not entitled to participate and, in so doing, abrogate *other* tribes' sovereignty.

Because RSIC and the People cannot establish standing to assert the claims they describe, the Court need not reach their arguments concerning the zone-of-interest test or prudential standing.[21] But even if it did, the applicable prudential considerations are not satisfied here. A plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982). To the extent that "Congress created a cause of action for" RSIC and the People,[22] it permitted RSIC and the People to assert their own legal rights to participate in the NHPA process—claims on which the Court has determined they are not likely to succeed.

---

[20] *See* Order at 7, 9–18.

[21] *See* Mot. for Recons. at 12–16.

[22] *See* Mot. for Recons. at 16.

Finally, even if RSIC and the People satisfied the reconsideration standard—which they do not—and established *any* legal error—which they have not—and had standing to assert such claims—which they do not—reconsideration is not warranted because, as explained in Federal Defendants' opposition to Plaintiff-Intervenors' motion for a preliminary injunction, Federal Defendants' consultation with the tribes it identified for consultation satisfied the NHPA's procedural requirements.[23]

### B.    Mere procedural injury does not create irreparable harm

RSIC and the People next argue that reconsideration is warranted because the "Court overlooked the irreparable, procedural harm" that they claim to have established.[24] Specifically, they contend that an agency's failure to follow a procedure, without anything more, can establish irreparable harm to RSIC and the People.[25]

Like the last, this argument does not merit reconsideration because RSIC and the People merely restate arguments already raised and rejected. *See Brown*, 378 F. Supp. 2d at 1288. The Court clearly did not "overlook" this argument, as RSIC and the People contend: it acknowledged this argument directly in its Order.[26] Yet it ultimately concluded that RSIC had not satisfied the irreparable harm element.[27]

In any event, the Court did not err because violation of a procedural statute like the NHPA, without more, does not create irreparable harm. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (discussing procedural injury *in vacuo*);

---

[23] *See* Opp'n to PI Mot. at 16–18.

[24] Mot. for Recons. at 19.

[25] *Id.* at 19–21.

[26] Order at 18–19 ("[t]he Tribes argue they will be irreparably harmed . . . because they have suffered a procedural injury by not being consulted before BLM issued the ROD . . . . Defendants counter that there is no presumption of irreparable harm from the violation of a procedural statute like the NHPA.").

[27] *Id.* at 22.

*Cloud Found. v. U.S. Bureau of Land Mgmt.*, 802 F. Supp. 2d 1192, 1208 (D. Nev. 2011) ("*Winter* made clear that in order to obtain a preliminary injunction, the plaintiffs must show a likelihood of irreparable harm—NEPA violation or not."). In fact, the cases on which RSIC and the People rely support this position. For example, in *Northern Mariana Islands v. United States*, the court acknowledged that a party "experiences actionable harm when 'depriv[ed] of a procedural protection to which he is entitled' under the APA," but required an additional showing of "irreparable harm that cannot be cured by ultimate success on the merits" before issuing a preliminary injunction. 686 F. Supp. 2d 7, 17-20 (D.D.C. 2009). The court in *Save Strawberry Canyon v. Department of Energy* relied on a finding of imminent environmental injury, not mere procedural injury alone. 613 F. Supp. 2d 1177, 1189 (N.D. Cal. 2009).

Finally, even if RSIC and the People could prevail on this point, reconsideration of this conclusion is not merited because RSIC and the People have not established procedural injury. They do not seek reconsideration of the Court's conclusion that BLM made a reasonable and good faith effort in deciding which tribes to reach out to for consultation and, as explained above, they are not entitled to reconsideration on their sole merits-based argument presented here. To establish procedural injury they must show that BLM failed to follow applicable procedures under the NHPA in a manner that injured them, and they have not done so.[28]

## II.   New evidence does not merit reconsideration

As their final argument for reconsideration, RSIC and the People invoke what they describe as "an abundance of new evidence" in support of their

---

[28] For the same reasons, any reconsideration of their arguments going to the irreparable harm element of the *Winter* analysis would not alter the outcome because they still have not demonstrated a likelihood of success on the merits of their claims. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 24 (2008).

contention that the narrow, limited archeological surveys conducted under the HPTP will cause them irreparable harm.[29] But reconsideration is not warranted because they have not made the requisite showing to obtain reconsideration based on new evidence and, in any event, the new evidence does not alter the harms analysis or the ultimate outcome here.

First, in order to obtain reconsideration based on new evidence, Plaintiff-Intervenors are "obliged to show not only that this evidence was newly discovered or unknown to" them during the preliminary injunction proceedings, "but also that it could not with reasonable diligence have discovered and produced such evidence." *Frederick S. Wyle Prof'l Corp. v. Texaco*, Inc., 764 F.2d 604, 609 (9th Cir.1985); *see also Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 n. 6 (9th Cir.1994) ("Evidence is not newly discovered if it was in the party's possession at the time of [the decision] or could have been discovered with reasonable diligence." (citation omitted)); *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993) ("The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'") (citation omitted). They have not even attempted to do so here.

Even if they were able to do so, however, this "new" evidence does not situate a massacre site within the Project Area or render it more likely that excavation under the HPTP will disturb human remains. RSIC and the People rely on this evidence to support the argument—one that this Court has already rejected as a basis for irreparable harm—that some individuals fled a massacre into the Project Area such that "the specific excavations planned for the project area [under

---

[29] Mot. for Reconsideration at 4–5, 21–25. Because this evidence was not before the agency during the NHPA process, and because Plaintiff-Intervenors have not established the necessary prerequisites for its consideration as an exception to that rule, it is not properly before the Court on the merits. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992-93 (9th Cir. 2014); *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008).

the HPTP] will likely disturb these human remains and cause irreparable harm."[30]
At oral argument, counsel for RSIC and the People argued that even though their
evidence placed the alleged massacre site outside of the Project Area, people may
have fled through the Project Area.[31] Relying on previous archival research, an
ethnographic study, extensive pedestrian surveys, prior disturbance in the Project
Area, and unrebutted evidence concerning Paiute manner of burial, the Court
concluded that the limited excavation under the HPTP was not likely to encounter
human remains. And even if it did, as the Court observed, the HPTP and NAGPRA
impose requirements for handling human remains should they be encountered.[32]
The Court ultimately still found sufficient evidence that the limited excavation
under the HPTP will not irreparably harm RSIC. New evidence supporting only the
possibility that people *may* have run into the Project Area cannot alter these
conclusions.

This is especially true when the evidence does not, in fact, establish that
people were killed within the Project Area. First, like the 1868 surveyor notes that
the Court already considered, the *Owyhee Avalanche* article at best sites the massacre
in the Quinn River Valley—to the southeast of, downhill from, and outside of the
Project Area.[33] Though the autobiography of Bill Haywood and its accounts from

---

[30] Mot. for Recons. at 22–24.

[31] Order at 21.

[32] *Id.* at 21 (citing HPTP, ECF No. 65-14 at 32); *see also* Fed. Defs' Opp'n to Pl.-Intervenors'
Mot. for Prelim. Inj. at 21.

[33] *See* Order at 13–14; Pl.-Intervenors' Exhibit 2. The *Owyhee Avalanche* further notes that the
cavalry placed soldiers "between the mountain and the camp," rendering it less likely that
those in the camp would have fled into the Project Area—that is, uphill and in the direction
of soldiers. The 1868 survey notes supports this interpretation, locating remains as "scattered
over *this Junction of* the Township," that is, "[a]long the line between [sections] 22 [and] 23,
and between the creek and the meadow," which is to the east of the camp *and* the Project
Area. *See* Pl.-Intervenors' Exhibit 1 at 298–99, ECF No. 73-1 (emphasis added to indicate
language omitted from Plaintiff-Intervenors' quotation); Schonlau Decl., ECF No. 87-1

---

Jim Sackett and Ox Sam mention Thacker Pass by name, this hearsay-within-hearsay published long after the events recounted does not situate the camp in the Project area—or in any specific location in the vicinity of Thacker Pass vis-à-vis the Quinn River.[34] Locating it within in the Project area would contradict the other evidence Plaintiff-Intervenors have presented. Finally, Plaintiff-Intervenors' map merely supports the fact that all excavations under the HPTP will occur within the Project Area—and that the camp described in the 1868 survey falls outside that area.[35] None of this "new" evidence contradicts or requires reconsideration of the Court's conclusion that, despite extensive disturbance and surveys, *no* indication of human remains has been found within the Project area[36] and that, in the unlikely event that they *are* found, the HPTP imposes strict requirements to mitigate any harm.[37]

Ultimately, this "new" evidence goes only to the irreparable harm element of the *Winter* test and would not disturb the Court's conclusion that RSIC and the People have not demonstrated a likelihood of success on the merits. Because Plaintiff-Intervenors must carry their burden on both elements to obtain preliminary injunctive relief, it cannot, alone, support issuance of a preliminary injunction. *Winter*, 555 U.S. at 24.

---

Exhibit 1-A (indicating meadows to the south and east of the described camp); *id.* Exhibit 1-D (showing camp relative to Project Area).

[34] ECF No. 96-3 at 27 (indicating that the cavalry as riding down or up the pass to reach the encampment); *id.* at 29 (describing the Paiute as at the Quinn River to hunt ducks and geese).

[35] *See* ECF No. 96-4. BLM provided an unredacted copy of the HPTP to RSIC pursuant to an information-sharing agreement with the tribe. For their own protection, the locations of the artifacts described in the HPTP, and thus the locations of proposed excavation, are protected from public disclosure under at least 16 U.S.C. § 470hh.

[36] *See* Order at 21; *see also* Fed. Defs' Opp'n to Pl.-Intervenors' Mot. for Prelim. Inj. at 20; Fed. Defs' Surreply at 3–4; *see generally* HPTP, ECF No. 65-14.

[37] *See* Order at 21.

## **CONCLUSION**

Plaintiff-Intervenors have not demonstrated any error of law, let alone "clear error," or new evidence that would entitle them to preliminary injunctive relief. Federal Defendants therefore respectfully request that the Court deny their motion for reconsideration.


Respectfully submitted this 15th day of October, 2021.

> TODD KIM
> Assistant Attorney General
> United States Department of Justice
> Environment and Natural Resources Div.
>
> _/s/ Arwyn Carroll_
> ARWYN CARROLL (MA Bar 675926)
> LEILANI DOKTOR (HI Bar 11201)
> Trial Attorney
> Natural Resources Section
> P.O. Box 7611
> Washington, D.C. 20044-7611
> Phone:  202-305-0465
> Fax:  202-305-0506
> arwyn.carroll@usdoj.gov
> leilani.doktor@usdoj.gov
>
> _Attorneys for Federal Defendants_