UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BARTELL RANCH LLC, *et al.*,<br><br>　　　　　　　　　　　Plaintiffs,<br>　v.<br>ESTER M. MCCULLOUGH, *et al.*,<br><br>　　　　　　　　　　　Defendants. | Case No. 3:21-cv-00080-MMD-CLB<br><br>ORDER |

## I.  SUMMARY

Plaintiffs[1] and Intervenor-Plaintiffs[2] in this consolidated case challenge the Bureau of Land Management of the U.S. Department of Interior[3] ("BLM")'s approval of Intervenor-Defendant Lithium Nevada Corporation's ("Lithium Nevada") plan to build a lithium mine near Thacker Pass, Nevada (the "Project") under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* ("APA"), the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-61, the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1787, and the National Historic Preservation Act, 54 U.S.C. §§ 300101 ("NHPA"). (ECF Nos. 1, 46, 83.) *See also Western Watersheds Project, et al. v. Bureau of Land Management of the U.S. Department of the Interior, et al.*, Case No. 3:21-cv-00103-MMD-CLB, ECF No. 1 (D. Nev. Filed Feb. 26, 2021) (since consolidated into this case). Before

---

[1] Bartell Ranch LLC and Edward Bartell (collectively, the "Rancher Plaintiffs"), along with Western Watersheds Project, Wildlands Defense, Great Basin Resource Watch, and Basin and Range Watch (collectively, the "Environmental Plaintiffs").

[2] Atsa Koodakuh Wyh Nuwu/People of Red Mountain ("the People"), Reno-Sparks Indian Colony ("RSIC"), and the Burns Paiute Tribe (collectively, the "Tribes").

[3] Ester M. McCullough, the District Manager of BLM's Winnemucca office, along with the Department of the Interior, are also named Defendants.

the Court is RSIC and the People's motion for reconsideration (ECF No. 96 ("Motion"))[4] of the Court's prior order (ECF No. 92 ("Prior Order")) denying their motion for a preliminary injunction,[5] along with an accompanying motion for leave to file a small portion of the Motion and an exhibit under seal (ECF No. 98).[6] Because RSIC and the People have not met the reconsideration standard, the Court maintains that the Prior Order was correctly decided, and as further explained below, the Court will deny the Motion.

## II.    LEGAL STANDARD

A motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003) (citation omitted). Reconsideration is appropriate if this Court "(1) is presented with newly discovered evidence, (2) committed clear error or the

---

[4]Defendants (ECF No. 105) and Lithium Nevada (ECF No. 106) filed responses and RSIC and the People filed a reply (ECF No. 107). The Burns Paiute Tribe also joined the Motion. (ECF No. 99.) "The joinder is solely limited to the presentation of new evidence presented in the Motion regarding the Thacker Pass Massacre Site." (*Id.* at 2.)

[5]This order does not address the pending motions regarding the administrative record (ECF Nos. 108, 110, 111, 115), which the Court will address in a subsequent order or orders.

[6]RSIC's motion to seal is unopposed. It is supported by a declaration from counsel. (ECF No. 98-1.) In the motion to seal, RSIC seeks the Court's leave to redact the locations of certain excavations planned as part of the Historic Properties Treatment Plan ("HPTP"). (ECF No. 98 at 1-4.) These redactions appear on pages 24 and 25 of the Motion. (*Id.* at 3-4.) The motion to seal also seeks to file one exhibit, a map of the Project area with HPTP sites plotted on it, under seal. (*Id.* at 1-4.) RSIC explains that they have filed this nonpublic information under seal because RSIC received it from BLM under a confidentiality agreement, and to protect the location of these culturally sensitive sites from looters, which is why RSIC and BLM entered into the confidentiality agreement in the first place. (*Id.* at 3.) The Court finds that RSIC has shown compelling reasons to include these limited redactions in its Motion and file one exhibit under seal. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101-03 (9th Cir. 2016) (holding that the compelling reasons standard applies to documents filed as part of preliminary injunction proceedings). Specifically, the threat of third parties looting sites containing cultural resources is a compelling reason to keep this material under seal. *See, e.g., La Posta Band of Diegueno Mission Indians of La Posta Rsrv. v. Trump*, Case No. 320CV01552AJBMSB, 2021 WL 51454, at *2 (S.D. Cal. Jan. 5, 2021) (finding as such).

initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted). But "[a] motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005) (citation omitted).

Motions to reconsider are generally left to the discretion of the district court. *See Herbst v. Cook*, 260 F.3d 1039, 1044 (9th Cir. 2001). A district court has discretion not to consider arguments that were not raised until a motion for reconsideration without a good excuse for the delay. *See Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 811 (9th Cir. 1995); *N.W. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988). Moreover, motions for reconsideration are generally not justified on the basis of new evidence that could have been discovered prior to a district court's ruling. *See Coastal Transfer Co. v. Toyota Motor Sales*, U.S.A., 833 F.2d 208, 211-12 (9th Cir. 1987).

The Court also incorporates by reference its recitation of the legal standard governing preliminary injunctions from the Prior Order. (ECF No. 92 at 4-5.)

**III.   DISCUSSION**

RSIC and the People raise two main arguments in their Motion, the first with two subparts. RSIC and the People first argue the Court clearly erred in: (1) finding the Tribes lack prudential standing to assert claims on behalf of the Fort McDermitt and Summit Lake Tribes, and the Winnemucca Indian Colony, who were consulted by BLM and are not parties to this case; and (2) finding the People lack prudential standing because they are a subset of the Fort McDermitt Tribe. (ECF No. 96 at 7-19.) Second, the Tribes argue they have uncovered additional evidence that a massacre occurred near the Project area in the 1860s since they filed their initial motion for a preliminary injunction.[7] (*Id.* at 19-25.) The Court addresses, and rejects, these two primary arguments below.

///

---

[7] As noted, the Burns Paiute Tribe joins this argument, but not the arguments about prudential standing. (ECF No. 99 at 2.)

**A. Prudential Standing**

RSIC and the People's arguments that the Court erred in finding that the People are not a proper party, and the Tribes may not assert inadequate consultation claims under the NHPA on behalf of the tribes that the BLM did consult, who are not parties to this case, are unpersuasive on several, alternative levels. First, while it is clear that the Tribes disagree with the Court's rulings on these two issues, "[a] motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown*, 378 F. Supp. 2d at 1288; *see also* LR 59-1(b) (noting that motions for reconsideration are disfavored and parties who repeat arguments may be sanctioned). The Tribes generally raised the same arguments they raise in their Motion in the proceedings on their initial motion for a preliminary injunction, and the Court rejected them in the Prior Order. (ECF No. 92 at 6-7.) The Court does not find that it erred in these rulings in the Prior Order, much less that it clearly erred as would be required to make reconsideration proper.

Second, to the extent RSIC and the People are expanding upon their standing arguments to make arguments they did not assert in connection with the preliminary injunction proceedings, that too is improper without any explanation—and they offer none—as to why they did not raise those arguments in the initial proceedings on their motion for a preliminary injunction. *See Rosenfeld*, 57 F.3d at 811 (finding that the "district court did not abuse its discretion in declining to consider an argument raised for the first time on reconsideration without a good excuse.").

Third, RSIC and the People's challenge to the Court's finding in the Prior Order that the People are not a proper party to this case suffers from the additional procedural defect that the Tribes did not respond to Defendants and Lithium Nevada's argument on this point that Defendants and Lithium Nevada raised in in their responses to the Tribes' preliminary injunction motion—as the Court noted in the Prior Order. (ECF No. 92 at 6.) Thus, the Tribes arguably conceded that argument and it would be improper to allow RSIC and the People to attempt to fully respond to Defendants and Lithium Nevada's argument for the

4

first time in the Motion. Moreover, the Motion does not address the caselaw the Court relied on in the Prior Order in finding the People not a proper party to this case. (*Compare id.* at 6-7 *with* ECF No. 96.) To persuasively argue the Court clearly erred, RSIC and the People should have addressed the law the Court relied on in making one of the findings they challenge. But they did not.

Fourth, RSIC and the People spend much of their Motion and corresponding reply arguing that they have Article III standing to vindicate the procedural rights of the non-party tribes that BLM did consult with, but the Court never found in the Prior Order that they lacked Article III standing.[8] Indeed, and as should be clear, the Court will address the merits of RSIC's claim in its Complaint (ECF No. 46) later this Winter or in early Spring.[9] The Court instead found, as a prudential matter, that the Tribes are not proper parties to assert violations of the rights of the nonparty tribes that BLM did consult. (ECF No. 92 at 6-7.)

Fifth, and relatedly, there are at least three different principles that make up prudential standing: "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). While much of the Motion focuses on the 'zone of interests' principle, the Motion also acknowledges that the Court based its finding that the Tribes cannot assert violations of the rights of nonparty tribes who were consulted on the general prohibition on a litigant's raising another person's legal rights. (ECF No. 96 at 14.) Thus, the Court does not further address RSIC and the People's 'zone

---

[8]Much of the caselaw upon which the Tribes rely in their Motion is therefore inapposite, rendering statements like, "this Court overlooked or misunderstood controlling Supreme Court and Ninth Circuit precedent" unpersuasive. (ECF No. 96 at 2.)

[9]Thus, to the extent RSIC and the People argue the Court 'foreclosed RSIC's suit,' RSIC is mistaken. (ECF No. 96 at 12-13.)

5

of interests' arguments that pervade the Motion and instead focuses on RSIC and the People's argument as to why the Court erred in its application of the general prohibition on a litigant raising another person's legal rights.[10] (*Id.* at 14-16.) This is especially the case because the Court did not dismiss RSIC's claims in the Prior Order—it merely denied the Tribes' request for a preliminary injunction. (ECF No. 92.) RSIC's proffered caselaw regarding the 'zone of interests' is also largely inapposite because those cases deal with appeals of orders dismissing claims entirely. *See, e.g.*, *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 25 (1st Cir. 2007) (noting that the district court dismissed for lack of standing).

Neither *Nulankeyutmonen Nkihtaqmikon*, 503 F.3d 18, nor the other cases RSIC relies on in the pertinent portion of its Motion adequately support RSIC's argument that it may assert claims on behalf of the nonparty tribes BLM did consult. (ECF No. 96 at 14-16.) RSIC relies on *United States v. 0.95 Acres of Land*, 994 F.2d 696, 698 (9th Cir. 1993) for the uncontroversial but irrelevant proposition that "NHPA is similar to NEPA except that it requires consideration of historic sites, rather than the environment." *Id.* (*See also* ECF No. 96 at 14-15.) *Tyler v. Cuomo*, 236 F.3d 1124 (9th Cir. 2000) is similar to *Nulankeyutmonen Nkihtaqmikon*, 503 F.3d 18, in that it is an appeal from a dismissal for lack of Article III standing. (ECF No. 96 at 15.) And in *Lexmark*, 572 U.S. at 123, too, the district court had entirely dismissed the defendant's counterclaim for a violation of the Lanham Act. As noted, the Court has never ruled that RSIC lacks Article III standing and will consider the merits of its claim. But the Court will not consider RSIC's arguments about the quality of consultation provided to the nonparty tribes BLM did consult. *See, e.g.*, *Coal.*

---

[10]The pertinent portion of *Montana Wilderness Ass'n v. Fry*, 310 F. Supp. 2d 1127, 1150-51 (D. Mont. 2004), upon which RSIC again relies (ECF No. 96 at 14) similarly involved a 'zone of interests' analysis regarding Article III standing, which the Court did not engage in in the Prior Order. Moreover, as Defendants note (ECF No. 105 at 8 n.15), the Court already addressed *Fry* because the Tribes relied on it in their preliminary injunction motion (*see, e.g.*, ECF No. 45 at 5), and the Court noted in the Prior Order that it was only explicitly addressing caselaw it found affected the outcome of the order (ECF No. 92 at 22). Moreover, *Fry* is not binding on this Court in any event, and the Court does not find it particularly persuasive given the circumstances of this case.

*of Clergy, Laws., & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002) ("It is a well-established rule that a litigant may assert only his own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties.") (citation omitted).

Part of the Court's concern animating its finding that the Tribes lack prudential standing to vindicate the rights of the nonparty tribes who were consulted is practical: if BLM proffers evidence to support its view that its Section 106 consultation with the tribes it did consult with was adequate, the Tribes allege that it was not but offer no supporting evidence, and the tribes that BLM actually consulted with are silent, how can the Court find other than it did in the Prior Order—that the evidence before the Court suggested BLM complied with its Section 106 and public consultation obligations? (ECF No. 92 at 17.) It would be improper for the Court to make an evidentiary finding without necessary evidence. That evidence would have to come from the third-party tribes. Said otherwise, the Court would prefer to hear from the tribes that BLM actually consulted to find out whether they thought BLM's Section 106 consultation with them regarding the Project was sufficient instead of the Tribes, who were undisputedly not consulted.[11]

Another aspect of the Court's prudential standing findings—particularly as to the People—relates to the implementing regulations of the NHPA upon which the Tribes rely. 36 C.F.R. § 800.2(c)(2)(ii)(C) states that BLM "must recognize the government-to-government relationship between the Federal Government and Indian tribes" and therefore "consult with representatives designated or identified by the tribal government." That representative cannot be the People because the People are all members of the Fort McDermitt Paiute and Shoshone Tribe. (ECF No. 92 at 6-7.) And here, BLM sent a consultation letter to Chairman Tildon Smart of the Fort McDermitt Tribe. (ECF No. 65-8 at 2-4.) If Chairman Smart designated the People as representatives of the Fort McDermitt

---

[11]The Court found the Tribes were unlikely to prevail on the merits of their claim that BLM's decision not to consult them was unreasonable in the Prior Order, and RSIC and the People's Motion does not challenge that finding. (ECF No. 92 at 7-18; *see also generally* ECF No. 96.)

7

1  Tribe, the People presumably would have offered some argument or evidence to this
2  effect. They did not. Further, the People presumably disagree with Chairman Smart's
3  decision not to respond to that letter because they moved to intervene in this case.
4  However, it seems improper under these implementing regulations for the Court to wade
5  into a dispute about whether to support or oppose the Project amongst members of the
6  Fort McDermitt Tribe[12] because that could be perceived as disregarding the government-
7  to-government relationship between the federal government and the Fort McDermitt Tribe.
8  *See* 36 C.F.R. § 800.2(c)(2)(ii)(C). The Court does not wish to do that.

In sum, and for the reasons provided above, the Court declines to reconsider its decisions that the People are not a proper party to this case, and RSIC may not argue that BLM violated the consultation rights of the tribes it did consult with.

**B. Additional Evidence**

RSIC and the Burns Paiute Tribe[13] also proffer additional evidence supporting their view that it is likely some victims of an 1865 massacre of Paiutes perpetrated by the 1st Nevada Cavalry that occurred near the Project area likely fled into the Project area, so their remains may be somewhere within the Project area.[14] (ECF No. 96 at 21-25.) While the Court agrees with RSIC and the Burns Paiute Tribe that this additional evidence further highlights the shameful history of the treatment of Native Americans by federal and state governments, it does not persuade the Court that it should reconsider the irreparable harm findings of the Prior Order. (ECF No. 92 at 18-22.)

///

---

[12]The Court infers there is a dispute both because the People moved to intervene, and Lithium Nevada proffered a declaration from one member of the Fort McDermitt Tribe who disagrees with the People and thinks the Project should move ahead. (ECF No. 66-10.)

[13]As noted, they joined this portion of the Motion. (ECF No. 99.)

[14]RSIC also argues the Court overlooked its irreparable procedural harm argument. (ECF No. 96 at 19-21.) The Court disagrees. The Court mentioned that the Tribes made this argument (ECF No. 92 at 18-19) but did not find it materially affected the outcome the Court reached in the Prior Order (*id.* at 22).

First, and as Defendants and Lithium Nevada argue, the Tribes could have presented this new evidence with their preliminary injunction motion, as it is over 100 years old, but did not. While of course a preliminary injunction proceeding is different from, say, summary judgment proceedings in that the factual record is necessarily less well-developed, the fact that the Tribes did not present this evidence with their initial motion nonetheless weighs against considering it on reconsideration. *See, e.g.*, *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880-81 (9th Cir. 2009) (finding the district court did not abuse its discretion in denying a motion for reconsideration of an order granting a preliminary injunction on the basis of new evidence where the party could have introduced that evidence before the district court entered its preliminary injunction order but did not). Generally speaking, a party must make a showing of diligence to support a request for reconsideration based on newly discovered evidence that could have been discovered earlier. *See ACandS, Inc.*, 5 F.3d at 1263 ("The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'") (citation omitted); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 n.6 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994) ("Evidence is not newly discovered if it was in the party's possession at the time of summary judgment or could have been discovered with reasonable diligence."). The fact that the Motion does not even refer to RSIC's diligence in locating the purported newly discovered evidence tends to weigh against reconsideration.

Second, RSIC's proffered newly discovered evidence is cumulative of the evidence the Court already considered and found did not sufficiently support issuing a preliminary injunction. The Tribes proffered evidence that a massacre occurred near the Project area in the 1860s in the preliminary injunction proceedings, but the Court found that evidence did not show a massacre occurred within the Project area, especially considering that there has been significant ground disturbance within the Project area for some time that had never located any human remains and there are plans in place to address the discovery of human remains in any event. (ECF No. 92 at 21-22.) And as further explained

9

below, RSIC's proffered newly discovered evidence does not definitely establish that a massacre occurred within the Project area. Thus, it does not persuade the Court to reconsider the Prior Order. *See La Posta Band of Diegueno Mission Indians*, 2021 WL 51454, at *2-*4 (denying motion for reconsideration based on purported new evidence of the government's decision to treat arguably animal bone fragments as if they were human and an additional, inadvertent discovery of a fire ring in part because the purported new evidence was cumulative of the evidence the district court considered in the initial preliminary injunction proceedings).

Third, and even on RSIC's own terms, the proffered newly discovered evidence is too speculative to support an irreparable harm finding. RSIC begins its argument by arguing that the newly discovered evidence makes it "much more likely" that a massacre occurred in the Project area. (ECF No. 96 at 21.) RSIC goes on to confirm the evidence considered and discussed in the Prior Order showed that the camps of the Paiutes who were massacred were near, but not in, the Project area. (*Id.* at 21.) RSIC then argues its newly discovered evidence "make[s] it very likely that the September 12, 1865 massacre happened, at least partially, within the project area." (*Id.*) RSIC later describes how a newly proffered map shows "how close excavation will occur to the Paiute camps," meaning that, "[t]hese excavation sites are also likely within the massacre site." (*Id.* at 24.) Contrary to RSIC's argument (*id.* at 25), this is insufficiently specific evidence of irreparable harm. The pertinent portion of the Motion is couched in possibility—RSIC deliberately avoids statements of certainty. Accordingly, even if the Court were to consider RSIC's newly discovered evidence, it is too speculative to support an irreparable harm finding sufficient to grant a preliminary injunction. See *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.") (citation omitted).

The Court therefore declines to reconsider the Prior Order and will deny the Motion.

///

///

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that RSIC and the People's motion for reconsideration (ECF No. 96) is denied.

It is further ordered that RSIC's unopposed motion to seal (ECF No. 98) is granted.

DATED THIS 8th Day of November 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE