UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BARTELL RANCH LLC, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br>　v.<br>ESTER M. MCCULLOUGH, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 3:21-cv-00080-MMD-CLB<br><br>ORDER |

**I.    SUMMARY**

Plaintiffs[1] and Intervenor-Plaintiffs[2] in this consolidated case challenge the Bureau of Land Management of the U.S. Department of Interior's[3] ("BLM") approval of Intervenor-Defendant Lithium Nevada Corporation's ("Lithium Nevada") plan to build a lithium mine near Thacker Pass, Nevada (the "Project") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-61, the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1787, and the National Historic Preservation Act ("NHPA"), 54 U.S.C. §§ 300101. (ECF Nos. 1, 46, 83.) *See also Western Watersheds Project, et al. v. Bureau of Land Management of the U.S. Department of the Interior, et al.*, Case No. 3:21-cv-00103-MMD-CLB, ECF No. 1 (D. Nev. Filed Feb. 26, 2021) (since consolidated into this case). Before the Court are the parties' motions regarding the Administrative Record ("AR"). (ECF Nos.

---

[1]Bartell Ranch LLC and Edward Bartell (collectively, the "Rancher Plaintiffs"), along with Western Watersheds Project, Wildlands Defense, Great Basin Resource Watch, and Basin and Range Watch (collectively, the "Environmental Plaintiffs").

[2] Reno-Sparks Indian Colony ("RSIC"), Atsa Koodakuh Wyh Nuwu/People of Red Mountain (the "People"), and the Burns Paiute Tribe (collectively, the "Tribes").

[3]Ester M. McCullough, the District Manager of BLM's Winnemucca office, along with the Department of the Interior, are also named Defendants.

108, 110, 111, 115.) As further explained below, the Court will grant in part, and deny in part, Rancher Plaintiffs', Environmental Plaintiffs', and the Tribes' motions, but deny Lithium Nevada's motion.

## II. BACKGROUND

The Court incorporates by reference the background for this case that it included in the prior substantive orders it has issued thus far. (ECF No. 92 at 2-4.) *See also Western Watersheds*, Case No. 3:21-cv-00103-MMD-CLB, ECF No. 48 at 2. Defendants produced the administrative record regarding Plaintiffs' NEPA and FLPMA claims on July 30, 2021. (ECF No. 122 at 8.) Plaintiffs and Defendants met and conferred regarding the documents Defendants included in that administrative record from August 17, 2021, to October 15, 2020. (*Id.*) Unable to reach agreement, Rancher Plaintiffs, Environmental Plaintiffs, and Lithium Nevada filed their motions to complete or alternatively supplement the administrative record on October 22, 2021. (ECF Nos. 108, 110, 111.)

After the Court granted the Tribes leave to intervene, Defendants supplemented the administrative record with documents pertinent to the Tribes' NHPA claims and mailed this record to the parties on October 1, 2021. (ECF No. 130 at 3.) Defendants and the Tribes met and conferred about the documents that should be included in this record from October 9, 2021, through November 4, 2021. (*Id.*) Unable to reach agreement, RSIC and the People filed their administrative record motion on November 5, 2021, and the Burns Paiute Tribe joined it on November 8, 2021. (ECF Nos. 115, 116.) The Tribes[4] raised new arguments in their reply brief based on a pending motion for leave to file an amended complaint on November 29, 2021. (ECF No. 140.) The Court accordingly granted Defendants' and Lithium Nevada's unopposed motions for leave to file surreplies. (ECF Nos. 144, 151.) Defendants filed the later filed of those two surreplies on December 10,

---

[4]Because the Burns Paiute Tribe joined the motion, and for convenience, the Court generally refers to RSIC and the People's administrative record motion as 'the Tribes' motion' herein.

2

2021. (ECF No. 148.) Thus, these motions regarding the contents of the Administrative Record became fully briefed on December 10, 2021.

### III.   LEGAL STANDARD

"The 'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis and citation omitted). The general rule is that "that courts reviewing an agency decision are limited to the administrative record." *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005) (citation omitted). But the Ninth Circuit recognizes four exceptions to this general rule. Specifically, district courts have discretion to look beyond the administrative record in the following circumstances:

> (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.

*Id.* at 1030 (internal quotation marks and citation omitted). These exceptions "are narrowly construed and applied" to foreclose improper de novo review of agency decisions. *Id.* Parties may not use extra-record evidence "as a new rationalization either for sustaining or attacking [an] [a]gency's decision." *Ass'n of Pac. Fisheries v. E.P.A.*, 615 F.2d 794, 811-12 (9th Cir. 1980). Thus, rather than expand the scope of evidentiary review, "these limited exceptions operate to identify and plug holes in the administrative record." *Lands Council*, 395 F.3d at 1030. Parties seeking to expand the scope of review bear a "heavy burden to show that the additional materials sought are necessary to adequately review" an agency's decision. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).

### IV.   DISCUSSION

Rancher Plaintiffs (ECF No. 108), Lithium Nevada (ECF No. 110), Environmental Plaintiffs (ECF No. 111) and the Tribes (ECF No. 115) have all filed motions seeking to

3

either complete or supplement the AR in this case—or for the Court to take judicial notice of the documents they seek added to the record. To start, the Court declines to take judicial notice of any of the pertinent documents. *See All. for Wild Rockies v. Probert*, 412 F. Supp. 3d 1188, 1198 (D. Mont. 2019), *appeal dismissed sub nom. All. for the Wild Rockies v. Benson*, Case No. 19-36001, 2020 WL 3443468 (9th Cir. June 10, 2020) ("a party cannot circumvent the rules governing record supplementation by asking for judicial notice rather than supplementation.") (citation omitted); *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 975-76 (9th Cir. 2006) (affirming on abuse of discretion review the district court's decisions to neither supplement the record with a particular document nor take judicial notice of it). The Court otherwise addresses these four motions below in the order they were filed.

### A. Rancher Plaintiffs' Motion (ECF No. 108)

Rancher Plaintiffs request that the AR be supplemented and/or they be permitted discovery on nine categories of documents. (ECF No. 108 at 8-9.) However, Defendants structure their responsive arguments by grouping the nine categories into three groups. (ECF No. 122.) For convenience, the Court adopts Defendants' structure and addresses Defendants' three arguments below instead of addressing each of the nine categories of documents individually.

#### 1. Deliberative Materials (Categories 3, 5, 6, 7)

Defendants argue that Rancher Plaintiffs are not entitled to have communications between agency employees and officials, or draft documents, included as part of the Administrative Record because their inclusion would improperly probe the mental processes of individual agency members and are not themselves evidence because they only reflect BLM's consideration of the evidence before it. (ECF No. 122 at 15.) Defendants further argue they are not required to produce a privilege log for any documents they are withholding as deliberative because they are not asserting a privilege—deliberative documents are simply not part of the Administrative Record. (*Id.* at 16-17.) However, Rancher Plaintiffs make several arguments in reply based primarily on *Ksanka Kupaqa*

4

Case 3:21-cv-00080-MMD-CLB   Document 155   Filed 12/27/21   Page 5 of 16

*Xa'lcin v. United States Fish & Wildlife Serv.*, Case No. CV 19-20-M-DWM, 2020 WL 4193110 (D. Mont. Mar. 9, 2020) that the Court finds more persuasive than Defendants' arguments. (ECF No. 132 at 8-12.)

As that court explained, the administrative record includes all documents and materials directly or indirectly considered by the agency, which must include some deliberative materials. *See Ksanka Kupaqa Xa'lcin*, 2020 WL 4193110, at *2 (citation omitted). "Further, judicial review would be severely undermined if agencies could keep information from the court merely by classifying them as deliberative." *Id.* And there, like here, the defendants admitted that deliberative materials were omitted from the administrative record, which is sufficient to overcome the presumption that the administrative record is complete. *See id.* (*See also* ECF No. 122 at 15-16 (acknowledging implicitly that Defendants excluded certain documents from the record because they argue that deliberative documents are 'properly' excluded from the record and explicitly stating that Defendants did not include draft versions of the Piteau 2020c report).)

Indeed, the Court finds *Ksanka Kupaqa Xa'lcin* sufficiently persuasive such that it will adopt the same approach here despite Defendants' arguments to the contrary. (*Id.* at 10-16.) As Rancher Plaintiffs argue, there is logically a substantial overlap between documents considered deliberative and those that the agency considered. (ECF No. 132 at 10-12.) And without a privilege log, the Court cannot say what Defendants decided not to include in the Administrative Record as deliberative. That means that the Court cannot adequately review Defendants' decision to approve the Project absent supplementation or a privilege log. *See Ksanka Kupaqa Xa'lcin*, 2020 WL 4193110, at *2 ("[i]f the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless.") (quoting *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993)). Defendants must supplement the AR within

5

30 days[5] with any materials previously withheld as deliberative, or alternatively identify any documents still withheld as deliberative when Defendants supplement the AR in a privilege log. The privilege log must be sufficiently descriptive such that the Court and the parties are able to determine exactly what Defendants are choosing to withhold. The portion of Rancher Plaintiffs' motion seeking documents withheld by Defendants as deliberative is accordingly granted.

### 2. Contracts and Communications with Subcontractors (Categories 1, 2, 4, 5, 6, 8)

Rancher Plaintiffs also seek contracts and communications with subcontractors and their employees—Piteau and Associates, ICF, and Range and Riparian Services LLC—who either prepared part of the NEPA documents pertinent to the Project, collected data, or otherwise prepared reports whose data and findings were incorporated into the NEPA documents challenged in this case in Rancher Plaintiffs' categories 1, 2, 4, 5, 6, and 8. Defendants respond that Rancher Plaintiffs have failed to meet their heavy burden to show that the documents they seek falling into these categories were actually considered by BLM. (ECF No. 122 at 19.) Moreover, Defendants argue, it is speculative that any documents beyond those already provided as part of the AR even exist, as Defendants have included some documents in the AR that fall within these categories. (*Id.*) Rancher Plaintiffs' reply crystallizes what they are looking for in seeking these categories of documents—evidence of conflicts of interests that would suggest BLM was capricious in relying on the data and reports collected and prepared by these subcontractors, or, as Rancher Plaintiffs phrase it, BLM must have considered such documents as part of its duty to ensure the integrity of the NEPA process. (ECF No. 132 at 4-6.)

///

---

[5]The *Ksanka Kupaqa Xa'lcin* court gave the defendants 60 days to produce a completed version of the administrative record and a privilege log, but the Court hopes to resolve this case on the merits before the 2022 construction season begins so the Court finds a 30-day time frame is appropriate. *See* 2020 WL 4193110, at *2.

The Court will not require Defendants to supplement the AR with additional documents regarding the relationship between BLM, Lithium Nevada, and various subcontractors that Rancher Plaintiffs seek in their categories 1, 2, 4, 5, 6, and 8. Rancher Plaintiffs have not carried their heavy burden to show BLM considered these types of documents in deciding to approve the Project. Moreover, Rancher Plaintiffs did not specifically identify documents falling within these categories that they contend BLM considered in approving the Project, instead merely speculating that such documents likely exist. *See California v. U.S. Dep't of Lab.*, Case No. 2:13-CV-02069-KJM, 2014 WL 1665290, at *5 (E.D. Cal. Apr. 24, 2014) ("plaintiffs 'must identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record.'") (citation omitted). And to the extent Rancher Plaintiffs are seeking inclusion of the documents in these categories under a 'consideration through citation' theory, the Court rejects that approach because it "'stretches the chain of indirect causation to its breaking point' and it fails to give appropriate deference to the agency's designation of the record." *W. Watersheds Project v. Bureau of Land Mgmt.*, Case No. 3:11-CV-00053-HDM, 2012 WL 13937, at *1 (D. Nev. Jan. 4, 2012) (citations omitted).

In addition, the cases upon which Rancher Plaintiffs rely to argue for inclusion of these categories of documents in the AR because federal agencies have an obligation to ensure the scientific integrity of their environmental impact statements do not sufficiently support Rancher Plaintiffs' argument. (ECF No. 132 at 4-6.) For example, in Rancher Plaintiffs' cited portion of *W. Org. of Res. Councils v. Bureau of Land Mgmt.*, 591 F. Supp. 2d 1206, 1243-44 (D. Wyo. 2008)—a merits order, not an order on the administrative record—the court found that "[t]he choice of Greystone as contractor is not an action that would evidence a compromise of the BLM's objectivity and integrity in the exercise of its administrative responsibilities in this case." *Id.* at 1243. Similarly, in the cited portion of *Vermonters for a Clean Env't, Inc. v. Madrid*, 73 F. Supp. 3d 417, 424 (D. Vt. 2014), that

7

1   court dismissed a NEPA claim based on the theory that the NEPA process was
2   compromised because the plaintiffs had not alleged that the pertinent subcontractors had
3   an agreement to perform construction on the proposed project or actual ownership of the
4   construction site. Here, Rancher Plaintiffs have similarly not alleged or argued that any of
5   the challenged subcontractors will perform construction on the Project or have an
6   ownership stake in it. Rancher Plaintiffs merely argue that Piteau and Associates are
7   involved in the state water rights protest, which is only moving forward because BLM
8   approved the Project. (ECF No. 132 at 6-7.) And in *Colorado Rail Passenger Ass'n v. Fed.*
9   *Transit Admin.*, 843 F. Supp. 2d 1150 (D. Colo. 2011), that court found that the challenged
10  subcontractor did not have a conflict of interest, and even if it did, the agency exercised
11  sufficient oversight in any event. *See id.* at 1160-63. These cases do not support Rancher
12  Plaintiffs' argument.

13  And perhaps more importantly, none of the courts in the cases Rancher Plaintiffs
14  cite in the pertinent portion of their reply brief granted plaintiffs the relief that Rancher
15  Plaintiffs seek here—supplementation of the AR with contracts and communications
16  between the agency, the project proponent, and various subcontractors. (ECF No. 132 at
17  4-6.) The case that most supports Rancher Plaintiffs' position is perhaps *Colorado Wild*
18  *Inc. v. U.S. Forest Serv.*, 523 F. Supp. 2d 1213, 1230 (D. Colo. 2007), but that portion of
19  that order discusses how the plaintiffs there were likely to succeed on the merits of their
20  claim to support that order's conclusion that a preliminary injunction should be continued—
21  not that the administrative record should be supplemented. *See generally id.* In sum,
22  Rancher Plaintiffs provided neither a nonspeculative identification of the documents they
23  are seeking regarding subcontractors in categories 1, 2, 4, 5, 6, 8 nor sufficient legal
24  support to overcome the strong presumption that the AR as assembled by BLM here is
25  already complete. This portion of Rancher Plaintiffs' motion is denied.

26          **3.**    **Comments Between Rancher Plaintiffs and BLM (Category 9)**
27  Rancher Plaintiffs' Category 9 seeks "Comments to and from [Rancher] Plaintiffs to
28  BLM officials and officials at Lithium Nevada Corporation in BLM's possession." (ECF No.

1  108 at 22.) Defendants state they agree to include these documents in the AR. (ECF No.
2  122 at 18 n.6.) However, Rancher Plaintiffs maintain in their reply that Defendants have
3  since backed away from their agreement and now refuse to include some Category 9
4  records in the AR. (ECF No. 132 at 7-8.)
5  If that is true, the Court orders Defendants to complete the AR with all Category 9
6  records in their possession. First, Defendants said they agreed to in their briefing, and did
7  not file a supplemental brief with the Court either stating they were backing away from this
8  agreement, or why. Second, and more importantly, there can be no reasonable dispute
9  that comments submitted to—and received by—BLM as part of the NEPA process
10  challenged here are "documents and materials directly or indirectly considered by agency
11  decisionmakers[.]" *W. Watersheds Project*, 2012 WL 13937, at *1 (citation omitted). They
12  were sent by Rancher Plaintiffs to BLM and Defendants have apparently confirmed that
13  these comments are in their possession. These comments are properly part of the
14  administrative record.

**B. Lithium Nevada's Motion (ECF No. 110)**

Lithium Nevada seeks to supplement the AR with the following two documents submitted in connection with earlier preliminary injunction proceedings in this case under the third *Lands Council* exception for documents "necessary to explain technical terms or complex subject matter[,]" *Lands Council*, 395 F.3d at 1030: (1) February 2021 Thacker Pass Project Monitoring Plan (ECF No. 110-1 ("Monitoring Plan")); and (2) Nevada Department of Wildlife's ("NDOW") Hunter Information Sheet for Unit 031 (ECF No. 110-2 ("Hunter Information Sheet")). (ECF No. 110 at 1-2.) Defendants agree the two documents properly fall within *Lands Council* exception three, and accordingly take no position on the motion. (ECF No. 118.) Environmental Plaintiffs oppose the motion, arguing that BLM could not have considered the Monitoring Plan because it was issued after the ROD, Lithium Nevada is improperly attempting to provide a post-hoc rationalization for BLM's decision, and declining to add this document to the AR would be more consistent with the Court's decision to strike documents submitted by Environmental

1  Plaintiffs earlier in this case. (ECF No. 119 at 1-5.) Environmental Plaintiffs further argue
2  that the Hunter Information sheet is irrelevant and unnecessary because it is irrelevant to
3  the question of whether BLM adequately considered wildlife migration patterns and
4  unnecessary because it offers no further explanation than was already included in the
5  ROD. (*Id.* at 6.) Lithium Nevada replies that the Monitoring Plan and Hunter Information
6  Sheet do not present new rationalizations for the decisions at issue and instead properly
7  fall within the *Lands Council* exception for evidence that explains technical terms or
8  complex subject matter. (ECF No. 129 at 1-2.) The Court agrees with Environmental
9  Plaintiffs as to both documents.

10  The Court begins by reiterating that Lithium Nevada bears a "heavy burden to show
11  that the additional materials sought are necessary to adequately review" an agency's
12  decision. *Fence Creek*, 602 F.3d at 1131. Lithium Nevada has not successfully carried
13  this burden for these two documents. As to the Monitoring Plan, there is no dispute that it
14  post-dates the ROD. (ECF Nos. 110 at 3-4, 118 at 3, 119 at 4-6.) And "exceptions to the
15  normal rule regarding consideration of extra-record materials only apply to information
16  available at the time, not post-decisional information." *Cachil Dehe Band of Wintun Indians*
17  *of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018) (quoting *Tri-Valley*
18  *CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012)). Indeed, BLM states
19  that the Monitoring Plan is not properly part of the AR—even though it takes no position
20  on Lithium Nevada's motion—because it postdates the ROD. (ECF No. 118 at 3.)
21  Moreover, the Court is left with the impression from Lithium Nevada's argument that
22  Lithium Nevada seeks to use the Monitoring Plan to impermissibly support the
23  "correctness or wisdom of the agency's decision" *Asarco, Inc. v. U.S. Env't Prot. Agency*,
24  616 F.2d 1153, 1160 (9th Cir. 1980), because even Lithium Nevada argues that the
25  Monitoring Plan fleshes out a groundwater impact monitoring and mitigation plan that was
26  not complete at the time BLM issued the ROD, suggesting that BLM's decision to approve
27  the plan in the ROD was reasonable. (ECF No. 110 at 3-4.) As Environmental Plaintiffs
28  argue, there is a risk that Lithium Nevada's real purpose for supplementing the AR with

this document is not to explain technical subject matter but instead to respond to Environmental Plaintiffs' allegation that BLM should not have approved the ROD without first finalizing such a monitoring plan and allowing the public to comment on it. (ECF No. 119 at 3-5.) Said otherwise, and as noted, the Court is persuaded by Environmental Plaintiffs' argument on this point.

As to the Hunter Information Sheet, the Court again agrees with Environmental Plaintiffs that the "the breadth of that unit of measurement" (ECF No. 110 at 4) it purportedly provides is already captured in Figure 4.5-1, which is already part of the AR. (ECF No. 119 at 6.) Thus, the Court finds the Hunter Information Sheet is not necessary to define the technical term "Hunt Unit 103." And particularly in view of the heavy presumption against supplementing the administrative record, the Court denies Lithium Nevada's request to include the Hunter Information Sheet in it.

In sum, Lithium Nevada's administrative record motion is denied.

**C. Environmental Plaintiffs' Motion (ECF No. 111)**

To start its analysis of this motion, the Court notes that Environmental Plaintiffs' request to supplement the AR with the Preliminary Draft EIS is moot because Defendants have already agreed to include it in the AR. (ECF No. 122 at 18 n.6.) If Defendants have not already, and solely in the interest of the avoidance of any confusion, the Court orders Defendants to supplement the AR with the Preliminary Draft EIS.

However, Environmental Plaintiffs also argue that a complete administrative record would include a copy of some comments the Nevada Department of Wildlife ("NDOW") submitted in a letter in response to the Preliminary Draft EIS ("NDOW Comment Letter"). (ECF No. 111 at 6.) Environmental Plaintiffs alternatively request the supplementation of the AR to include the NDOW Comment Letter, or that the Court take judicial notice of it. (*See generally id.*) Unlike the Preliminary Draft EIS itself, Defendants have not already agreed to include the NDOW Comment Letter in the AR, and, indeed, Defendants oppose the Court considering the NDOW Comment Letter through any of Environmental Plaintiffs' requested avenues. (ECF No. 122.) Lithium Nevada also opposes making the NDOW

Comment Letter part of the AR or otherwise part of the record before the Court. (ECF No. 123 at 14-17.) A dispute about whether to include the NDOW Comment Letter thus remains live.

Environmental Plaintiffs further request consideration (whether through deeming it properly part of the complete administrative record, supplementing the record, or the Court taking judicial notice) of: "two letters from the Nevada Division of Environmental Protection, Bureau of Mining Regulation and Reclamation ("NDEP") sent to both Lithium Nevada Corp. [] and BLM in October and December of 2020, that detail NDEP's serious concerns about the environmental impacts from the Thacker Pass Project." (ECF No. 111 at 3.) The Court will collectively refer to these two letters as the 2020 NDEP Letters. Defendants and Lithium Nevada also oppose Environmental Plaintiffs' motion as to the 2020 NDEP Letters. (ECF Nos. 122, 123.)

The Court agrees with Environmental Plaintiffs that the NDOW Comment Letter and the 2020 NDEP Letters are properly part of a complete version of the AR, which "consists of all documents and materials directly or indirectly considered by agency decisionmakers and includes evidence contrary to the agency's position." *W. Watersheds Project*, 2012 WL 13937, at *1 (citations omitted). First, there is no dispute that all three letters predate the ROD, unlike some other documents the Court has either decided to strike or not deem part of the AR. (ECF Nos. 111-1 at 20 (dated October 29, 2020), *id.* at 29 (dated December 30, 2020), 111-5 (summary of comments from the NDOW Comment Letter already included in the administrative record).) Second, there is no dispute that BLM officials received copies of all three of these letters before they issued the ROD. (ECF Nos. 111-1 at 27 (cc'd to BLM official Ken Loda), 33 (cc'd to BLM official Ken Loda), 111-5 (indicating that BLM received the letter because BLM summarized it and provided responsive comments).) Third, the subject matter of these letters—impacts of the proposed Project on groundwater and wildlife—are relevant to the decision BLM was gearing up to make in the ROD, and the letters came from state agencies BLM stated it was cooperating with in the ROD, so it is hard to see how BLM could not have at least

indirectly considered them. (ECF No. 111-2 at 3.) *See also Sierra Pac. Indus. v. U.S. Dep't of Agric.*, Case No. CIV S-11-1250 KJM, 2011 WL 6749837, at *2 (E.D. Cal. Dec. 22, 2011) ("Because the three letters on which [an agency attorney] was copied address the subject matter at issue in this case and were before the decision-making agency, plaintiff's motion is granted with respect to this correspondence."). Fourth, and while acknowledging that the AR comes with a presumption of completeness, the Court cannot test Defendants' explanations for why these three letters were not included in the AR—that either the comments summary of the NDOW Comment Letter reflects everything BLM considered in the letter or that BLM simply did not consider the 2020 NDEP Letters.

For all of these reasons, the Court finds that a complete AR for this case would include copies of the NDOW Comment Letter and the 2020 NDEP Letters. Further, as to the NDOW Comment Letter, Defendants do not dispute that they considered it—they included a summary of it in the AR already. It is properly part of the administrative record. *See W. Watersheds Project*, 2012 WL 13937, at *1. As to the 2020 NDEP Letters, Defendants concede that they "did rely on NDEP analysis and materials throughout the decision making process[,]" but assert they did not consider these two letters because they were merely cc'd on them. (ECF No. 122 at 21-22.) However, as Environmental Plaintiffs point out, Defendants included at least one other letter received from NDEP in the fall of 2020, where BLM was only cc'd, in the AR. (ECF No. 111-1 at 35-36.) The Court cannot see why Defendants would include this letter, but not the other two 2020 NDEP letters, in the AR. Moreover, Defendants concede they relied on NDEP analysis and materials throughout the decision-making process. (ECF No. 122 at 21-22).

Defendants also argue they did not consider the 2020 NDEP Letters because they "concerned compliance with the State of Nevada's permitting regime, a matter outside BLM's regulatory authority." (*Id.*) However, the Court also finds Environmental Plaintiffs' counterargument on this point persuasive. (ECF No. 131 at 6-7.) As they point out, BLM itself stated throughout the ROD that it actively collaborated with NDEP. (*Id.* at 6.) Moreover, BLM was required to confirm that the Project was unlikely to violate state laws

about groundwater, so saying that BLM did not consider letters suggesting the Project might not comply with state law is unpersuasive, particularly considering the active collaboration between BLM and NDEP on the Project. (*Id.* at 6-7.) Said otherwise, it is illogical to silo off some documents because they relate to a state permitting process where those state law issues are both pertinent to the NEPA review BLM was engaged in and BLM was actively collaborating with the applicable state agency.

In sum, the Court finds that Environmental Plaintiffs presented clear evidence in their motion that Defendants should have included the NDOW Comment Letter and the 2020 NDEP Letters in the AR in the first instance. *See Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021), *cert. denied*, No. 21-528, 2021 WL 5763131 (U.S. Dec. 6, 2021) (restating the clear evidence standard to overcome presumption of regularity, though finding the standard not satisfied in that case). The Court accordingly orders Defendants to supplement the AR with these three documents.

### D. The Tribes' Motion (ECF No. 115)[6]

The Tribes requested that Defendants add several documents to the Administrative Record, but some of those requests are now moot because Defendants agreed to add them. (ECF Nos. 130-1 (stating that some documents were added to the administrative record provided to the Court on November 15, 2021), 130-2 (listing the documents).) Thus, the Tribes' motion is denied as moot to the extent it sought the addition of documents Defendants have already added to the AR.

As to the documents the Tribes would like added to the AR that Defendants have not already added, they now fall into two categories. The first category is a group of four documents describing the 1865 massacre near the Project area. (ECF Nos. 115 at 3, 130 at 7 (listing the four documents).) The second category consists of documents including

---

[6]As noted, the Burns Paiute Tribe joined the motion. (ECF No. 116.) Lithium Nevada (ECF No. 128) and Defendants (ECF No. 130) filed responses. The Tribes filed a reply. (ECF No. 140.) However, as also noted above, as the Tribes raised new arguments for the first time in reply, the Court granted Lithium Nevada and Defendants' unopposed motions for leave to file surreplies. (ECF Nos. 144, 151.) Lithium Nevada and Defendants accordingly filed surreplies. (ECF Nos. 147, 148.)

14

meeting notes, emails, or internal transcripts that Defendants contend are deliberative and thus are not part of the AR. (ECF No. 130 at 9-10.)

Starting with the second category first, and for the reasons provided above in Section IV.A.1, the Court grants the Tribes' motion to the extent necessary to make clear that Defendants must produce a completed version of the administrative record containing any documents previously withheld as deliberative, and a privilege log describing the documents it continues to withhold as deliberative, within 30 days.

As to the four documents describing the 1865 massacre, the Tribes have not carried their heavy burden to show that the first *Lands Council* exception for documents "necessary to determine if the agency has considered all factors and explained its decision" applies. (ECF No. 115 at 7.) As Defendants argue in response, the Tribes want these documents included in the AR to show the fact of the 1865 massacre, but other documents now in the AR also state that the 1865 massacre occurred. (ECF No. 130 at 4-9.) Thus, the Tribes can already make the merits argument they make in their administrative record motion that the BLM did not sufficiently consider the impact of the 1865 massacre on the plans that it approved as part of the Project. (*Id.*; *see also* ECF No. 115 at 8-9 (making the argument).) The four additional documents are accordingly not 'necessary' under the first *Lands Council* exception. In sum, the portion of the Tribes' motion seeking completion or supplementation of the administrative record with the four additional documents describing the 1865 massacre (ECF No. 115 at 3) is denied.

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that the Rancher Plaintiffs' administrative record motion (ECF No. 108) is granted in part, and denied in part, as provided herein.

///

It is further ordered that Lithium Nevada's administrative record motion (ECF No. 110) is denied as provided herein.

It is further ordered that Environmental Plaintiffs' administrative record motion (ECF No. 111) is granted in part, and denied in part as moot, as provided herein.

It is further ordered that the Tribes' administrative record motion (ECF No. 115) is granted in part, denied in part as moot, and denied in part, as provided herein.

It is further ordered that Defendants must complete the administrative record with deliberative and other specific materials specified herein and file that completed version of the administrative record along with a privilege log for any documents deemed deliberative and withheld from the completed version of the administrative record within 30 days of the date of entry of this order.

DATED THIS 27th Day of December 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE