UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BARTELL RANCH LLC, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br>　　v.<br>ESTER M. MCCULLOUGH, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 3:21-cv-00080-MMD-CLB<br><br>ORDER |

## I.　SUMMARY

Plaintiffs[1] and Intervenor-Plaintiffs[2] in this consolidated case challenge the Bureau of Land Management of the U.S. Department of Interior's[3] ("BLM") approval of Intervenor-Defendant Lithium Nevada Corporation's ("Lithium Nevada") plan to build a lithium mine near Thacker Pass, Nevada (the "Project") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-61, the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1787, and the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 300101, *et seq.* (ECF Nos. 1, 46, 83.) *See also Western Watersheds Project, et al. v. Bureau of Land Management of the U.S. Department of the Interior, et al.*, Case No. 3:21-cv-00103-MMD-CLB, ECF No. 1 (D. Nev. Filed Feb. 26, 2021) (since consolidated into this case). Before the Court is RSIC and the People's motion for leave to file a first amended

---

[1]Bartell Ranch LLC and Edward Bartell (collectively, the "Rancher Plaintiffs"), along with Western Watersheds Project, Wildlands Defense, Great Basin Resource Watch, and Basin and Range Watch (collectively, the "Environmental Plaintiffs").

[2]Reno-Sparks Indian Colony ("RSIC"), Atsa Koodakuh Wyh Nuwu/People of Red Mountain (the "People"), and the Burns Paiute Tribe (collectively, the "Tribes").

[3]Ester M. McCullough, the District Manager of BLM's Winnemucca office, along with the Department of the Interior, are also named Defendants.

complaint ("FAC").[4] (ECF No. 139 ("Motion").) Because amendment would be futile as to the proposed NHPA claims and unripe and unduly prejudicial as RSIC and the People's other proposed new claims are based on BLM's issuance of an Archaeological Resources Protection Act ("ARPA") permit and a Field Work Authorization ("FWA")—and as further explained below—the Court will deny the Motion.

**II.  BACKGROUND**

The Court again incorporates by reference the relevant background that it included in prior orders. (ECF No. 92 at 2-4.) *See also Western Watersheds*, Case No. 3:21-cv-00103-MMD-CLB, ECF No. 48 at 2. The Court next describes the allegations in the pertinent Complaint and proposed FAC, and then describes some additional procedural history of this case.

**A. RSIC and the People's Allegations**

As pertinent here, RSIC and the People's Complaint only alleges violations of the NHPA through the APA that focus on BLM's issuance of the Record of Decision ("ROD") approving the Project. (ECF No. 46.) The Complaint articulates the alleged violations of the NHPA as BLM's failure to make a reasonable and good faith effort to identify which Indian tribes to consult before moving ahead to issuing the ROD (including BLM's decision not to consult the Tribes), BLM's failure to give tribes who attach religious and cultural significance to the area around the Project a reasonable opportunity to identify their concerns about the Project, and work with those tribes to mitigate those concerns, BLM's failure to reasonably seek and consider the views of the public, and BLM's failure to make a draft memorandum of agreement public before issuing the ROD. (*Id.* at 19-20.)

The Tribes moved for a preliminary injunction on the claim asserted in their Complaint. (ECF No. 45.) The Court denied that motion. (ECF No. 92.) On the threshold standing issue, the Court found that the People are not a proper party to this case, and

---

[4]Defendants (ECF No. 153) and Lithium Nevada (ECF No. 154) filed responses, and RSIC and the People (ECF No. 157) filed a reply.

that the Tribes cannot assert violations of the NHPA right to tribal consultation of other tribes who are not parties to this lawsuit. (*Id.* at 6-7.) The Court also found the Tribes were unlikely to prevail on the merits of their claims, focusing particularly on their claim that BLM's decision not to consult them before issuing the ROD was unreasonable because that was their primary focus both in the briefing and at the hearing the Court held on the preliminary injunction motion. (*Id.* at 7-18.)

The Tribes moved for reconsideration of only certain findings within the Court's order denying their motion for a preliminary injunction. (ECF No. 117 at 3.) The Court denied that motion for reconsideration.[5] (*See generally id.*) As particularly pertinent here, the Court reaffirmed its findings that the People are not a proper party to this case and that the Tribes cannot assert the interests of other tribes not party to this lawsuit. (*Id.* at 4-8.)

RSIC and the People's proposed FAC (ECF No. 141) seeks to expand the NHPA claim with more factual allegations and purported violations of that statute. (*Id.* at 1-6, 13-29.) But generally speaking, this revised NHPA claims still challenge BLM's decision to issue the ROD. (*Id.*) More specifically, RSIC and the People's proposed NHPA claims allege that BLM acted unreasonably in failing to identify two camps of "Indian Lodgings" and the general area where an 1856 massacre of Paiutes by U.S. Cavalry occurred—both identified in some 1868 surveying notes in General Land Office records and confirmed by relatively contemporaneous sources—along with a geographical feature called Sentinel Rock as potentially eligible for inclusion on the National Register of Historic Places, and thus failed to comply with BLM's obligations to consult with Indian tribes with a connection to these sites and with Nevada's State Historic Preservation Office when it did not adequately consider these places before issuing the ROD. (*Id.*) RSIC and the People

---

[5]RSIC and the Burns Paiute Tribe have appealed the Court's denial of the motion for preliminary injunction and corresponding motion for reconsideration. (ECF No. 161.) That appeal remains pending at the time of issuance of this order. The Court also denied RSIC and the Burns Paiute Tribes' motion for an injunction pending that appeal. (ECF No. 165.)

otherwise allege in this portion of their proposed FAC that BLM did not adequately consult with the nonparty tribes it sent letters initiating consultation to, ignored pertinent guidance to suspend Section 106 consultation during the COVID-19 pandemic, and failed to adequately mitigate impacts to the four potential historic properties described above in the Historic Properties Treatment Plan ("HPTP") contemplated by the ROD. (*Id.*)

However, RSIC and the People's proposed FAC also seeks to add alleged violations of three statutes premised on BLM's decisions that post-date issuance of the ROD. (*Id.* at 29-36, 38-40.) RSIC and the People specifically allege violations of NEPA, ARPA, and the Native American Graves Protection and Repatriation Act ("NAGPRA"). The ARPA and NAGPRA claims are both premised on BLM's issuance of an ARPA permit— another required permit before Lithium Nevada can authorize its contractor to proceed with executing the HPTP—in September 2021. (*Id.* at 32; *see also id.* at 38, 39).) The proposed ARPA claim alleges that BLM failed to properly notify RSIC before issuing the ARPA permit and otherwise failed to adequately consult with interested Indian tribes before issuing the ARPA permit. (*Id.* at 32-35; *see also id.* at 38 (alleging BLM violated ARPA when it issued the ARPA permit).) The proposed NAGPRA claim similarly alleges that BLM violated that statute when it issued the ARPA permit (*id.* at 39) without first taking reasonable steps to determine whether remains or sacred objects may be found in the Project area and following the NAGPRA processes that would apply if such remains or objects were found (*id.* at 39-40). The proposed NEPA claim is for failure to prepare a supplemental environmental impact statement in response to new information pertinent to the Project that has come out through RSIC and the People's efforts in this litigation.[6] (*Id.* at 36.) This claim challenges 'major federal action' that, at the time the Motion was filed,[7] had yet to occur (*id.* at 36), specifically, "mine construction" or the issuance of a FWA

---

[6] BLM treated information about the massacre and Indian village sites as a "post-review discovery." (ECF No. 153 at 9-10.)

[7] BLM issued the Field Work Authorization permit on December 16, 2021. (ECF No. 153-1 at 5.)

4

"granting permission to Far Western and Lithium Nevada to begin archaeological digs in Thacker Pass" (*id.*).

### B. Other Pertinent Procedural History

As noted at the outset, this is a consolidated case. In granting the Tribes' motions to intervene, the Court consolidated the Tribes' NHPA claims with the Rancher Plaintiffs' NEPA claim, and the Environmental Plaintiffs' NEPA and FLPMA claims, in large part because all three of the operative complaints challenge BLM's issuance of the ROD under the APA, and because no parties opposed consolidation. (ECF No. 44 (order consolidating cases).) Environmental Plaintiffs' and Rancher Plaintiffs' cases against Defendants have been proceeding simultaneously as RSIC and the People have litigated elements of their case.

Defendants produced an administrative record as to the existing claims in this case late last year, and the other parties (including RSIC and the People) filed motions to complete or supplement that administrative record. The Court issued an order granting in part several of the administrative record motions on December 27, 2021. (ECF No. 155.) That means that Defendants have until January 26, 2022, to produce a revised administrative record, and then merits summary judgment motions are due another 30 days after that—assuming there is no further litigation about the privilege log the Court ordered Defendants to produce if they continue to exclude any documents from the administrative record as deliberative. (*See id.*; *see also* ECF No. 138 at 2.) Thus, merits briefing on the current claims challenging the ROD under the APA is fast approaching. And as the Court has stated in orders and on the record several times, the Court aspires to resolve this case on the merits before the 2022 construction season begins—in part so if the Court grants any of the plaintiffs the relief they seek, that relief will be meaningful in that it will arrive before Lithium Nevada starts construction of the mine.

### III. LEGAL STANDARD

Rule 15 of the Federal Rules of Civil Procedure allows amendment only by leave of the court once responsive pleadings have been filed and in the absence of the adverse

party's written consent. *See* Fed. R. Civ. P. 15(a). The Court has discretion to grant leave and should freely do so "when justice so requires." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting Fed. R. Civ. P. 15(a)). "In exercising its discretion, 'a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). Nonetheless, the Court may deny leave to amend if: (1) it will cause undue delay; (2) it will cause undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**IV.    DISCUSSION**

The Court first discusses RSIC and the People's proposed NHPA claims because they challenge the ROD, and then discusses their proposed ARPA, NAGPRA, and NEPA claims together because they challenge subsequent BLM decisions that post-date the ROD. The Court will exercise its discretion to decline to grant leave to amend here in line with the purpose of Rule 15—to facilitate a decision on the merits.

**A. NHPA Claims**

The Court will deny the Motion as to the proposed NHPA claims as futile because, though it is unclear to the Court, the proposed NHPA claims primarily appear to assert violations of this statute on behalf of third-party tribes that are not parties to this case, or the People, who are not a proper party to this case. (ECF Nos. 92 at 6-7, 117 at 4-8.) The beginning of the pertinent portion of the proposed FAC refers to Intervening Plaintiffs, which presumably means RSIC and the People, though a specific defined term is lacking. (ECF No. 141 at 3-4; *see also id.* at 25, 28-29.) The proposed FAC then begins discussing "local Indian Tribes," another defined term without a definition. (*Id.* at 4-6.) The proposed FAC also discusses the interests and rights of several tribes that are not RSIC or the

People—nor are they parties to this case.[8] (*Id.* at 4-6, 15, 17, 19-23.) At one point, the proposed FAC discusses the historical and spiritual connection between "the Plaintiffs" and the Thacker Pass area. (*Id.* at 10-11.) It is likely "the Plaintiffs" means RSIC and the People, and thus has the same meaning as Intervening Plaintiffs, but it is difficult to say so definitively. At other points, the proposed FAC discusses the interests of Tribes and Indian Tribes—more seemingly defined terms without definitions. (*Id.* at 15, 22-23, 27.) And another portion of the NHPA section of the proposed FAC refers to "all the tribes who attach religious and cultural significance to Peehee mu'huh" and "Tribes that should have been consulted about the Thacker Pass project[.]" (*Id.* at 15.) It is therefore difficult for the Court to say whose legal rights have allegedly been violated, but easy to say that RSIC is not exclusively or even primarily alleging violations of its own rights.

The lack of clarity in the NHPA section of the proposed FAC renders the proposed NHPA claims futile because the Court's prior prudential standing rulings regarding the People and non-party tribes are law of the case. (ECF Nos. 92 at 6-7, 117 at 4-8.) *See also United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'") (citation omitted).[9] And as stated in those prior orders, the People lack prudential standing "to bring a claim for inadequate tribal consultation on behalf of the" Fort McDermitt Paiute and Shoshone Tribe—as they appear to do in the proposed FAC. *La Cuna De Aztlan Sacred Sites Prot. Circle Advisory Comm. v. U.S. Dep't of Interior*, 642 F. App'x 690, 693 (9th Cir. 2016); *see also id.* ("The regulations extend the right to government-to-government

---

[8]To be clear, the People are not a federally recognized tribe, and that distinction matters for NHPA consultation purposes. (ECF No. 92 at 6-7.)

[9]There are some exceptions to the law of the case doctrine. *See Alexander*, 106 F.3d at 876. However, none of those exceptions appear to apply here. Moreover, RSIC and the People do not argue that any of the exceptions apply. Instead, RSIC and the People acknowledge the Court's rulings in their Motion and proceed to implicitly acknowledge that their proposed amendments cannot be squared with the Court's prior rulings. (ECF No. 139 at 20-22.)

consultation to the Tribe, not its individual members."). In addition, RSIC lacks third-party standing to assert the interests of other tribes. (ECF Nos. 92 at 7, 117 at 4-8.) In any event, even liberally construed, the allegations in the NHPA portion of the proposed FAC attempt to assert the interests of the People and non-party tribes in a way that makes those interests inextricable from any of RSIC's own interests that it may be trying to assert. (ECF No. 141 at 1-6, 13-29.) That makes the proposed NHPA claims futile because the Court has already ruled—this is the third time—that RSIC may only assert its own interests, not those of other tribes, and that the People are not a proper party to assert an NHPA consultation claim. (ECF Nos. 92 at 6-7, 117 at 4-8.)

The Motion is accordingly denied as to the proposed NHPA claims because amendment would be futile.[10]

**B. ARPA, NAGPRA, and NEPA Claims**

RSIC and the People's proposed ARPA and NAGPRA claims are both premised on BLM's decision to issue the ARPA permit in September 2021, and their proposed NEPA claim is premised on either BLM's decision to issue the FWA in December 2021,[11] or the future event, 'mine construction.' (ECF No. 141 at 38-39; *see also id.* at 36 (regarding the proposed NEPA claim).) Setting aside the question of whether these proposed claims are futile, the Court denies the Motion as to these claims because they are unripe and including them in this case as opposed to a new action would prejudice the other parties to this case because it would necessitate the creation of a new administrative record and thus delay merits adjudication on the various parties' claims challenging the ROD—a different 'final agency action' than challenged in these proposed claims.

///

---

[10]RSIC and the People argue in reply about Article III standing and the NHPA's zone of interests (ECF No. 157 at 4-10), but the Court finds those arguments irrelevant for the same reasons it explained in its order denying the motion for reconsideration of part of the order denying the Tribes' motion for a preliminary injunction (ECF No. 117 at 5-8).

[11]As noted above, this had not happened at the time RSIC and the People filed the Motion. (ECF No. 139 (filed November 29, 2021); *see also* ECF No. 153-1 at 5 (stating it happened December 16, 2021).)

To start, Defendants raised in their response to the Motion that RSIC and the Tribes' two proposed claims challenging BLM's issuance of the ARPA permit are unripe because RSIC and the People have not yet exhausted their administrative remedies. (ECF No. 153 at 22-23.) RSIC and the People do not directly refute this argument, merely describing in their reply that the pertinent BLM official denied their first level appeal. (ECF No. 157 at 4.) That does not mean that RSIC and the People have completed their administrative appeal of BLM's decision to issue the ARPA permit. *See* 43 C.F.R. § 7.36(b) ("The disputant, if unsatisfied with the outcome of the review or conference, may request that the decision be reviewed by the head of the bureau involved."). And "[e]xhaustion insures that a court will have the benefit of the agency's experience in exercising administrative discretion, as well as a factual record to review." *Joint Bd. of Control of Flathead, Mission & Jocko Irr. Districts v. United States*, 862 F.2d 195, 199 (9th Cir. 1988) (citation omitted). The Court accordingly finds it prudent to require RSIC and the People to exhaust their administrative remedies regarding the ARPA permit before seeking judicial review. Requiring exhaustion of administrative remedies also ensures that the Court is reviewing a final agency action—a prerequisite for the Court's review of all of the substantive claims alleged in these consolidated cases. *See* 5 U.S.C. § 704 (generally permitting judicial review only of final agency action).

The Court accordingly finds RSIC and the People's proposed ARPA and NAGPRA claims challenging BLM's decision to issue the ARPA permit unripe until they have exhausted their administrative remedies. And the Court's evaluation of "'the prudential aspects of ripeness' is 'guided by two overarching considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.''" *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1154 (9th Cir. 2017). Here, issues regarding the BLM's decision to issue the ARPA permit are both not fit for decision by this Court because they are not final, and similarly, any hardship to RSIC and the People caused by the Court's decision to require exhaustion of administrative remedies is mitigated by the possibility that higher-level officials at BLM could ultimately grant RSIC

and the People's requested relief on administrative appeal and rescind the ARPA permit. Thus, RSIC and the People's claims challenging BLM's decision to issue the ARPA permit in September are prudentially unripe for decision at this time.

The same goes for RSIC and the People's NEPA claim challenging the issuance of the FWA in December.[12] Indeed, that permit had not even issued at the time RSIC and the People filed their Motion, so they could not have been challenging a final agency action at the time they filed their Motion. That also necessarily means RSIC and the People could not have exhausted any available administrative remedies at the time they filed their Motion. RSIC and the People's NEPA claim challenging BLM's issuance of the FWA is thus unripe. Moreover, and alternatively, BLM's issuance of the FWA is not a major federal action subject to judicial review—the ROD is. *See, e.g.*, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 73 (2004) ("supplementation is necessary only if 'there remains 'major Federal actio[n]' to occur[.]'") (citation omitted).

In addition, the expansion of this case from a consolidated case challenging the ROD to one that also challenges BLM's decision to issue the ARPA permit and the FWA would prejudice all parties except for RSIC and the People—and to some extent even RSIC and the People—because the expansion of this case would require the preparation of, and litigation regarding, a new administrative record.[13] This would delay merits adjudication of all parties' claims challenging the ROD. Such delay would prejudice all of the plaintiffs, because it could mean the Court will be unable to resolve the merits of this case before construction on the mine—and the attendant larger-scale ground disturbance—begins. Lithium Nevada also argues it would be prejudiced by the delay.

---

[12]The proposed FAC also mentions "mine construction" as a final agency action that RSIC and the People are potentially challenging with their NEPA claim. (ECF No. 141 at 36.) However, the Court takes judicial notice of the fact that BLM will not be constructing the proposed lithium mine. Thus, contrary to RSIC and the People's allegation, mine construction is not a major federal action.

[13]RSIC and the People do not dispute that expansion of this case to include these claims would require the preparation of a new administrative record, instead arguing that it should not take Defendants too long to prepare one. (ECF No. 157 at 11.)

(*See generally* ECF No. 154.) The same goes for Defendants, who also argue the addition of claims based on the ARPA permit would unduly prejudice them. (ECF No. 153 at 23-24.) The Court further finds this potential, undisputed delay would unduly prejudice the other parties to this case because RSIC and the People's proposed ARPA, NAGPRA, and NEPA claims challenge federal actions distinct from the federal action challenged in this case—issuance of the ROD. And "[u]ndue delay is a valid reason for denying leave to amend." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991) (citation omitted).

The Court therefore denies the Motion as to the proposed ARPA, NAGPRA, and NEPA claims because they are unripe and including them in this case would unduly prejudice the other parties.[14]

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

///

///

///

///

---

[14]The Motion includes these statements:

> It should also be noted that the Intervening Plaintiffs' amendments would form the basis of a new lawsuit. By seeking to amend their complaint, instead of filing a new lawsuit, the Intervening Plaintiffs have chosen the most judicially economic route to requesting court review of their claims. Intervening Plaintiffs hope to save all the parties time and resources this way.

(ECF No. 139 at 4.) The Court appreciates and shares RSIC and the People's interest in judicial economy. However, as explained above, the Court finds it would be more efficient for RSIC and the People to exhaust their administrative remedies on the ARPA permit and FWA and then potentially file a new lawsuit instead of further expanding this lawsuit. If RSIC and the People choose to file a new lawsuit after exhausting their administrative remedies regarding the ARPA permit and FWA, the Court orders them to file a notice of related cases under LR 42-1(a).

1    It is therefore ordered that RSIC and the People's motion for leave to file an
2    amended complaint (ECF No. 139) is denied.
3    DATED THIS 13th Day of January 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE