Norberto J. Cisneros, Esq. NV Bar No. 8782
Barbara M. McDonald, Esq., NV Bar No. 11651
**MADDOX & CISNEROS, LLP**
3230 S. Buffalo Drive, Suite 108
Las Vegas, Nevada 89117
Telephone: (702) 366-1900
Facsimile: (702) 366-1999

*Attorneys for Intervening Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BARTELL RANCH LLC, *et al.*,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>ESTER M. MCCULLOUGH, *et al.*,<br><br>　　　　Defendants. | ***Lead Case:***<br>Case No.: 3:21-cv-00080-MMD-CLB<br><br>***Consolidated with:***<br>Case No.: 3:21-cv-00103-MMD-CLB<br><br>**WINNEMUCCA INDIAN COLONY'S MOTION TO INTERVENE** |
| WESTERN WATERSHEDS PROJECT, *et al.*,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>　　　　Defendants. | |

The WINNEMUCCA INDIAN COLONIY ("Colony" or "Intervenor"), represented by its duly elected and recognized Council, and, by and through its counsel, Maddox & Cisneros, LLP, submits this Motion to Intervene as a plaintiff, pursuant to Fed. R. Civ. Pro. 24(a) and (b).

This Motion is supported by the proposed Complaint, **Exhibit 1,** and the Declaration of Judy Rojo, the Colony's Tribal Chairman, **Exhibit 2.**

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

The Colony should be permitted to intervene, either as a matter of right or permissively, based upon the impact to the Colony's interests and rights resulting from this litigation.

## I. RELEVANT FACTS

The background and history of the Colony demonstrate that it has a protected interest in this action, warranting intervention.

### A. The land

The Winnemucca Indian Colony is a federally recognized Tribe with lands located in Winnemucca, Nevada. President Woodrow Wilson set aside 160 acres for the benefit of the homeless Shoshone by Executive Order dated June 18, 1917, described as the NE ¼ of Section 32, Township 36N., Range 38E., M.D.M. (Mount Diablo Meridian). President Wilson set aside an additional 160 acres for the benefit of the homeless Shoshone by Executive Order dated February 8, 1918, described as the SE 1/4 of Section 32, Township 36N., Range 38E., M.D.M. (Mount Diablo Meridian).

In 1928, because the BIA records reflected that the homeless Shoshone were still living on 20 acres near the railroad where they worked, a separate 20 acres was conveyed by Congressional Act, described as N1/2 NE1/4 SW1/4, Section 29, Township 36, Range 38 East, Mount Diablo Meridian, Nevada, containing 20 acres more or less. These three parcels have at all times since 1928 been referred to and recognized as the lands of the Winnemucca Indian Colony. These lands are potentially

irrigable acreage and have a right to water rights incumbent thereto as agricultural lands.

The Colony is a sovereign entity and the recognized Council is charged with governance of its lands. Judy Rojo, Eric Magiera, Misty Morning Dawn Rojo Alvarez, Shannon Evans and Merlene Magiera are the recognized Council of the government of the Colony, duly elected by the verified and enrolled members of the Colony.

### B.     The interest

Intervenor seeks to intervene in this action to challenge the Bureau of Land Management's ("BLM") Record of Decision ("ROD") approving the Thacker Pass Lithium Mine Project Plan of Operations. For example, the Colony has residents, members, and employees who possess direct religious and cultural connections to Thacker Pass, also sometimes known to the members as Peehee mu'huh, as the members practice ceremony there, hunt and gather there, and plan on doing so in the future. Rojo Declaration at ¶ 3. Colony members practice the Sundance ceremony at or near Peehee mu'huh every year. *Id.* at ¶ 4. The Colony's practice of the Sundance originates from the time when Wovoka, a Paiute spiritual leader, shared the Paiute Ghost Dance to leaders in South Dakota and returned with the Sundance, which incorporated the Colony's traditions. *Id.* at ¶ 5. The Sundance ceremony is a sacred prayer dance and rigorous ceremony lasting ten days and requiring sacrifice and commitment. *Id.* at ¶ 6. On February 22, 2000, Chairman Rojo's close relative, Glen Wasson, was murdered at the Winnemucca Indian Colony, and since then, she has personally committed to perform the Sundance every year with the other members, as the ceremony carries the promise of healing through a demanding process of purification, sacrifice and prayer. *Id.* at ¶ 7. The Sundance is a way of life for Colony members, a way of reaching through seven generations back and forward for betterment. *Id.* at ¶ 8. To build the Thacker Pass Lithium Mine on lands held sacred to Colony members would be like raping the earth and their culture. *Id.* at ¶ 9.

In addition to the Sundance, Tribal members engage in vision quests at or near Peehee mu'huh. A vision quest entails isolation and deep contemplation in the natural environment. Such vision quests are of important religious significance to Tribal members. *Id.* at ¶ 10.

Tribal members also hunt deer, rabbit, and ground hogs at Peehee mu'huh. *Id.* at ¶ 11. Tribal members also gather medicinal plants at Peehee mu'huh. *Id.* at ¶ 12.

Peehee mu'huh is further sacred to Colony members, as they believe their ancestors were murdered there during an 1865 massacre. *Id.* at ¶ 13.

Intervenor maintains that BLM's ROD violated the National Historic Preservation Act ("NHPA") 16 U.S.C. §§ 470 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. because BLM issued the ROD before complying with the NHPA's Section 106 requirements requiring meaningful government-to-government consultation with Indian tribes and before complying with NHPA's Section 106 requirements pertaining to seeking and considering the views of the public in a manner that reflects the nature and complexity of the undertaking. Notwithstanding these violations, Defendant Intervenor Lithium Nevada Corp. ("Lithium Nevada") still intends to begin 20 destructive, mechanical trenching operations in Peehee mu'huh.

The NHPA requires that the BLM must complete the Section 106 process prior to the approval of the expenditure of any Federal funds on the undertaking, or prior to the issuance of any license. The BLM did not complete the section 106 process with the Intervenor prior to issuing the ROD. It appears that the BLM is poised to issue a permit to Lithium Nevada to begin desecration of Peehee mu'huh without completing the Section 106 process with Intervenor. In light of their interest in completing the NHPA Section 106 process before the ROD or any archaeological permits are issued, the Intervenor meets the standards either for intervention as of right under Fed.R.Civ.P. 24(a), or for permissive intervention under Fed.R.Civ.P. 24(b).

## II. LEGAL STANDARD

Fed.R.Civ.P. 24(a), which governs intervention as a matter of right provides:

On timely motion, the court must permit anyone to intervene who:

. . . .

(2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

When analyzing a motion to intervene as a matter of right under Fed. R. 22 Civ. P. 24(a)(2), the Court applies a four-part test:

(1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) and citing *Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924, 926 (9th Cir.1990)).

In evaluating whether Fed.R.Civ.P. 24(a)(2) requirements are met, the Court follows "practical and equitable considerations" and construes the rule "broadly in favor of proposed intervenors." *Wilderness Soc'y* at 1179. The court does so because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.*

Fed. R. Civ. P. 24(b(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."

## III. LEGAL ARGUMENT

The Court should grant this Motion because this Motion is timely; Intervenor has a significant protectable interest relating to Thacker Pass; the disposition of the action will impair or impede Intervenor's ability to protect its interest; and Intervenor's interest is inadequately represented by the parties to the action.

### A. This Motion is timely.

In determining whether a motion to intervene is timely, the Court weighs three factors: (1) the state of the proceeding in which the applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of any delay. *County of Orange v. Air California,* 799 F.2d 535, 537 (9th Cir. 1986). "Although delay can strongly weigh against intervention, the mere lapse of time, without more, is not necessarily a bar to intervention." *US v. Alisal Water Corp.,* 370 F.3d 915, 25 921 (9th Cir. 2004). In *Mova Pharmaceutical Corp. v. Shalala,* 140 F.3d 1060, 1074 (D.C. Cir. 1998), the D.C. Circuit found that a district court erred when it denied an applicant's motion to intervene even after "the district court had entered only a preliminary injunction, not a permanent injunction."

The state of the proceeding warrants intervention. On November 8, 2021, the Court determined that Plaintiffs and current Plaintiff Intervenors lacked prudential standing to assert claims on behalf of the Winnemucca Indian Colony. Order Denying Motion for Reconsideration, ECF No. 117 at 3:21. Though the decision and the Court's denial of Intervening Plaintiff's Motion for Preliminary Injunction has now been appealed, *see* Notice of Appeal, ECF No. 161, the Court's decision compels intervention by the Winnemucca Indian Colony as a proposed direct Plaintiff.

In the meantime, no administrative record has been filed. No party has filed a motion for summary judgment. Intervenor thus seeks intervention at an early stage of the proceedings. These facts warrant intervention.

///

### B. The Colony has a significant interest in the subject of this action.

The Ninth Circuit has "rejected the notion that Rule 24(a)(2) requires a specific legal or equitable interest." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980); *see also Blake v. Pallan*, 554 F.2d 947, 952 (9th Cir. 1977). Rather, "the 'interest' test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuess v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

Here, the Colony has deep and long-standing connections to the lands and cultural resources impacted by the Project if it goes forward, and they should be allowed to defend those interests as an intervenor, including its interest in ensuring that cultural and archaeological resources are protected and that proper consultation with the Colony occurs.

### C. Denying intervention to the Colony would impair its ability to protect its interest.

The Colony meets this requirement because the disposition of this action "'may as a practical matter'" impair or impede the Colony's ability to safeguard its protectable interests. *See Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 862 (9th Cir. 2016) (quoting Fed. R. 22 Civ. P. 24(a)(2)). The Court should grant this Motion because a decision in favor of Defendants would have far-reaching practical consequences for the Colony's ability to safeguard its protectable interests – archaeological and cultural resources. Granting this Motion would further ensure that the federal government engages in consultation with tribal governments.

For example, the Federal Bureau of Land Management ("BLM") did not provide the Colony a reasonable opportunity to identify concerns about historic properties in Peehee mu'huh, advise on the identification and evaluation of historic properties there, including those of traditional religious and cultural importance, articulate views on the Thacker Pass Lithium Mine Project's ("the Project's") effects on such properties, or

participate in the resolution of adverse effects as required by the National Historic Preservation Act (NHPA) before the Thacker Pass Record of Decision ("ROD") and Plan of Operations ("POO") was issued. Rojo Declaration at ¶ 14.

On April 14, 2021, Kathleen Rehberg, Humboldt River Field Office Field Manager for BLM, sent Chairwoman Rojo a letter, asking if the Colony considered any of the archaeological sites contained in the POO as having religious or cultural importance. *Id.* at ¶ 15. On April 19, 2021, Chairwoman Rojo wrote a letter to Ms. Rehberg and expressed the Colony's opposition to the Project, at least until the Colony had the opportunity to review and assess for itself the sufficiency of the data collected and operational plans of the Project. *Id.* at ¶ 16. Chairman Rojo further explained that the Colony had been actively working to reclaim its trust lands, especially over the last three years, cleaning up massive amounts of solid and hazardous waste that had accumulated over the past few decades on its trust lands; that the Colony was working to remove the three or more criminal drug enterprises operating on the Colony; and that meanwhile, the Colony was initiating an economic development plan in hopes of becoming financially self-sufficient. *Id.* at ¶ 17. Chairman Rojo further stated to Ms. Rehberg that the Colony was concerned about the fact that surface water flowing through Water Canyon Creek over the past 40-50 years had diverted and nearly dried up the drainage except during snowmelt and active rain storms; that groundwater had been pumped and diverted from Colony trust lands to the City of Winnemucca, private irrigators, and other users; and that as the Project was located between the Quinn River and Kings River, each of which were in the Colony's aboriginal territory, members were concerned about potential adverse impact from diversion. *Id.* at ¶ 18. Chairman Rojo's efforts to communicate with BLM occurred during a time that the Colony was embroiled in a twenty-year long litigation with the BIA regarding lack of services and funding to the Colony and the Colony's aforementioned efforts to remove criminal drug enterprises on Colony land. *Id.* at ¶ 19.

As a result of lack of funding, the Colony does not have a Tribal Resources Officer. *Id.* at ¶ 20.

Today, Chairman Rojo is further concerned about the effects of pollution of said waters and its adverse impact on water serving the Colony. *Id.* at ¶ 21. She is also concerned about the effects of pollution on the sacred land where members hold the Sundance, and the land where members hunt and gather medicinal herbs. *Id.* at ¶ 22.

Chairman Rojo further stated to Ms. Rehberg that the Colony was very concerned about the protection and conservation of its aboriginal lands that are under the jurisdiction and influence of the BLM; the Colony believed there may be archaeological sites, religious and traditional sites, and areas of cultural importance to our Colony that may be desecrated or destroyed. *Id.* at ¶ 23. She further stated the Colony was concerned that BLM had not adequately complied with its own Tribal Consultation Policy and Handbook, 1780-1, and more specifically with implementation of Environmental Protection Agency's Environmental Justice Program to include tribes and tribal members to effectively provide for environmental and public health protection in Indian Country in areas of Environmental Justice. *Id.* at ¶ 24. She further stated that the Colony was surprised and concerned that both the BLM and the Nevada State Historic Preservation Office had approved the Historic Properties Treatment Plan (HPTP) to mitigate impacts to archaeological sites in the mine's POO boundary without any talks or discussion with the Colony; and that the members were concerned that Final Formatted LNC Thacker HPTP stated that consultation was held with the Winnemucca Indian Colony beginning in 2017 and continued to date, as members believed that it was not true, and that BLM or others had in fact not consulted with the Winnemucca Indian Colony regarding the Project; Chairman Rojo asked for dates and individual names of anyone in the Colony or documents, positions taken, who may have discussed this Project with BLM or its representatives. *Id.* at ¶ 25.

On July 14, 2021, because BLM did not respond to the Colony's April 19 letter, Chairman Rojo sent a letter, copying BLM, to Jean Prijatel, Manager in the Environmental Review Branch, United States Environmental Protection Agency. *Id.* at ¶ 26. Therein Chairman Rojo repeated the concerns set forth in her April 19, 2021, letter to the BLM. *Id.* at ¶ 27.

Chairman Rojo asserts that if the Colony is provided a reasonable opportunity to consult with the BLM about effects to Peehee mu'huh's historic properties, the Colony will advise BLM about its concerns, including those herein stated; the Colony will encourage BLM to allocate Peehee mu'huh to the "Conservation for Future Use" and "Traditional Use" categories and to provide Peehee mu'huh with long-term preservation as described in BLM Manual 8110. 12 21. *Id.* at ¶ 28.

Chairman Rojo further asserts if the Colony is provided a reasonable opportunity to participate in the resolution of adverse effects to historic properties in Peehee mu'huh, the Colony will help the BLM understand that gouging seven, 40-meter-long, several-meter-deep trenches and hand-digging as many as 525 holes into land hallowed by the massacre of Colony ancestors and where members observe religious ceremonies severely disrespects their culture and traditions, causes them extreme emotional and spiritual distress, and is a desecration of the worst kind. *Id.* at ¶ 29.

Chairman Rojo further asserts if BLM and Lithium Nevada still insist on disrespecting the Colony's traditional ways, distressing its members emotionally and spiritually, and desecrating land they consider sacred, the Colony will advise BLM on how to perform this desecration in the most sensitive manner possible; because the desecration of Peehee mu'huh is so imminent, the Colony is forced to seek relief, including preliminary relief, in order to protect its interests in protecting historic properties the Colony attaches religious and cultural significance to. *Id.* at ¶ 30.

The Colony meets the third Rule 24(a)(2) factor because it has demonstrated that the Project impairs its interest.

### D.     The existing parties will not adequately represent the Colony.

An applicant for intervention of right need only make a minimal showing that "representation of [its] interest 'may be' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986). A would-be intervenor is adequately represented if the following factors are met:

1.  The interests of a present party to the suit are such that it will undoubtedly make all of the intervenor's arguments;

2.  The present party is capable of and willing to make such arguments; and

3.  The intervenor would not offer any necessary element to the proceedings that the other parties would neglect.

*County of Fresno*, 622 F.2d at 438–39.

Here, the Court itself stated that current Intervening Plaintiffs lacked prudential standing to protect the interests of the Colony. *See* September 3, 2021 Order (ECF No. 6) at 6:8-15. Thus the existing parties will not adequately represent the interests of the Colony, making intervention appropriate.

Indeed, The Colony's interests separate from, and as critical as, the interests advanced by other plaintiffs in this matter. *See, generally,* Rojo Decl. Moreover, if other Plaintiffs prevail in this case, as they should, it is possible that this Court may craft a remedy that will not address and could harm the Colony's unique sovereign interest, including obligations of the federal government to consult with the Colony. To support this contention, federal courts have ruled that "consultation with one tribe doesn't relieve the [agency] of its obligation to consult with any other tribe." *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 205 F.Supp.3d 4, 32 (D.D.C. 2016) (citing *Quechan*

*Tribe of Fort Yuma Indian Reservation v. U.S. Dep't of Interior,* 755 F.Supp.2d 1104, 1112 & 1118 (S.D. Cal. 2010)). "Defendants' grouping tribes together (referring to consultation with 'tribes') is unhelpful: Indian tribes aren't interchangeable, and consultation with one tribe doesn't relieve the BLM of its obligation with any other tribe that may be a consulting party under NHPA." *Quechan Tribe,* 775 F. Supp.2d at 1112. No other party can adequately represent the sovereign interest of the Colony.

### E. In the alternative, the Colony satisfies the requirements for permissive intervention.

In the alternative, this Court should exercise its discretion to grant the Colony permission to intervene under Rule 24(b). That rule provides in pertinent part that, "On timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Generally, permissive intervention requires "'(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.,* 712 F.3d 1349, 1353 (9th Cir. 2013) (citation omitted).

In determining whether to exercise its discretion to grant permissive intervention, the Court considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Colony meets these requirements.

First, jurisdiction is easily established because this is a federal-question case. 28 U.S.C. §1331; *Freedom from Religion Found., Inc. v. Geithner,* 644 F.3d 836, 844 (9th Cir 2011) ("In federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant nor is there any problem when one seeking to intervene as a plaintiff relies on the same federal statute as does the original plaintiff.") (citations omitted). Second, the Colony's motion is timely. *Supra.* Third, this case presents a common question of law and fact between the Colony's claims and the main

action, primarily whether the federal defendant complied with its obligations under the NEPA, NHPA, and other federal environmental/cultural resource statutes. *Supra.* Fourth, Defendants will suffer no conceivable prejudice, at this stage in the proceedings, due to intervention by the Colony. Allowing the Colony to intervene will aid the Court to better assess the actions of the United States.

For these reasons, this Court should exercise its discretion to allow the Colony to intervene.

## IV.   CONCLUSION

For the reasons discussed above, the Colony respectfully submits that it is entitled to intervene as of right. Alternatively, this Court should allow the Colony to intervene on a permissive basis.

Dated this 11th day of February, 2022.

Norberto J. Cisneros, Esq. NV Bar No. 8782
Barbara M. McDonald, Esq., NV Bar No. 11651
**MADDOX & CISNEROS, LLP**
3230 S. Buffalo Drive, Suite 108
Las Vegas, Nevada 89117
Telephone: (702) 366-1900
Facsimile: (702) 366-1999

*Attorneys for Intervening Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February, 2022, I served a true and correct copy of the above document, entitled **WINNEMUCCA INDIAN COLONY'S MOTION TO INTERVENE,** via the Court's electronic filing/service system (CM/ECF) to all parties on the current service list.

_____
An Employee of Maddox & Cisneros, LLP

MADDOX & CISNEROS, LLP
An Association of Professional Corporations
3230 S. Buffalo Drive, Suite 108
Las Vegas, Nevada 89117