1
2
3                    UNITED STATES DISTRICT COURT
4                         DISTRICT OF NEVADA
5                                 * * *
6    BARTELL RANCH LLC, *et al.*,                Case No. 3:21-cv-00080-MMD-CLB
7                               Plaintiffs,            ORDER
8         v.
9    ESTER M. McCULLOUGH, *et al.*,
10                              Defendants.
11   **I.    SUMMARY**

12         Plaintiffs[1] and Plaintiff Intervenors[2] in this consolidated case challenge the Bureau

13   of Land Management of the U.S. Department of Interior's[3] ("BLM") approval of Intervenor-

14   Defendant Lithium Nevada Corporation's ("Lithium Nevada") plan to build a lithium mine

15   near Thacker Pass, Nevada (the "Project") via a January 15, 2021 Record of Decision

16   ("ROD") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, the

17   National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-61, the Federal Land

18   Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1787, and the National

19   Historic Preservation Act ("NHPA"), 54 U.S.C. § 300101, *et seq.* (ECF Nos. 1, 46, 83.) *See*

20   *also Western Watersheds Project, et al. v. Bureau of Land Management of the U.S.*

21   *Department of the Interior, et al.*, Case No. 3:21-cv-00103-MMD-CLB, ECF No. 1 (D. Nev.

22   Filed Feb. 26, 2021) (since consolidated into this case). Before the Court are several

23

24         [1]Bartell Ranch LLC and Edward Bartell (collectively, the "Rancher Plaintiffs"), along
25   with Western Watersheds Project, Wildlands Defense, Great Basin Resource Watch, and
     Basin and Range Watch (collectively, the "Environmental Plaintiffs").

26         [2]Reno-Sparks Indian Colony ("RSIC"), the Burns Paiute Tribe, and Atsa Koodakuh
27   Wyh Nuwu/People of Red Mountain (the "People").

28         [3]Ester M. McCullough, the District Manager of BLM's Winnemucca office, along
     with the Department of the Interior, are also named Defendants.

1   motions to revise the case schedule to give Plaintiffs and Plaintiff Intervenors more time

2   to review the revised administrative record (ECF Nos. 183, 186, 188),[4] and the

3   Winnemucca Indian Colony ("WIC")'s motion to intervene.[5] (ECF No. 179 ("Motion").) As

4   further explained below, the Court will grant the motions to revise the case schedule in

5   part to reflect that the Court is mostly adopting Defendants' proposed, revised case

6   schedule and deny WIC's Motion primarily because it is untimely, but also because

7   allowing WIC to intervene at this late stage would prejudice the other parties to this case

8   and WIC appears to ultimately seek relief—designation of the entire Thacker Pass area

9   for conservation or traditional use—that it cannot obtain in this case in any event.

10  **II.    BACKGROUND**

11          The Court again incorporates by reference the relevant background that it included

12  in prior orders. (ECF No. 92 at 2-4.) *See also Western Watersheds*, Case No. 3:21-cv-

13  00103-MMD-CLB, ECF No. 48 at 2.

14          **A. Procedural History**

15          As noted at the outset, this is a consolidated case. In granting RSIC and the Burns

16  Paiute Tribe's motions to intervene,[6] the Court consolidated RSIC and the Burns Paiute

17  Tribe's NHPA claims with the Rancher Plaintiffs' NEPA claim, and the Environmental

18  Plaintiffs' NEPA and FLPMA claims, in large part because all three of the operative

19  complaints challenge BLM's issuance of the ROD under the APA, and because no parties

20  opposed consolidation. (ECF No. 44 (order consolidating cases).) Environmental Plaintiffs'

21

22  ───────────────

23          [4]Lithium Nevada filed two responses (ECF Nos. 189, 191), and Defendants filed a combined response (ECF No. 190). Environmental Plaintiffs (ECF No. 193) and RSIC and

24  the Burns Paiute Tribe (ECF No. 196) filed replies. The People did not participate in this briefing.

25          [5]Defendants (ECF No. 181), Environmental Plaintiffs (ECF No. 182), RSIC and the

26  Burns Paiute Tribe (ECF No. 184), and Lithium Nevada (ECF No. 185) filed responses, and WIC filed replies to Defendants' (ECF No. 192) and Lithium Nevada's (ECF No. 194)

27  responses. The People did not participate in this briefing either.

28          [6]The Court also required RSIC to adhere to the existing case schedule. *See Western Watersheds*, Case No. 3:21-cv-00103-MMD-CLB, ECF No. 59 at 9.

and Rancher Plaintiffs' cases against Defendants have been proceeding simultaneously as RSIC and the Burns Paiute Tribe have litigated elements of their cases.

Defendants produced an administrative record as to the existing claims in this case late last year, and Plaintiffs and Plaintiff Intervenors filed motions to complete or supplement that administrative record. The Court issued an order granting in part several of the administrative record motions on December 27, 2021.[7] (ECF No. 155.) In line with that order, and a subsequent order giving Defendants a short extension of time (ECF No. 174), Defendants filed a revised administrative record on February 11, 2022 (ECF No. 178).

Meanwhile, RSIC and the Burns Paiute Tribe appealed the Court's orders denying their requests for preliminary injunctive relief. (ECF No. 161.) The Court also denied RSIC's motion for leave to file an amended complaint. (ECF No. 167.)

In any event, Plaintiffs and Plaintiff Intervenors' motions to modify the case schedule (ECF No. 183, 186, 188) all seek more time to review the revised administrative record and then file merits briefs after more opportunities to file more motions challenging the completeness of the revised administrative record. Defendants responded with a proposed case schedule that would give Plaintiffs and Plaintiff Intervenors more time to review the revised administrative record before filing merits briefs, but not as much time as Plaintiffs and Plaintiff Intervenors would like—and argue the Court should not give Plaintiffs and Plaintiff Intervenors more opportunities to litigate the completeness of the revised administrative record. (ECF No. 190.) Lithium Nevada suggests the Court give

---

[7]This order did not set a new schedule for merits briefing. Per the parties' most recent stipulation approved by the Court (ECF No. 138), opening merits briefs were due either 30 days after the Court issued a decision denying Plaintiffs' and Plaintiff Intervenors' administrative record motions, or 30 days after Defendants lodged the revised administrative record "with the Court and all parties" if the Court granted any of the motions in part (*id.*). As noted, the Court granted the administrative record motions in part (ECF No. 155), and Defendants filed the revised administrative record on February 11, 2022 (ECF No. 178). It appears that most all counsel for Plaintiffs and Plaintiff Intervenors received the revised administrative record on February 16, 2022. (ECF Nos. 183 at 3, 186 at 2, 188 at 4.) Thus, opening summary judgment briefs are currently due around March 18, 2022.

Plaintiffs and Plaintiff Intervenors only an extra week to review the revised administrative record, and, like Defendants, not give Plaintiffs and Plaintiff Intervenors any further opportunities to litigate the completeness of the revised administrative record primarily because the number of new documents in the revised administrative record that Plaintiffs and Plaintiff Intervenors did not themselves create is not as high as Plaintiffs and Plaintiff Intervenors try to make it seem. (ECF Nos. 189, 191.)

And while this litigation regarding the administrative record and case schedule has been happening, WIC filed its Motion. (ECF No. 179.) Defendants take no position on the Motion, but ask that, if the Court grants it, WIC's intervention not impact the schedule for merits briefing on the existing parties' claims, and that WIC's claims be briefed on a separate schedule. (ECF No. 181.) Environmental Plaintiffs, RSIC, and the Burns Paiute Tribe urge the Court to grant WIC's Motion. (ECF Nos. 182, 184.) As further discussed below, Lithium Nevada opposes WIC's Motion. (ECF No. 185.) Rancher Plaintiffs did not file a response to WIC's Motion and accordingly appear to take no position on it. WIC filed a reply to Defendants' response simply stating that they do not object to having their claims briefed on a separate track from Plaintiffs provided WIC's claims are briefed on the same track as RSIC and the Burns Paiute Tribe's. (ECF No. 192 at 2.) WIC subsequently filed a reply to Lithium Nevada's response that the Court further discusses below. (ECF No. 194.)

Time is of the essence here so the Court will address all the pending motions now. Regardless of what proposed schedule the Court were to adopt; this case is on the verge of merits briefing. The Court has also expressed repeatedly throughout this case that it hoped to resolve it on the merits before the 2022 construction season began so that, if Plaintiffs and Plaintiff Intervenors ultimately prevail on the merits, they will do so before further ground disturbance occurs. However, that goal was always an aspiration, and it is now clear that it is simply not possible to resolve this case this spring. Even though, as further explained below, the Court will adopt Defendants' proposed schedule that is a compromise between the various parties' positions, the parties' merits briefing will not

4

complete until around the middle of July 2022. And the Court will endeavor to complete a merits order relatively quickly, but likely will not be able to complete one until late summer or early fall 2022. In any event, the Court still wishes to resolve this case on the merits as soon as possible for the same reasons it has previously expressed.

### B. WIC's Proposed Claims

The Court's stated commitment to attempt to expeditiously attempt to resolve this case on the merits also means it will address WIC's Motion now. WIC seeks leave to intervene and file a complaint in intervention asserting three claims through the APA: two NEPA claims and one claim under the NHPA. (ECF No. 179-1 at 39-44.) One NEPA claim is for failure to take the requisite hard look at the impacts of the Project on cultural and archeological resources in the project area, in part because Defendants did not adequately consult with WIC. (*Id.* at 39-40.) The second NEPA claim is for failure to engage in government-to-government consultation with WIC before approving the ROD. (*Id.* at 40-41.) And WIC's proposed third claim is for violation of the NHPA because Defendants issued the ROD without first adequately determining which Indian tribes to consult, and without meaningfully consulting with WIC. (*Id.* 41-44.) Thus, all three of WIC's proposed claims share a key allegation in common: Defendants did not meaningfully consult with WIC before issuing the ROD. (*See generally id.*)

WIC's allegations are notable because Defendants have contended thus far in this case that they consulted with WIC, but WIC never raised any objections about the Project—and that evidence has gone unrebutted. (ECF No. 92 at 17.) WIC's allegations are also notable because the Court has previously rejected for lack of prudential standing RSIC's efforts to assert that Defendants did not meaningfully consult with the other tribes Defendants say they consulted with, including WIC. (ECF Nos. 92 at 7, 117 at 4-8.) WIC's proposed claims accordingly set up a factual dispute that was not previously properly raised in this case about the quality of consultation between Defendants and WIC. At least at this stage, WIC appears to primarily allege that Defendants should have done more

than simply send them letters for BLM's consultation with WIC to have been compliant with NEPA or NHPA. (*See generally* ECF No. 179-1.)

WIC's proposed complaint in intervention is supported by a declaration from its Chairwoman, Judy Rojo. (ECF No. 179-1 at 45-50; *see also* ECF No. 180 (a duplicate copy of the declaration).) In her declaration, Rojo states that she is the Chairwoman of WIC, a federally-recognized tribe of 28 members. (ECF No. 179-1 at 46.) She further states that WIC has longstanding religious and cultural connections to the Thacker Pass area, including annual Sundance ceremonies, vision quests, hunting, and gathering medicinal plants. (*Id.* at 46-47.) She also states that WIC considers the Thacker Pass area sacred because its members believe their ancestors were murdered there during an 1865 massacre. (*Id.* at 47.) She further states that BLM did not give WIC a reasonable opportunity for consultation before BLM issued the ROD. (*Id.*)

Rojo also states she got a letter on April 14, 2021, from Kathleen Rehberg, a local BLM official, asking if WIC considered any religious or archeological sites contained within the Project area as having religious or cultural significance. (*Id.*) Rojo states she wrote back to Rehberg on April 19, 2021, where she stated in pertinent part that WIC objected to the Project and contended WIC had not been properly consulted before BLM and Nevada state officials approved the Historic Properties Treatment Plan ("HPTP") for identified sites of archeological importance within the Project area. (*Id.* at 47-48.) Having received no response, Rojo states she followed up with another letter in July 2021. (*Id.* at 49.)

///

///

///

///

///

///

///

Rojo further states:

> 28.   If the Colony is provided a reasonable opportunity to consult with the BLM about effects to Thacker Pass/Peehee mu'huh's historic properties, the Colony will advise BLM about its concerns, including those herein stated. The Colony will encourage BLM to allocate Thacker Pass/Peehee mu'huh to the "Conservation for Future Use" and "Traditional Use" categories and to provide Thacker Pass/Peehee mu'huh with long-term preservation as described in BLM Manual 8110. 12 21.

(*Id.* at 49.) Rojo continues that WIC would also advise that the trenching and digging detailed in the HPTP is a desecration of the worst kind. (*Id.* at 49-50.) She also states that WIC can at least advise BLM and Lithium Nevada on the best way to proceed if they insist on allowing the Project to proceed. (*Id.* at 50.) She concludes by stating that the imminent desecration of Thacker Pass may force WIC to pursue preliminary injunctive relief. (*Id.*)

## III.   WIC'S MOTION TO INTERVENE

The Court first turns to WIC's Motion before addressing other parties' motions regarding the case schedule. WIC seeks intervention as of right under Fed. R. Civ. P. 24(a), or in the alternative, permissive intervention under Fed. R. Civ. P. 24(b). (ECF No. 179 at 2.) The Court finds that WIC has not met either standard despite the liberal standard generally favoring intervention. The Court's analysis below focuses on practical considerations.

### A. Legal Standard

Rule 24(a)(2) permits anyone to intervene as of right who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." When evaluating motions to intervene as a matter of right, courts construe Rule 24 liberally in favor of potential intervenors, focusing on practical considerations rather than technical

1    distinctions. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001).

2    A party seeking to intervene as of right must meet four requirements:

3    
> (1) the applicant must timely move to intervene; (2) the applicant must have
> a significantly protectable interest relating to the property or transaction that
4    > is the subject of the action; (3) the applicant must be situated such that the
> disposition of the action may impair or impede the party's ability to protect
5    > that interest; and (4) the applicant's interest must not be adequately
> represented by existing parties.

6

7    *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citation omitted). An applicant

8    for intervention bears the burden of showing that all four requirements are met. *See United*

9    *States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (citation omitted).

10          Federal Rule of Civil Procedure 24(b)(1)(B) permits a court to allow anyone to

11   intervene who submits a timely motion and "has a claim or defense that shares with the

12   main action a common question of law or fact." "An applicant who seeks permissive

13   intervention must prove that it meets three threshold requirements: (1) it shares a common

14   question of law or fact with the main action; (2) its motion is timely; and (3) the court has

15   an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*,

16   159 F.3d 405, 412 (9th Cir. 1998) (citation omitted). But a court may still deny permissive

17   intervention even if proposed intervenor satisfies those threshold factors. *See id.* And

18   because a court has discretion in deciding whether to permit intervention, it should also

19   consider whether intervention will cause undue delay or prejudice to the original parties,

20   whether the applicant's interests are adequately represented by the existing parties, and

21   whether judicial economy favors intervention. *See Venegas v. Skaggs*, 867 F.2d 527, 530-

22   31 (9th Cir. 1989).

23          **B.  Discussion**

24          The Court first addresses the timeliness of the Motion because that is a factor the

25   Court must consider before it grants either intervention as of right or permissive

26   intervention and then addresses the other factors.

27   ///

28   ///

8

1.      **Timeliness**

"Timeliness is 'the threshold requirement' for intervention as of right." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir.1997) (quoting *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990)). "Timeliness is determined by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."' *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (citation omitted). The Court addresses below WIC and Lithium Nevada's arguments as to each of the three timeliness factors. The Court does not address timeliness twice (another time under a permissive intervention heading) because an '"alternative request for permissive intervention is necessarily untimely' when movant fails to satisfy the timeliness element for intervention as of right."' *Chevron Env't Mgmt. Co. v. Env't Prot. Corp.*, 335 F.R.D. 316, 329 (E.D. Cal. 2020) (citing *Stadnicki on Behalf of LendingClub Corp. v. Laplanche*, 804 Fed. App'x 519, 522 (9th Cir. 2020)). And as further explained below, WIC's Motion is untimely.

a.      **Stage of the Proceeding**

WIC argues it seeks intervention at an early stage in the proceeding because no administrative record or summary judgment motions have been filed.[8] (ECF No. 179 at 6.) Lithium Nevada counters that this case is no longer at an early stage because the administrative record has been filed (along with a revised one), the Court has issued several substantive orders, and the parties are now on the eve of merits briefing. (ECF No. 185 at 3-4.) The Court agrees with Lithium Nevada.

///

_____

[8]WIC relies on *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) (ECF No. 179 at 6), but there, the D.C. Circuit Court of Appeals reversed the district court's denial of a motion to intervene as moot and because it disagreed with the district court's finding that the proposed intervenor lacked prudential standing. But notably in *Moya*, the "district court never reached the remaining elements of the Rule 24(a) analysis [including] timeliness." 140 F.3d at 1076. Thus, *Moya* does not suggest to the Court that WIC's Motion is timely. Further, WIC's attempt to explain why *Moya* supports its position in its reply is unpersuasive for these same reasons. (ECF No. 194 at 3-4.)

To start, WIC's statement that no administrative record had been filed was false when WIC filed its Motion—even if the Court overlooks the fact that BLM actually filed the revised administrative record the same day that WIC filed its Motion. (ECF Nos. 178, 179.) Indeed, the Court issued an order resolving disputes about the administrative record before WIC filed its Motion. (ECF Nos. 155, 179.) It is also true that the Court issued several substantive orders in this case before WIC filed its Motion. (ECF Nos. 92, 117, 155, 165, 167.) And the current deadline for filing merits briefs was fast approaching when WIC filed its Motion. (ECF Nos. 138, 179.)

So, while WIC is correct that no summary judgment briefs have yet been filed, merits briefing will be happening relatively soon per this order, and much has happened in this case already. Moreover, WIC filed its Motion exactly a year after this case was filed. (ECF Nos. 1, 179.) A year is a significant period of delay, particularly considering how much has happened in this case in its first year. This case is no longer in its early stages. The Court accordingly turns to the next timeliness factor.

### b.    Prejudice to Other Parties

WIC does not actually address this factor in its Motion (ECF No. 179 at 6) but argues in reply there is no prejudice to other parties if WIC is permitted to intervene because the Court will likely extend case deadlines in response to the other motions addressed in this order, and there is no prejudice to Lithium Nevada because it has not demonstrated that WIC cannot adhere to the existing case schedule (ECF No. 194 at 3-6). Lithium Nevada argues it would be prejudiced if WIC is permitted to intervene because delays in the Project timeline will cost it millions of dollars and impair its valid and existing rights under the ROD. (ECF No. 185 at 4-5.) Lithium Nevada further argues that the delay occasioned by the Court permitting WIC to intervene would harm the public interest in that failure to complete the Project on the current timeline will reduce the domestic supply of lithium—with knock on national security and clean energy transition effects—and would sanction WIC's approach of sitting silently through the environmental review process and then the first year of litigation following issuance of the ROD. (*Id.*)

10

While the Court of course agrees with WIC that its willingness to adhere to the existing case schedule mitigates prejudice, it was unfair of WIC to fail to mention that until its reply. "Courts do not generally consider arguments made for the first time in reply." *Brand v. Kijakazi*, Case No. 2:20-cv-02219-NJK, --- F.Supp.3d ----, 2021 WL 5868131, at *6 (D. Nev. Dec. 10, 2021) (citation omitted). Moreover, WIC's suggestion that it could adhere to the existing case schedule is contradicted to some extent by its support for Defendants' proposal that WIC's claims run on a separate track (ECF No. 192 at 2) and its other argument on lack of prejudice that the Court is likely to grant extensions of time in this case anyway (ECF No. 194 at 4-6). And WIC does not affirmatively state that it agrees to be bound by the existing case schedule like RSIC did when the Court granted RSIC leave to intervene. Thus, WIC seems to implicitly acknowledge that the existing case schedule will be delayed if the Court allows WIC to intervene.

And though only Lithium Nevada explicitly argues as such, further delay in this case will prejudice all parties. Because the Court has declined to issue any preliminary injunctive relief thus far, Lithium Nevada may proceed ahead with the Project while the parties litigate this case. As the Court has stated several times in prior orders, delay could accordingly prejudice Plaintiffs and Plaintiff Intervenors because any relief they ultimately obtain on the merits of their claims would be less meaningful if Lithium Nevada has already irrevocably disturbed in the ground in the Project area—to the extent Lithium Nevada has not already done so under prior authorizations. And the Court agrees with Lithium Nevada that the financial harm it highlights as the prejudice it will suffer from the likely delay were WIC permitted to intervene is a cognizable harm under these circumstances. *See, e.g.*, *Battle Mountain Band v. United States Bureau of Land Mgmt.*, Case No. 3:16-cv-0268-LRH-WGC, 2016 WL 4497756, at *10 (D. Nev. Aug. 26, 2016). Thus, the Court finds that the likely delay caused by WIC's intervention would prejudice the other parties to this case.

### c.    Reason for and Length of the Delay

WIC argues that was it compelled to intervene by the Court's November 2021 order denying RSIC and the Burns Paiute Tribe's motion for reconsideration of the Court's earlier

order denying their motion for a preliminary injunction, where the Court reaffirmed its finding that those tribes lacked prudential standing to assert claims on behalf of WIC and the other tribes who were consulted in the environmental review process leading up to the ROD. (ECF No. 179 at 6.) Thus, WIC seems to argue it believed that either RSIC or the Burns Paiute Tribe were representing its interests up until the Court issued that order, and its delay of about three months from that date until WIC filed its Motion is reasonable. (*Id.*) Lithium Nevada counters that WIC has been aware of the Project for a long time and does not proffer a compelling reason for its delay in filing its Motion. (ECF No. 185 at 5-9.) As further explained below, the Court agrees with Lithium Nevada.

A "party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *California Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002) (citation and emphasis omitted). WIC did not do so here. Indeed, WIC's argument that the Court's November 2021 order denying reconsideration prompted it to intervene is unpersuasive for several reasons.

First, the Court's November 2021 order denying reconsideration merely reiterated the Court's finding from its September 2021 order that RSIC and the Burns Paiute Tribe lacked prudential standing to assert claims on behalf of WIC and similarly situated tribes. (ECF Nos. 92, 117.) And WIC does not explain in its Motion why it picked the November order as its trigger date instead of the September order. (ECF No. 179 at 6.) In its reply in support of the Motion, WIC primarily restates the unchallenged general rule that the crucial date for assessing timeliness of a motion to intervene is when proposed intervenors should have been aware that existing parties would not protect their interests. (ECF No. 194 at 6-7.) This mere restatement does not really explain why the November order is the crucial one instead of the September order. And to the extent that WIC is taking the view that the Court's September order did not become final until the Court issued the November order denying reconsideration, that view is unpersuasive because it is possible that no party would have moved for reconsideration. Thus, WIC was equally on notice that its interests

might not be represented by existing parties when the September order issued than when the November order issued. And the focus of the timeliness inquiry is on notice (constructive or actual) not when an order becomes final in the sense of whether an existing party could file a motion for reconsideration. *See California Dep't of Toxic Substances Control*, 309 F.3d at 1120.

Second, the Court's prudential standing rationale as to tribes like WIC rested on a longstanding "general prohibition on a litigant's raising another person's legal rights[.]" (ECF No. 117 at 5 (citation omitted).) The longstanding nature of this general prohibition means that neither the November order nor the September order was a reasonable trigger point where WIC should have become aware that existing parties to the case may not adequately represent its interests. WIC should have known all along that RISC, the People, and the Burns Paiute Tribe could not adequately protect its interests because it is not similarly situated to those tribes (or subset of a tribe, in the People's case) as to the ROD. The difference is that BLM sent at least one letter requesting that WIC consult on the Project, while it did not send such letters to RSIC, the Burns Paiute Tribe, or the People. (ECF Nos. 65-8 at 8-10, 92 at 17.) That also makes WIC's claim different than those other groups—WIC's primary claim is that BLM should have done more than just send letters, whereas those other groups' primary claim is that BLM acted unreasonably when it did not even send them a letter. In any event, neither the September nor November orders are reasonable timeliness trigger points.

Third, WIC's proposed complaint in intervention is substantially based on the Rojo declaration, which plainly states Rojo (and thus WIC) became aware of—and objected to—the Project in April 2021. (ECF No. 179-1 at 47.) Thus, WIC should have moved to intervene back in April 2021, but did not—instead waiting about another 10 months. (*Id.*; *see also* ECF No. 179 (filed Feb. 11, 2022).) WIC does not directly explain why it did not move to intervene back in April 2021 but does generally argue it has many other pressing matters that it needs to address. (ECF No. 194 at 7-8.) And that is no doubt true— Chairwoman Rojo and WIC more broadly have many pressing matters they need to and

have been working to address. However, WIC does not explain how those other pressing matters prevented it from moving to intervene in this case earlier. And accordingly, neither September nor November is a reasonable date when WIC should have been aware that this lawsuit might adversely affect its interests—April 2021 was.

Fourth, finding that WIC should have moved to intervene in this case in April 2021 sets aside Lithium Nevada's reasonable arguments that WIC should have participated in the environmental review process culminating in the ROD, or at least moved to intervene in this lawsuit even earlier than April 2021. (ECF No. 185 at 5-9.) For example, Lithium Nevada points out that it has been engaging in authorized ground disturbance in the Project area for years. (*Id.* at 6-7.) Further, regardless of whether WIC received it, BLM does appear to have sent WIC a letter seeking consultation on the Project on December 12, 2019. (ECF No. 65-8 at 8-10.) And WIC does not respond to Lithium Nevada's contention that this Project has been covered extensively in local media. It would be reasonable to conclude that WIC should have moved to intervene sometime long before April 2021.

In sum, WIC's argument that it was not on notice it should intervene in this case until November 2021 is unpersuasive. WIC had reason to know that its interests might be adversely affected by the outcome of the litigation in April 2021, if not before. And contrary to WIC's argument (ECF No. 194 at 8), Lithium Nevada (and the other parties) would have suffered less prejudice if WIC had moved to intervene in April 2021—before the Court consolidated these cases, before the production of the administrative record, and before the Court ruled on any of the motions for preliminary injunction or other substantive motions the Court has already ruled on. This case was undisputedly at an earlier stage in the proceedings then than it is now, nearly a year later.

As all three factors compel the conclusion WIC's Motion is untimely because this case is in a relatively advanced stage of the proceedings, other parties (but most notably Lithium Nevada) would be prejudiced if the Court permitted WIC to intervene now, and

1   WIC waited about 10 months to file its Motion without offering a persuasive rationale for

2   its delay.

3       **2.    Other Factors**

4       While the Court is not necessarily required to address the other factors considering

5   that the Motion is untimely, the Court briefly discusses them here. *See Perry v.*

6   *Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011) ("An applicant's '[f]ailure to satisfy any

7   one of the requirements is fatal to the application, and we need not reach the remaining

8   elements if one of the elements is not satisfied.'") (citation omitted). As the Court did above

9   regarding timeliness, the Court discusses the intervention as of right and permissive

10  intervention factors together because they substantially overlap and the Court will deny

11  the Motion in any event.

12      To start, at least one of the intervention as of right factors favors granting the

13  Motion. For example, the Court agrees with WIC that no existing parties to this case

14  adequately protect its interests—primarily because unlike any of the existing parties, BLM

15  sent WIC a letter attempting to initiate consultation. (ECF Nos. 65-8 at 8-10, 117.) *See*

16  *also Arakaki*, 324 F.3d at 1083 (stating this is one of the four factors). And the second and

17  third factors favor granting the Motion to some extent because WIC has at least a Section

18  106 right to consultation under the NHPA, and this case could present an opportunity for

19  WIC to challenge BLM's decision to issue the ROD.

20      However, Lithium Nevada persuasively points out in its response that WIC also

21  appears to be asserting interests that are not protectable in this case, which tends to cut

22  against granting the Motion. The most notable example stems from Chairwoman Rojo's

23  statement in her declaration (excerpted above) that WIC's goal in the case is to advise

24  Defendants to conserve the land around Thacker Pass in perpetuity, and hope that

25  Defendants listen. (ECF No. 179-1 at 49.) However, the Court agrees with Lithium Nevada

26  that such an outcome would only be obtainable through a revision of the regional resource

27  management plan, but this case challenges only the ROD. (ECF No. 185 at 10.) WIC

28  responds to this argument by referring to a statement in the ROD that it 'conforms to' the

1   pertinent regional resource management plan. (ECF No. 194 at 8-9.) But that does not

2   mean the ROD can alter the pertinent resource management plan. It appears that the

3   closest WIC could get to its stated goal of total preservation in this case is persuading

4   BLM (after remand from this Court following a ruling on the merits on WIC's inadequate

5   consultation claims in WIC's favor) to adopt the 'no action' alternative addressed in the

6   ROD; but even under that alternative, Lithium Nevada "could implement the remaining

7   authorized surface disturbance acreages under previous authorizations, and reclamation

8   of those and existing disturbance would be completed according to the approved

9   reclamation plan for each action." (ECF No. 65-1 at 9.) Thus, WIC cannot obtain in this

10  case the relief that Chairwoman Rojo states WIC is ultimately seeking.[9]

11      Turning to the permissive intervention factors, WIC's proposed complaint in

12  intervention shares a common question of law or fact with the main action and the Court

13  has an independent basis for jurisdiction over WIC's proposed claims. *See Donnelly*, 159

14  F.3d at 412 (stating these are two of the pertinent factors). But the discretionary factors

15  that would still permit the Court to deny permissive intervention even if the Motion had

16  been timely weigh against granting the Motion here. *See id.* As explained above,

17  permitting WIC to intervene in this case at this time will cause undue delay or prejudice to

18  the original parties. *See Venegas*, 867 F.2d at 530-31. In addition, judicial economy does

19  not favor intervention. *See id.*

20      Indeed, it may be more efficient to let WIC's proposed claims proceed in a separate

21  case if WIC choses to file one, because if the Court permits WIC's intervention, it proposes

22  splitting the case into two tracks, where WIC would proceed with RSIC and the Burns

23  Paiute Tribe on a second, and presumably slower, track. Thus, even if the Court were to

24  let WIC into this case, it would effectively be required to manage two separate cases

25  anyway, and WIC seems to suggest it would slow this case down. If WIC simply filed its

26

27      [9]The Court further agrees with Lithium Nevada that (ECF No. 185 at 11), to the
    extent WIC seeks to challenge the adequacy of ARPA consultation, those claims are not
28  yet ripe (ECF No. 167 at 8-11).

own case, the Court would also be managing two cases. But proceeding separately would not slow down the case schedule in this case—and the Court reiterates its consistent view throughout this case that it sees an urgency of resolution on the merits. Moreover, while WIC's proposed claims are similar to RSIC and the Burns Paiute Tribe's, WIC is not similarly situated to them because the key question implicit in all of WIC's claims is not why was WIC not consulted (like RSIC and the Burns Paiute Tribe), but rather, is sending a few letters enough consultation? Thus, it would not be more efficient to let WIC intervene in this case than it would be to let WIC simply file its own case.

On balance, neither the intervention as of right nor permissive intervention factors favor granting the Motion. WIC's Motion is accordingly denied.

## IV.    THE MOTIONS TO ALTER THE CASE SCHEDULE

The Court now turns to the parties' pending motions to alter the case schedule. Federal Rule of Civil Procedure 16(b)(4)'s "good cause" standard for modifying a scheduling order applies to these motions.[10] The 'good cause' standard of Rule 16(b) "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). While the Court may consider prejudice to the nonmoving party as an additional reason to deny a motion, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.*

As further explained below, while the Court finds good cause to somewhat extend the case schedule mostly in line with Defendants' proposal to give Plaintiff and Plaintiff Intervenors more time to review the revised administrative record and file their opening merits briefs, the Court does not find good cause to give Plaintiff and Plaintiff Intervenors the lengths of extensions they are requesting, or give them infinite opportunities to

---

[10]The Court also has inherent power to control its docket. *See S. California Edison Co. v. Lynch*, 307 F.3d 794, 807 (9th Cir. 2002), *modified on other grounds*, 307 F.3d 943 (9th Cir. 2002), and *certified question answered sub nom. S. California Edison Co. v. Peevey*, 31 Cal. 4th 781 (Cal. 2003) ("District courts have 'inherent power' to control their dockets.") (citation omitted).

continue litigating the completeness of the administrative record instead of getting to the merits of this case.

The Court begins with the matter of the length of the extensions, and then turns to the question of whether and how much additional litigation to permit on the completeness of the administrative record. While Plaintiffs and Plaintiff Intervenors generally use large numbers of pages to support their requests for more time, the Court finds that the pending motions do not offer much explanation about what might be in those pages that would have been helpful in determining diligence. The basic counterarguments to the moving parties' arguments based on page numbers alone are simple—pages that you have already reviewed do not take as long to review as pages that you have not. Similarly, pages that you cannot review do not take any time to review. Thus, for example, RSIC and the Burns Paiute Tribe's argument that they need more time to review 32,000 pages added to the administrative record is not that persuasive because they do not say how many of those pages they have already reviewed for one reason or another, and their related argument that they need more time to review 9,000 pages noted in the privilege log is illogical because they cannot review those pages—it is merely noted in the privilege log that they exist.[11] (ECF No. 183 at 3-4.)

Further, the pending motions do not really reconcile the extensions sought with the time the parties already have under the existing schedule. Plaintiffs and Plaintiff Intervenors have about a month to review the revised administrative record under the existing case schedule. That may well be enough time for diligent parties to review the new material and adjust their merits arguments accordingly. The pending motions do not do enough to explain why the current approximately 30 day period is insufficient. Moreover, the revised administrative record is not entirely new, and the parties previously had months to review the initial administrative record. The parties also already litigated questions of what else should be included in the administrative record but was not—so

_____

[11]Lithium Nevada makes these counterarguments, and they are persuasive. (ECF No. 189.)

presumably some of the work the parties must do as to the revised administrative record is to simply see if the missing materials they argued should have been in the administrative record all along are in there. Once verified, the parties do not need to review those materials in the first instance. And that should not be time consuming because the parties already know what those materials are. Thus, the Court is unconvinced that the parties' diligence justifies the 30 or 60 day extensions they are seeking.

More broadly, however, all parties agree that some extension is warranted. The dispute is simply about the length of the extension. At either extreme are Lithium Nevada, who argues for only one week, and RSIC and the Burns Paiute Tribe, who seek 60 days. The Court finds that Defendants' proposal of around two weeks is a reasonable compromise. It is also equitable because Defendants ultimately had 44 days to file the revised administrative record (ECF No. 193 at 5) and adopting Defendants' compromise proposal will give Plaintiffs and Plaintiff Intervenors about the same amount of time to review it before filing their merits motions. The Court accordingly finds that the moving parties have shown good cause for an extension of their deadline to file their opening merits briefs until April 5, 2022, with subsequent deadlines keyed off of that date as reflected in Defendants' proposal.[12]

The Court now turns to the question of whether and how much more litigation to permit on the completeness of the administrative record. The parties' positions on this issue again highlight a tension that also animated the balance the Court attempted to strike in its order on the administrative record motions. (ECF No. 155.) On the one hand, the Court must review the record that was before the agency, the agency would logically know

---

[12]The Court mostly adopts Defendants' proposal in the conclusion of this order. It also contains page limits and response times that the parties already stipulated to in the last stipulation the parties filed. (*Compare* ECF No. 138 *with* ECF No. 190 at 3-4.) Environmental Plaintiffs raise some concerns with the response timeline and page limits in their reply brief (ECF No. 193 at 5-6), but concede they previously stipulated to the general timeline and page limits (*id.*). The Court reiterates that it aspires to help the parties resolve this case on the merits and states that it does not wish to entertain unending litigation on procedural details. Thus, the Court adopts Defendants' proposed response timeline and page limits because it is consistent with the parties' most recent stipulation.

best what that record is, and thus a presumption of completeness accompanies the administrative record certified as complete by the agency. These principles tend to counsel in favor of treating the administrative record as closed and permitting only limited—if any— litigation on its scope. This is Defendants and Lithium Nevada's position. On the other hand, the Court must review the whole record, and may have difficulty ascertaining what that whole record is if the agency withholds records—whether as deliberative or otherwise—that properly make up the administrative record. This 'whole record' principle counsels in favor of allowing as much litigation as necessary until that whole record comes to light. This is Plaintiffs' and Plaintiff Intervenors' position.

To some extent, this tension is irresolvable. All parties rely on caselaw that generally—but not specifically—supports their positions, but it is not as if some of that caselaw trumps the other. The caselaw creates the tension described immediately above. But the Court tried to strike an appropriate balance in its prior order on the administrative record and tries to strike an appropriate balance again here.

The Court finds that Defendants' proposal—no further litigation on the contents of the administrative record—strikes the appropriate balance at this juncture in these proceedings. To start, the Court rejects Plaintiffs and Plaintiff Intervenors' request for innumerable rounds of litigation regarding the contents of the administrative record as unworkable and because it would bring the administrative record too far from the record before the agency. Were the Court to adopt their proposal, the Court would run the risk of adjudicating this case based on "some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (citation omitted). That would be inappropriate. *See id.* Moreover, the Court has already presided over an extensive round of litigation as to the contents of the administrative record. (ECF No. 155.) There is no dispute that the administrative record now contains many more records than it did initially—indeed, that is driving the other dispute about how much time the parties should get to review it. In any event, Plaintiff and Plaintiff Intervenors have already succeeded in

significantly expanding the scope of the administrative record, so it is not as if the Court has not given them any opportunity to uncover what the full administrative record is.

In addition, Defendants represent that "[t]he revised AR consists of all documents related to the Thacker Pass Lithium Project held by the BLM. It has been certified by the agency as complete and that certification is entitled to a presumption of regularity." (ECF No. 190 at 6.) To disregard this statement entirely would run counter to the presumption of regularity and require the Court to find some sort of bad faith on Defendants' part. Plaintiffs and Plaintiff Intervenors have not presented a sufficient basis in their pending motions for the Court to find bad faith on Defendants' part. Thus, the Court finds it appropriate to move this case along to merits briefing instead of permitting infinite rounds of further litigation on the content of the administrative record.

Plaintiffs and Plaintiff Intervenors' pending motions regarding the case schedule (ECF Nos. 183, 186, 188) are granted only to the extent that the Court extends the deadline to file opening merits briefs to April 5, 2022 and are otherwise denied. The Court directs the parties to the conclusion section of this order for upcoming merits briefing deadlines and page limits.

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that WIC's motion to intervene (ECF No. 179) is denied.

It is further ordered that the Burns Paiute Tribe and Reno-Sparks Indian Colony's motion for an extension of time to file opening summary judgment motions (ECF No. 183) is granted to the extent specified herein but otherwise denied.

It is further ordered that Plaintiffs Edward Bartell and Bartell Ranch LLC's motion for an order setting a new case schedule (ECF No. 186) is granted to the extent specified herein but otherwise denied.

It is further ordered that Plaintiffs Western Watersheds Project, Great Basin Resource Watch, Basin and Range Watch, and Wildlands Defense's motion for additional time to review the revised administrative record (ECF No. 188) is granted to the extent specified herein but otherwise denied.

It is further ordered that on April 5, 2022, Plaintiffs and Plaintiff Intervenors must file their opening motions for summary judgment limited to 40 pages for Rancher Plaintiffs, 40 pages for Environmental Plaintiffs, and 25 pages each for Plaintiff Intervenors Reno Sparks Indian Colony, and the Burns Paiute Tribe.

It is further ordered that Defendants and Lithium Nevada must file their separate cross-motions for summary judgment (combined with their oppositions to Plaintiffs' and Plaintiff Intervenors' motions), limited to 40 pages in response to Rancher Plaintiffs, 40 pages in response to Environmental Plaintiffs, and 50 pages in response to Plaintiff Intervenors, by no later than 45 days after filing of Plaintiffs' and Plaintiff Intervenors' opening briefs.

It is further ordered that Plaintiffs and Plaintiff Intervenors must file their combined oppositions to Defendants' and Lithium Nevada's motions for summary judgment and replies in support of their motions for summary judgment, limited to 40 pages each for Rancher Plaintiffs and Environmental Plaintiffs, and 25 pages each for Plaintiff Intervenors, by no later than 30 days after filing of Defendants' and Lithium Nevada's motions.

It is further ordered that Defendants and Lithium Nevada must file their separate replies in support of their motions for summary judgment, limited to 25 pages in reply to Rancher Plaintiffs, 25 pages in reply to Environmental Plaintiffs, and 40 pages in reply to Plaintiff Intervenors' motions, by no later than 30 days after filing of Plaintiffs' and Plaintiff Intervenors' responses and replies.

DATED THIS 11th Day of March 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE