Vicky Oldenburg (Nevada Bar No. 4770)
Oldenburg Law Office
P.O. Box 17422
Reno, NV 89511
(775) 971-4245
vicky@oldenburglawoffice.com

William Falk (Utah Bar No. 16678)
2980 Russet Sky Trail
Castle Rock, CO
(319) 830-6086
falkwilt@gmail.com

Terry J. Lodge (Ohio Bar No. 29271)
316 N. Michigan St., Suite 520
Toledo, OH 43604-5627
(419) 205-7084
tjlodge50@yahoo.com

Attorneys for Reno-Sparks Indian Colony

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| BARTELL RANCH LLC, et al., | ) | Case No.: 3:21-cv-80-MMD-CLB |
| | ) | (**LEAD CASE**) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ESTER M. MCCULLOUGH, et al., | ) | **RSIC's MOTION FOR** |
| | ) | **DISCOVERY SANCTIONS** |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| LITHIUM NEVADA CORPORATION, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

| | | |
|---|---|---|
| WESTERN WATERSHEDS PROJECT, et al., | ) | Case No.: 3:21-cv-103-MMD-CLB |
| | ) | (**CONSOLIDATED CASE**) |
| Plaintiffs, | ) | |
| | ) | |
| RENO SPARKS INDIAN COLONY, et al., | ) | |

1

|  |  |  |
|---|---|---|
| 1 |  | ) |
| 2 | Intervenor-Plaintiffs, | ) |
| 3 |  | ) |
| 4 | and | ) |
| 5 |  | ) |
| 6 | BURNS PAIUTE TRIBE, | ) |
| 7 |  | ) |
| 8 | Intervenor-Plaintiff. | ) |
| 9 |  | ) |
| 10 | v. | ) |
| 11 |  | ) |
| 12 | UNITED STATES DEPARTMENT OF THE | ) |
| 13 | INTERIOR, et al., | ) |
| 14 |  | ) |
| 15 | Defendants, | ) |
| 16 | and | ) |
| 17 |  | ) |
| 18 | LITHIUM NEVADA CORPORATION, | ) |
| 19 |  | ) |
| 20 | Intervenor-Defendant. | ) |
| 21 |  |  |

22   Intervening-Plaintiff Reno-Sparks Indian Colony ("RSIC") respectfully moves the

23   Court to sanction Federal Defendant Bureau of Land Management ("BLM") for failing to

24   obey orders to provide or permit discovery pursuant to Fed. R. Civ. P. 37(b)(2)(A); for

25   submitting reckless and frivolous filings designed to harass the plaintiffs and to

26   unreasonably and vexatiously multiply the proceedings, in violation of 28 U.S.C. § 1927;

27   and for abusing the litigation process by failing to obey discovery orders and, while

28   failing to obey those discovery orders, for failing to disclose the extent of the

29   documentation it withheld as "deliberative."

30   **Introduction**

31   BLM arbitrarily and capriciously rushed the Thacker Pass Project permitting

32   process. Fast-tracking the permitting process for the nation's largest and most complex

33   lithium mine caused BLM to fail to meet its responsibilities under the National

1   Environmental Policy Act (NEPA) and the National Historic Preservation Act (NHPA).

2   Fast-tracking the permitting process also limited administrative and public review of the

3   Project.

4         It should be no surprise, then, that BLM's litigation strategy has involved

5   withholding key parts of the AR for as long as possible. BLM waited until two motions for

6   preliminary injunction were denied, a motion for reconsideration was denied, multiple

7   motions to supplement the AR were filed, a motion to amend the complaint was denied,

8   an opening appellate brief was filed, and a motion to intervene was denied before

9   turning over or listing in a privilege log nearly 42,000 pages of the AR. These nearly

10   42,000 pages include a significant amount of evidence that undermines important

11   factual and legal contentions BLM made while opposing all of the aforementioned

12   motions.

13         So far, BLM has succeeded in withholding major portions of the AR that

14   undermine BLM's position – documents that likely would have supported different

15   rulings by the Court – until it was too late in the litigation for the parties to reference the

16   documents in anything but their motions for summary judgment. In cases like this one,

17   where judicial review is limited to an AR controlled and compiled by defendant

18   agencies, judicial review is severely undermined when agencies aren't forthright about

19   what's actually in the AR. In these cases, only government agencies truly know what is

20   in the AR. Because of this, plaintiffs are mostly at the mercy of the agencies to describe

21   and produce a whole and complete AR. When it is clear that an agency has taken

22   advantage of the plaintiffs' blindness about what is in the AR (and the Court's interest in

23   issuing a ruling on the merits) to withhold documentation that undermines the agency's

1   position, the public interest in judicial review of agency decisions must be protected by

2   sanctioning the agency's conduct.

3          RSIC sent a letter to the parties on April 1, 2022 asking BLM to agree to stipulate

4   to the relief RSIC seeks in this motion. BLM only acknowledged receipt of the letter but

5   did not respond to RSIC's request to stipulate.

6                                    **Legal Standards**

7   **Fed. R. Civ. P. 37(b)(2)(A)**

8          "If a party or a party's officer, director, or managing agent…fails to obey an order

9   to provide or permit discovery…the court where the action is pending may issue further

10  just orders." Fed. R. Civ. P. 37(b)(2)(A)

11         Those orders "may include the following:

12  "(i)directing that the matters embraced in the order or other designated facts be taken
13  as established for purposes of the action, as the prevailing party claims;"
14  "(ii) prohibiting the disobedient party from supporting or opposing designating claims or
15  defenses, or from introducing designated matters in evidence;"
16  …
17  "(iv)  staying further proceedings until the order is obeyed;"
18  …
19  "(vi) rendering a default judgment against the disobedient party"
20  "(vii) treating as contempt of court the failure to obey any order…"
21
22  Fed. R. Civ. P. 37(b)(2)(A)(i-vii)

23         "Instead of or in addition to the orders above, the court must order the

24  disobedient party, the attorney advising that party, or both to pay the reasonable

25  expenses, including attorney's fees, caused by the failure, unless the failure was

26  substantially justified or other circumstances make an award of expenses unjust." Fed.

27  R. Civ. P. 37(b)(2)(C).

1    "Rule 37(b) sanctions may serve either remedial and compensatory purposes or

2    punitive and deterrent purposes." *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702,

3    F.2d 770, 783-784 (9th Cir. 1983). "The very purpose of Rule 37 is to insure compliance

4    with discovery orders. Without adequate sanctions the procedure for discovery would be

5    ineffectual." *Grimes v. City and County of San Francisco*, 951 F.2d 236, 240-241 (9th

6    Cir. 1991). "To that end, Rule 37 is flexible: The sanctions enumerated in the rule are

7    not exclusive and arbitrary but flexible, selective, and plural. The court may within

8    reason, use as many and as varied sanctions as are necessary to hold the scales of

9    justice even." *Id.* at 241 (internal citations omitted).

10   "[T]he plain language of Rule 37(b) contains no requirement mandating a noticed

11   motion or opportunity to be heard before sanctions – including default – may be

12   imposed." *Dreith v. Nu Image, Inc.,* 648 F. 3d 779, 787 (9th Cir. 2011).

13   Failure to produce or complete an administrative record can be the basis for

14   sanctions. *See Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 26 (1st Cir. 2006) and *Nat'l*

15   *Urb. League v. Ross*, 2020 WL 5548117, at *5 (N.D. Cal. Sept. 15, 2020). "Rule

16   37(b)(2) allows for sanctions '[i]f a party…fails to obey an order to provide or permit

17   discovery,' and nothing in the rule requires that the failure be on account of bad faith."

18   *Diaz-Fonseca v. Puerto Rico*, at 26 (quoting Fed. R. Civ. P. 37(b)(2)).

19   RSIC's claims are brought under the Administrative Procedure Act (APA), 5

20   U.S.C § 701-706. "Thus, while the Court's obligation to review the 'whole record' in an

21   APA case is derived from the APA itself, 5 U.S.C § 706, its power to order production or

22   completion of that record is derived from the Federal Rules of Civil Procedure." *New*

23   *York v. U.S. Dep't of Commerce*, 461 F.Supp. 3d 80, 94 (S.D.N.Y. 2020). In these

circumstances, "the distinction between orders that carry the label 'discovery' and those that order completion of the administrative record disappears." *Id.* So, the usual rule applies: "Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order." *New York v. U.S. Dept of Commerce*, at 94 (quoting *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991)).

"The definition of 'order' in Rule 37(b) has been read broadly." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,* 982 F.2d 363, 368 (9th Cir. 1992). "Violations of a scheduling order may result in sanctions, including dismissal under Rule 37(b)2(C)." *Atchison, Topeka and Santa Fe Ry. Co. v. Hercules Inc.,* 146 F.3d 1071, 1073 (9th Cir. 1998).

The Ninth Circuit has identified five factors that a district court must consider before dismissing a case or declaring a default:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Adriana Intern. Corp. v. Thoeren*m 913 F.2d 1406, 1412 (9th Cir. 1990)

"We may affirm a dismissal where at least four factors support dismissal, or where at least three factors strongly support dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th. Cir. 1999). "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." *Adriana Intern. Corp* at 1412. "Failure to produce documents as ordered, however, is considered sufficient prejudice." *Id.*

**28 U.S. Code § 1927**

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Section 1927 sanctions "must be supported by a finding of subjective bad faith." *New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas v. Winkler,* 792 F.2d 858, 860 (9th Cir. 1986) (citations omitted). "For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass." *In re Keegan Management Co., Securities Litigation*, 78 F.3d 431, 436 (9th Cir. 1996)

**Inherent power to levy sanctions for abusive litigation practices**

Courts are invested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. Nasco, Inc.,* 501 US 32, 43 (1991). The Ninth Circuit has recognized as part of a district court's inherent powers the "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992). "A primary aspect of that discretion is the

1  ability to fashion an appropriate sanction for conduct which abuses the judicial process."

2  *Chambers*, at 44-45.

3          "Sanctions are available for a variety of types of willful actions, including

4  recklessness when combined with an additional factor such as frivolousness,

5  harassment, or an improper purpose. Therefore…an attorney's reckless misstatement

6  of law and fact, when coupled with an improper purpose,...are sanctionable under a

7  court's inherent power." *BKB v. Maui Police Dept.,* 276 F.3d 1091, 1108 (9th Cir. 2002).

8                                    **Background**

9          On September 13, 2021, the Court ordered: "Defendants will produce the

10  administrative record on the additional claims brought by Plaintiff-Intervenors (the

11  "Tribal Claims") by October 1, 2021." ECF No. 94, pg. 3. On November 23, 2021, BLM's

12  Lead Geologist for the Humboldt River Field Office, Winnemucca District Office Kenton

13  M. Loda certified that the two indices lodged with the Court at that time constituted the

14  record for the allegations contained in the complaints filed by the Plaintiffs and the

15  Intervenor Plaintiffs. ECF No. 136-1, pg 3.

16          In its December 27, 2021 Order, this Court relied on *Ksanka Kupaqa Xa'lcin v.*

17  *United States Fish & Wildlife Serv.,* Case No. CV 19-20-M-DWM, 2020 WL 4193110 (D.

18  Mont. Mar. 9, 2020) to find that "the administrative record includes all documents and

19  materials directly or indirectly considered by the agency, which must include some

20  deliberative materials." ECF No. 155, pg. 5. This Court also found: "'judicial review

21  would be severely undermined if agencies could keep information from the court merely

22  by classifying them as deliberative.' And [in *Ksanka Kupaqa Xa'lcin*], like here, the

23  defendants admitted that deliberative materials were omitted from the administrative

1  record, which is sufficient to overcome that the administrative record is complete." *Id.*

2  pg. 5. (internal citation omitted)

3       With this reasoning, the Court ordered BLM to "supplement the AR within 30

4  days with any materials previously withheld as deliberative, or alternatively identify any

5  documents still withheld as deliberative when Defendants supplement the AR in a

6  privilege log." ECF No. 155, pgs 5-6. This gave BLM a choice: either to supplement the

7  AR with materials previously withheld as deliberative, or to identify any documents still

8  withheld as deliberative in a privilege log. BLM made its choice: On February 11, 2022,

9  BLM mailed new thumb drives with BLM's supplementary documentation. When RSIC's

10  counsel received these new thumb drives, they were surprised to learn that BLM was

11  supplementing the administrative record with over 30,000 new pages to the EIS

12  Decision File (which nearly doubled the EIS decision File), over 2,000 new pages in the

13  NHPA Decision File (which more than doubled the NHPA Decision File), and adding

14  nearly 9,000 new pages to the privilege log.

15       The inconsistencies between BLM's communications with the parties and BLM's

16  representations to the Court make it difficult to understand exactly why so much new

17  documentation was being produced for the first time. On January 24, 2022, United

18  States Department of Justice Attorney Leilani Doktor emailed counsel for all the parties

19  and stated:

20      "**Since December 27, 2021,** BLM has been conducting a thorough review of its
21  records to ensure that all documents ordered included in the record by the Court and all
22  deliberative documents withheld on that basis or under another privilege are appropriately
23  logged, as the Court required. **In searching its records it found around 8,000
24  documents – mostly emails – that may relate to the Thacker Pass Lithium project
25  decision. It then reviewed those 8,000 documents.** The purpose of the review is to
26  exclude duplicate, or non-substantive ("thank you") emails and combine emails of the
27  same thread into single documents/files for inclusion into the AR and entry onto the AR

index. All of these emails and documents will be included in the next production of the AR but the number of total entries will likely be less because of the elimination of duplicates and combining process. During that review BLM determined that an additional privilege review of 800 documents for inclusion is also necessary, those documents need to be reviewed by attorneys and logged in the privilege log with reasons, which is part of why we have requested additional time." (emphasis supplied)

Exhibit 1, Falk Declaration; Exhibit 2, Jan. 24, 2022 Doktor Email.

BLM, in its January 25, 2022 Unopposed Motion for Extension of Time (ECF-173), stated:

"[BLM] has been diligently working to comply with the Court's order, and continues to do so. However, due to the number of documents that needed to be reviewed – over 6,000 (many containing attachments that must be individually reviewed) relating to the NEPA process alone – and the additional work needed to add the documents, BLM needs an additional two weeks to fully comply with the Court's order. Following the agency's review of documents, it is [sic] has determined 800 of those deliberative documents need to be further screened prior to production."

It appears from Doktor's email to the parties and BLM's Unopposed Motion for Extension of Time that this new documentation was either not discovered by BLM until after December 27, 2021 or BLM had been withholding 8,000 (or 6,000) documents as deliberative without ever actually determining that they were in fact deliberative.

On February 11, 2022, Kenton M. Loda again certified the AR on February 11, 2022. ECF No. 178-1. Loda stated:

"Following the court's December 27, 2021 order (ECF No. 155) regarding the administrative record lodged with the court on November 23, 2021, I oversaw the addition to the administrative record of (i) all deliberative documents previously excluded, (ii) all comments between BLM and Bartell Ranch LLC and Edward Bartell previously excluded, and (iii) letters from the Nevada Division of Environmental Protection, Bureau of Ming [sic] Regulation and Reclamation and Nevada Department of Wildlife letters described at ECF No. 155 at 11-14.."

Loda, also stated: "I hereby certify, all records identified in the attached indices and provided to the Court and parties, constitute a true and correct copy of the relevant

1  records as retained in the BLM's files and include all materials directly or indirectly

2  considered for the BLM decisions at issue in this case."

3        But, Loda's certification was false. His February 11 statements certified a NHPA

4  Claims Record that was being supplemented with no less than 32 documents that post-

5  date the ROD. BLM could not have directly or indirectly considered those documents

6  when deciding to issue the ROD because those documents didn't exist at the time.

7  Demonstrating the falsity of Loda's certification, on March 28, 2022, BLM counsel

8  explained in an email that "the post decisional documents that are currently in the

9  record were inadvertently included" and refused to supplement the AR with the

10 complete post-ROD file, which includes letters from 6 tribes complaining about BLM's

11 failure to engage in consultation before the ROD was issued. Exhibit 1, Falk

12 Declaration; Exhibit 3, March 28, 2022 Doktor email.

**Argument**

14
15 **I. BLM had strong motives to withhold documents until as late as possible in the litigation.**

16
17        In the draft EIS, final EIS, Record of Decision, letters to the Nevada SHPO, and

18 in numerous statements to this Court, BLM claimed it consulted with the Fort McDermitt

19 Paiute and Shoshone Tribes, the Summit Lake Paiute Tribe, and the Winnemucca

20 Indian Colony. The February 11, 2022 production includes letters from BLM to Fort

21 McDermitt, Summit Lake, and the Winnemucca Indian Colony sent on April 14, 2021

22 notifying the tribes of the approved HPTP. TPNHPA-0005. It also includes responses

23 from Fort McDermitt and Summit Lake where the tribal governments for those tribes

24 complained of the lack of any consultation about the Project up to that point. TPNHPA-

25 0007; TPNHPA-0009.

1    Inexplicably, BLM continues to withhold a similar April 19, 2021 response from

2    the Winnemucca Indian Colony where the Colony council stated: "We are concerned

3    that you [sic] document 'Final Formatted LNC Thacker HPTP' on page 47, states that

4    consultation was held with the Winnemucca Indian Colony beginning in 2017 and

5    continues to date. We believe that is not true, and that BLM or others have NOT

6    consulted with the Winnemucca Indian Colony regarding this proposed project." ECF

7    No. 141-2, pg. 3. This evidence clearly contradicts BLM's statements about consulting

8    with the Tribes.

9    All of the Plaintiffs argue that BLM rushed the Thacker Pass permitting process.

10   The Thacker Pass EIS Project Kickoff Meeting Notes (TPEIS–0003) that BLM

11   previously withheld shows this is true. The meeting began with a discussion about

12   "streamlining" the NEPA process. AR-082182. In fact, it appears the Thacker Pass

13   permitting process was an experiment, as "BLM noted that this EIS will be the first

14   greenfield mine EIS in the [Humboldt River Field Office] that is conducted from start to

15   finish under SO 3355." *Id.*

16   Under SO 3355, the Department of the Interior ordered BLM Winnemucca to

17   permit the Thacker Pass Project in no longer than a year. Emails that BLM previously

18   withheld show how arbitrary, unreasonable, and capricious this order was. For example,

19   a series of newly supplemented emails demonstrate how much pressure Project Lead

20   Ken Loda was under and how rushed this Project truly was. On April 14, 2020, for

21   example, Loda explained to other BLM employees: "[W]e're not going to make the one-

22   year deadline…we likely won't be able to meet the page limitations, and I'm thoroughly

23   frustrated trying to keep this process moving given the complexities of this proposal and

1  the issues needing to be addressed in the EIS." TPEIS-1203, pg. AR-099452. Later in

2  the same email he wrote, "[W]e're still struggling to adequately address a couple of the

3  environmental issues." *Id.*

4        These Project Kickoff Meeting Notes are also significant because BLM has tried

5  to claim that a meeting in Thacker Pass with some Fort McDermitt tribal members

6  counts as consultation under NHPA. However, the Notes state that this meeting did not

7  occur. *Id.* at AR-082185. These Notes also state that BLM planned next steps to include

8  "presenting the Proposed Action to the tribes in-writing and in-person" just like BLM

9  manuals instruct. *Id.* But there is no indication in the AR that BLM ever presented the

10  Proposed Action to the Tribes in person.

11        The Tribal Plaintiffs argue that BLM failed to provide tribal and public consultation

12  in a manner that reflects the complexity of the Project. Additionally, Lithium Nevada and

13  BLM have tried to characterize a massive open pit mine that would pollute groundwater

14  for hundreds of years, destroy habitat for threatened species like greater sage grouse

15  and golden eagles, and would produce the greenhouse gas emissions of a small city as

16  somehow safe and "green."

17        It's no wonder, then, that BLM tried to keep documents with statements about the

18  destructiveness of this Project out of the AR for as long as possible. For example, BLM

19  previously withheld emails from BLM Native American Coordinator Tanner Whetstone

20  wherein Whetstone acknowledged "...most projects aren't this huge or destructive…"

21  TPNHPA-0233, pg. AR-004676. Whetstone also stated that the Thacker Pass project is

22  a "large ground-disturbing" project. *Id.* In another previously withheld email, Whetstone

23  acknowledged the "[Thacker Pass Obsidian Procurement District] is really the only well-

1    inventoried/documented component and would pretty much be destroyed by the

2    project…" TPNHPA-0246, pg. AR-004709.

3         RSIC contends that BLM's decision to fast-track the tribal and public consultation

4    period through the worst part of COVID-19 was arbitrary and capricious. BLM's

5    capriciousness is reflected in a previously withheld document where BLM Nevada

6    Native American Coordinators were asked to provide the status of government-to-

7    government consultation. TPNHPA-0186. In fact, BLM Nevada Lead Archaeologist

8    Bryan Hockett directly asked all Native American Coordinators: "If there are

9    communication issues with specific tribes that could hinder our ability to authorize

10   certain projects, what are these projects and can they be resolved over the next 30-60

11   days, or is it likely that a project will need to be delayed." *Id.* at AR-002203. Humboldt

12   River Field Office Assistant Manager Kathleen Rehberg asked Tanner Whetstone point-

13   blank about Thacker Pass tribal consultation. *Id.* at AR-002202.

14        However, a table attached to these emails shows that Whetstone updated

15   Hockett about other projects in the Winnemucca District Office, but strangely not

16   Thacker Pass. *Id.* pg. AR-002204-06. This table also shows that BLM was well-aware

17   that many tribes were struggling to keep up with BLM consultation while tribal offices

18   were closed and tribal employees were working from home. The table states about the

19   Summit Lake Paiute Tribe, concerning the Ormat Baltazor Project in the Humboldt River

20   Field Office, that: "Summit Lake's office is closed to the public, not sure on the status of

21   Fort McDermitt. Their review of the MOA/HPTP could be delayed." *Id.* pg. AR-002204.

22        As discussed above, previously withheld emails show BLM employees under

23   extreme stress at this time while they tried to keep the Thacker Pass Project on the fast-

1  track. Perhaps Thacker Pass was left out of this document because BLM employees

2  recognized that COVID-19 precautions and restrictions required delaying the Project to

3  give tribes enough time to consult.

4  **II.    BLM violated Rule 37(b)(2)(A) by failing to produce a complete AR while**

5  **negligently overlooking 8,000 documents or by unreasonably withholding**

6  **42,000 pages of documents as deliberative.**

7

8      On December 27, 2021, the Court ordered BLM to "supplement the AR within 30

9  days with **any materials previously withheld as deliberative**, or alternatively identify

10  any documents still withheld as deliberative when Defendants supplement the AR in a

11  privilege log." ECF No. 155, pgs 5-6 (emphasis added). BLM did not obey this order.

12      After the parties reviewed the newly supplemented AR, on February 22, 2022

13  and again on March 8, 2022  Western Watersheds Project's counsel and, on February

14  23, 2022, Bartell's counsel notified BLM of documents BLM withheld from the February

15  11 AR production and other problems with the AR. (Exhibit 4, Parties' AR Email Chain).

16  On March 25, 2022, BLM's counsel provided 14 documents. *Id.* The March 25, 2022

17  batch of documents included TPEIS-1499 (July 1, 2020 Letter from Bartell to BLM

18  Winnemucca about hydrology baseline data) and TPEIS-1500 (series of emails

19  between Bartell and BLM employees). BLM withheld these documents from the

20  February 11 AR production, despite the Court specifically ordering these

21  communications to be produced in the December 27 Order. The March 25, 2022 batch

22  of documents also included supplements to TPEIS-1434, TPEIS-1116, TPEIS-1339,

23  and TPEIS-0918. These supplements had been withheld from the February 11

24  production as deliberative, but were not listed in the privilege log contrary to the Court's

25  December 27, 2021 order.

1    BLM's choice to supplement the AR with 32,000 new pages instead of listing

2    them in the privilege log demonstrates either that BLM wrongfully withheld the 32,000

3    pages always knowing they were not deliberative or that BLM discovered the 32,000

4    pages after previously certifying that the AR was complete. Both scenarios are grounds

5    for sanctions.

6        If BLM only discovered the 8,000 documents after December 27, 2021, then BLM

7    produced an incomplete AR in July  2021 and October 2021. By producing an

8    incomplete AR, BLM disobeyed the Court's June 21, 2021 and September 13, 2021

9    Orders. ECF No. 28, pg. 5; ECF No. 94, pg 3. These are violations of Rule 37(b)(2)(A).

10        BLM may claim that it knew about these nearly 42,000 pages of documents all

11   along. If BLM knew about the nearly 42,000 pages, then, as Plaintiff Bartell pointed out

12   in his recent motion to amend the scheduling order ECF No. 186, pgs 6-7, n. 2, BLM

13   withheld records that should have been in the AR when BLM was first ordered to

14   produce the AR. That is a violation of Rule 37(b)(2)(A).

15        BLM may claim that it was reasonably withholding 42,000 pages of documents

16   as deliberative. First, if BLM truly thought those documents were deliberative, it would

17   have listed this documentation in a privilege log so, as this Court noted, the Court could

18   "adequately review the Defendants' decision to approve the Project…" ECF No. 155,

19   pg. 6. BLM's failure to produce this privilege log means the earlier productions of the AR

20   were incomplete, which again is a violation of Fed. R. Civ. P. 37(b)(2)(A).

21        It is telling that BLM simply added 32,000 new pages to the AR. If those 32,000

22   new pages were truly deliberative, then BLM could have continued to withhold them as

1   privileged while simply identifying them in a privilege log. Finally, BLM should have, at

2   least, disclosed the vast amount of documentation it was withholding as deliberative.

3   **III.    BLM violated 28 U.S.C. § 1927 by making repeated, reckless statements to**
4           **the Court about the completeness of the AR when the AR, in truth, was far**
5           **from complete.**
6
7

8           BLM's certification of the February 11 AR with the statements about the new AR

9   constituting "a true and correct copy of the relevant records" and how Loda oversaw the

10  addition of only "(i) all deliberative documents previously excluded, (ii) all comments

11  between BLM and Bartell Ranch LLC and Edward Bartell previously excluded, and (iii)

12  letters from the Nevada Division of Environmental Protection, Bureau of Ming [sic]

13  Regulations and Reclamation and Nevada Department of Wildlife letters" proved to be

14  false. Not only were they false, but with BLM producing parts of the AR piecemeal as

15  late as March 25, 2022 while knowing that the Plaintiff's Motions for Summary

16  Judgment are due on April 5, 2022, it's clear that these reckless, false statements were

17  made to improperly limit the parties' review of the AR.

18          If BLM knew about the 42,000 pages of documents it previously failed to include

19  in the AR or list as deliberative in the privilege log, then BLM's decision not to include

20  these documents in the original AR or to list them in the privilege log is a reckless action

21  made with an improper purpose – to limit the parties' and the Court's review of the

22  documents by withholding them for as long as possible, in violation of 28 U.S.C. §

23  1927.  BLM's decision to supplement the AR with 32,000 of those pages instead of

24  continuing to withhold them as deliberative while listing them in the privilege log is a

25  clear indication that these documents are not deliberative and that BLM always knew or

26  should have known that they were not deliberative.

1    Prior to February 11, 2022, BLM made repeated, strident statements, in papers

2  filed with the court, about the completeness of the AR, in pointed resistance to all of the

3  Plaintiffs' motions to supplement the record and to encourage the Court to deny RSIC's

4  motion for leave to amend. In BLM's opposition to the Tribal Plaintiffs' motion to

5  supplement the administrative record, BLM stated: "The BLM has compiled a record

6  containing all documents and materials directly or indirectly considered by the agency,

7  and that record is more than adequate for judicial review. The existing Record provides

8  all the information the Court needs, and may legally consider, to resolve Plaintiff-

9  Intervenors' claims. For these reasons, and for the reasons described below, the Court

10  should deny Plaintiff-Intervenors' motion to supplement the administrative record." ECF

11  No. 130, pg. 2.

12    Later in the same opposition, BLM claimed: "BLM has provided the 'whole'

13  Record, *i.e.* including how its environmental analysis and consultation efforts comply

14  with both NEPA and the NHPA. And that Record already contains most of the

15  information requested by Plaintiff-Intervenors, outside of a few documents not

16  considered by the agency." *Id.* pgs. 4-5.

17     Arguing that RSIC's motion for leave to amend its complaint would prejudice

18  BLM because it would require the preparation of a new administrative record, BLM

19  stated: "As explained in Federal Defendants' surreply in opposition to Plaintiff-

20  Intervenors' motion to supplement the administrative record, the administrative record

21  already compiled, served, and lodged in this action 'consists of all documents and

22  materials directly or indirectly considered by the agency decisionmakers in making [sic]

January 15, 2021 decision." ECF No. 154, pgs 23-24 (citing *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989).

BLM made similar statements in its opposition to Bartell's and the Conservation Plaintiffs' motions to complete or supplement the AR. BLM even went so far as to state: "And BLM's certification that the record is complete – that it includes those "considered" materials – is entitled to a presumption of regularity…" ECF No. 122, pg.

A reasonable inquiry into the completeness of the AR would have revealed the 8,000 new documents and would have demonstrated that BLM's factual contentions about the AR lacked evidentiary support. Therefore, BLM's many statements about the completeness of the AR were reckless and violate 28 U.S.C. § 1927.

Alternatively, BLM's decision to supplement the AR with around 32,000 new pages of documents instead of listing them in the privilege log demonstrates that BLM knew its previous legal contention that it didn't have to include the 32,000 new pages in the AR or list them in the AR's privilege log was neither warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Therefore, BLM's certification of the AR as complete and its previous legal contentions about deliberative documents were reckless or made in bad faith and, again, violate 28 U.S.C. § 1927.

**IV. BLM's violations of Rule 37(b) and 28 U.S.C. § 1927 have severely prejudiced RSIC.**

BLM's disobedience of the Court's discovery orders and its misrepresentations in papers filed with the Court have severely prejudiced RSIC. First, RSIC never would have agreed to the current scheduling order or agreed to be limited to a 25-page summary judgment motion in this case if they knew BLM was withholding documents

1    that would double the size of the NHPA AR and nearly double the size of the NEPA AR.

2    This has forced RSIC to move for an extension of time to review the AR.

3          Reviewing over 40,000 pages of new and undisclosed documents seriously

4    stresses RSIC's resources. RSIC is vastly outmatched by the resources BLM and

5    Lithium Nevada Corp. ("Lithium Nevada") can bring to bear in this litigation. This

6    disparity has been further exacerbated by nearly $50,000 in (what appear to be)

7    retaliatory fines levied by BLM against counsel Will Falk just a few weeks after he

8    helped RSIC file its motion to intervene in this case[1].

9          BLM's new document dump also arrived conveniently after the Tribal Plaintiffs'

10   notice of appeal and the filing of the Tribal Plaintiffs' opening appeal brief with the Ninth

11   Circuit. When the appellate record is limited to the documents before the district court,

12   withholding this documentation for so long means that the Tribal Plaintiffs would have to

13   engage in motion practice in the Ninth Circuit to seek supplementation of the appellate

14   record with documentation that BLM possessed that the Tribal Plaintiffs did not know

15   about.

16         Second, BLM's numerous statements that the July 30, 2021 and October 1, 2021

17   productions of the AR were complete have been a key factor supporting the Court's

18   belief that this case could be resolved on the merits before the 2022 construction

19   season begins. The Court relied on this aspiration to limit what it would consider as

20   irreparable harm to carrying out the Historic Properties Treatment Plan in denying the

21   Tribes' motion for preliminary injunction. ECF No. 92, pg 20. It relied on this aspiration

22   to deny RSIC's motion for leave to amend its complaint. ECF No. 167, pg. 5. And, it

---

[1] See *William Falk and Max Wilbert*, IBLA Case No. 2022-0016.

1   ordered BLM to produce materials previously withheld as deliberative and to

2   supplement the AR with a privilege log within 30-days because "the Court hopes to

3   resolve this case on the merits before the 2022 construction season begins…" ECF No.

4   155, pg. 6.

5          Now, the Court and the parties have learned that the AR was not close to

6   completion until February 11, 2022 and that throughout the period it was

7   incomplete, BLM insisted that the AR was complete when BLM either overlooked 8,000

8   documents or unreasonably failed to disclose their existence, either by including them

9   as non-deliberative documents with the originally produced ARs or listing them in a

10  privilege log.

11         BLM violated Fed. R. Civ. P. 37(b)(2) by disobeying the Court's order to produce

12  the AR by July 30, 2021 and October 1, 2021. Now that BLM has shown its disdain for

13  discovery and scheduling orders, it is reasonable to mistrust that the AR produced on

14  February 11, 2022 is complete. BLM might, after another round of motion practice,

15  locate another 8,000 documents it hadn't previously reviewed for inclusion in the AR, for

16  example.

17         It is also evident that BLM wanted many of the documents included in the

18  February 11, 2022 production to remain hidden. If BLM had been forthright, the Court

19  likely would have made a different decision on the Tribal Plaintiffs' preliminary injunction

20  motion, would have ruled differently on RSIC's motion to amend the complaint, would

21  have given BLM more time to produce the documents that doubled the AR, and would

22  have given the parties more time to review those documents so that schedule motions

23  would have been unnecessary.

**V.    Sanctions are necessary to compensate RSIC and to deter BLM from abusing the litigation process in the future.**

Federal courts have imposed sanctions in cases similar to this one. In *Diaz-Fonseca v. Puerto Rico,* 451 F.3d 13, 26 (1st Cir. 2006), while imposing sanctions, the First Circuit stated: "What matters is that the district court twice ordered [Puerto Rico and its officials] to produce the record by a certain date and that they failed both times to come into full compliance with the court's order." The First Circuit also noted, like BLM did in this case, that: "All of the defendants violated discovery orders either by missing clearly established deadlines or by representing to the court that they had complied fully with their obligations, even when their submissions (timely or otherwise) were incomplete, vague, or evasive." *Id.*

In *Oak Grove Technologies, LLC v. United States,* No. 21-775C, pgs. 1-2 (Fed. Cl. Nov. 3, 2021), the agency omitted just 2 documents from the originally-filed AR. The court ordered the government to show cause why monetary sanctions should not be imposed against the defendant agency for its piecemeal and improper handlings of the administrative record. *Id.* at pg. 2. The court in *Oak Grove Technologies* ultimately ordered the United States to pay the legal costs and expenses the plaintiff incurred in dealing with the AR issues because the agency's failure to include omitted documents was "an improper compilation, submission, and certification of the administrative record." *Id.* at pg. 28. And, the "omissions delayed resolving this case, wasted the Court's judicial resources by forcing the Court to engage in fact finding on an incomplete record, and imposed substantial costs" on the plaintiff. *Id.* BLM has done the same things, here.

1    In *New York v. Dep't of Commerce*, No. 18-CV-2921, 2020 WL 2564933 at *87

2   (S.D.N.Y. May 21, 2020), the court levied sanctions against the defendant federal

3   agency after the agency "notified Plaintiffs and the Court that they had discovered a

4   batch of documents that, in fact, should have been but were not produced to the

5   Plaintiffs in the course of discovery." This batch of documents totaled 900 previously

6   unproduced documents. *Id.* And, the court noted that these 900 documents equaled

7   "more than ten percent of the documents that Defendants were required to produce…"

8   *Id.* at 95. Here, BLM notified the plaintiffs that it found around 8,000 documents after

9   claiming the AR was complete multiple times to oppose all of the plaintiffs' motions to

10  supplement and to oppose RSIC's motion to amend. And, these new documents equal

11  more than 50% of the NHPA AR and around 45% of the EIS AR.

12    BLM disobeyed discovery orders and made false statements about the AR.

13  These actions have had significant impacts on this case's schedule and on the Court's

14  ability to review the whole AR and issue a ruling on the merits. These actions have also

15  severely prejudiced the Tribal Plaintiffs' attempts to obtain a preliminary injunction and

16  RSIC's attempt to amend its complaint.

17  **VI.    A default judgment against BLM is appropriate to deter future AR**
18  **       production abuses.**
19
20    Therefore, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi), RSIC request that the

21  Court render a default judgment vacating the Thacker Pass Lithium Mine Project's

22  Record of Decision (ROD). Default is appropriate because BLM withheld and

23  misrepresented the true nature of documents that show BLM failed to comply with the

24  National Historic Preservation Act (NHPA) and National Environmental Policy Act

25  (NEPA) in issuing the Thacker Pass ROD.

The Ninth Circuit has identified five factors that a district court must consider before dismissing a case or declaring a default:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Adriana Intern. Corp. v. Thoeren*m 913 F.2d 1406, 1412 (9th Cir. 1990)

"We may affirm a dismissal where at least four factors support dismissal, or where at least three factors strongly support dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th. Cir. 1999). Here, BLM violated court orders to produce the AR. "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." *Adriana Intern. Corp* at 1412. BLM's violations of court orders were failures to produce documents and "[f]ailure to produce documents as ordered, however, is considered sufficient prejudice." *Id.*

Less drastic sanctions are insufficient to achieve the punitive and deterrent effect Rule 37(b) sanctions are meant for. If federal agencies are allowed to play the kinds of games with the AR that BLM has played in this case, these agencies will always hide administrative records for as long as possible so that – as seen in this case – plaintiffs will not be have access to evidence that counters or  undermines the agency's position in preliminary injunction motions, motions to amend complaints, and/or on appeal.

The reality is, plaintiffs rarely know what is in the AR while federal agencies (and corporate defendants like Lithium Nevada who work side-by-side with federal agencies) always do. The public must take agencies at their word about what is in the AR. And, if plaintiffs don't even know the documentation exists, then it is very easy for BLM to lie or

simply remain silent about what's actually in the AR. This is such a powerful advantage – and can be so easily abused – that agencies must be sternly punished when they do abuse this advantage like BLM did here. If agencies are not forced to obey orders to produce the AR, then they can always hold on to documentation until right before summary judgment when they conveniently "just discovered" half the AR or "just realized" 40,000 pages of documents weren't deliberative after all.

Alternatively, if the Court decides less drastic sanctions are appropriate, RSIC requests that the Court impose the following as relief for the timing delays and unforeseen expenditures of resources occasioned by BLM's deleterious delays:

- That the Court enter a ruling by which it deems the claimed failures by BLM to consult with any Tribe prior to issuing the ROD to be factually established and which also excuses all tribal plaintiffs from the necessity of proofs of those matters, pursuant to Fed.R.Civ.P. 37(b)(2)(A)(i);

- That the Court strike the opposition to Plaintiff Reno-Sparks Indian Colony's Motion to Amend Complaint and grant the Motion *in toto;* and

- That the Court award monetary sanctions to Reno-Sparks Indian Colony to compensate RSIC's counsel for the research, preparation and prosecution of motion practice aimed at proving BLM's serial failures to undertake tribal consultations required by the NHPA, which motions would have been unnecessary had BLM been candid and forthcoming with the complete AR.

Respectfully submitted,

s/Will Falk
Utah Bar No.: 16678
2980 Russet Sky Trail

Castle Rock, CO 80108
(319) 830-6086

Vicky Oldenburg (Nevada Bar No. 4770)
Oldenburg Law Office
P.O. Box 17422
Reno, NV 89511
(775) 971-4245
vicky@oldenburglawoffice.com

Terry J. Lodge
Ohio Bar No.: 29271
316 N. Michigan St., Suite 520
Toledo, OH 43604-5627
(419) 205-7084

Attorneys for Reno-Sparks Indian Colony

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, April 4, 2022, I filed the foregoing using the United States District Court CM/ECF, which caused all counsel of record to be served electronically.

/s/Will Falk
Utah Bar No. 16678

## EXHIBIT INDEX

| EXHIBIT | DESCRIPTION | # OF PAGES |
|---------|-------------|------------|
| 1 | Falk Declaration | 3 |
| 2 | Doktor's Jan. 24, 2022 Email | 2 |
| 3 | Doktor's March 28, 2022 Email | 2 |
| 4 | Parties Email Chain About AR | 9 |