# **EXHIBIT 1**

12/29/2021 Email from Mr. Carollo



**From:** Dominic Carollo <dcarollo@carollolegal.com>
**Sent:** Wednesday, December 29, 2021 12:52 PM
**To:** Roger Flynn <Roger@wmaplaw.org>; Will Falk <falkwilt@gmail.com>; Carroll, Arwyn (ENRD) <Arwyn.Carroll@usdoj.gov>; Laura K. Granier <LKGranier@hollandhart.com>; Talasi Brooks <tbrooks@westernwatersheds.org>; Rick Eichstaedt <rick@wheatlawoffices.com>; Julie Cavanaugh-Bill <julie@cblawoffices.org>; Chris Mixson <c.mixson@kempjones.com>; Terry Lodge <tjlodge50@yahoo.com>; Doktor, Leilani (ENRD) <Leilani.Doktor@usdoj.gov>
**Cc:** kent@winnemuccalaw.com
**Subject:** Thacker Pass - Extra-Record Evidence

**External Email**

Counsel:

I'm reaching out to provide notice of the possibility that the Bartell plaintiffs may submit a motion requesting that the court admit and consider specific extra-record evidence, that just recently came to light, when plaintiffs file for summary judgment.  This evidence would be portions of a transcript from a 6-day hearing that began Dec. 1, 2021 before the Nevada State Engineer.  The transcript of the hearing has not yet been completed but we are expecting it in the next 2-3 weeks.

For background, this water proceeding is one in which Bartell Ranch is challenging LNC's applications to transfer groundwater rights from the eastside of the Quinn River Valley to the west side of the valley, along the eastern edge of the mine project area for use at the company's production well.  In support of the transfer applications, LNC submitted to the State Engineer the same seeps/springs/streams "Baseline Hydrogeologic Data Collection Report" that was prepared by Piteau and incorporated by BLM into the EIS.  Tyler Cluff, the chief author of the Piteau baseline report, testified as an expert witness for LNC, which gave Bartell Ranch the opportunity to cross examine him about this report.

One of the areas of cross examination was Mr. Cluff's claimed adherence to the Stevens Protocol for inventorying seeps and springs (see TPEIS-0642).  In the FEIS, Cluff stated that Piteau followed the Stevens Protocol for inventorying and measuring springs.  AR-055783.  Under cross examination, Mr. Cluff admitted that Piteau did not follow the Stevens Protocol in at least the following respects:

1. Piteau did not use field data sheets.  Instead, Cluff stated that they used blank notebooks and then transcribed the notebooks to an electronic template.  The Stevens Protocol states: "Field data sheets are the most efficient and reliable information documentation for Level 1 and 2 springs inventories. Multi-staff team information compilation and detection of data entry errors is impossible without hard copy field sheets, and springs-related data have proven too complex for on-site electronic data entry systems. Therefore, we recommend field data entry on hard copy sheets, with data entry in the laboratory soon afterwards and QA/QC."). AR-060687.  Mr. Cluff admitted they did not follow this protocol.
2. In most cases, Piteau did not prepare sketch maps of spring measurement locations, contrary to the protocols in Stevens.  See AR-060700.
3. Piteau did not conduct outreach to private landowners prior to developing and executing their survey plan.  See AR-060685 ("Prior to conducting field work, the survey team should contact private landowners or the Federal, Tribal, state, county, or local entities involved with the springs to communicate goals and objectives about the project, acquire additional information, and to arrange access to springs included in the inventory.").
4. Piteau surveyed springs on private lands (Bartell Ranch) without the Ranch's knowledge or consent, which, among other things, is directly contrary to the Stevens Protocol.  See AR-060685 ("Because information collected on the sites is the intellectual property of the springs owner, the team needs to ensure the security and ownership of the inventory data with the steward.").
5. There was also testimony from Mr. Cluff indicating that Piteau measured springs at their orifice rather than at the point of highest flow.  See AR-060709 ("Springs flow should be measured at the point of maximum surface discharge, which is not likely to be the source but rather some distance downstream. The point of flow measurement should be recorded on the sketchmap (see below). Understanding flow variability is important in many situations, and flow can be expected to vary seasonally at most shallow aquifer or low residence-time aquifers.")

Mr. Cluff's testimony also indicated that he did not interact with BLM about his work product.  Rather, Mr. Cluff sent his work product to LNC  executives who provided feedback and comments and then Mr. Cluff would deliver his final work product to those same company executives.

You may recall that Leilani previously stated in an email: "BLM has the expectation that contractors with appropriately credentialed staff will provide accurate data and conclusions in a professional manner…"  Tyler Cluff's cross examination indicated that Piteau did not meet that standard in multiple respects.

Piteau's admitted failure to adhere to the Stevens Protocol goes directly to Bartell Ranch's claims that the environmental baseline is inaccurate and BLM failed to ensure scientific integrity.  Accordingly, once the State Engineer hearing transcript is made available, and Bartell Ranch has a chance to make a final review and assessment of the transcript's relevance to this case, Bartell Ranch may move to have the court consider portions of the transcript in evaluating BLM's decision to approve the project.  We would most likely do this as a separate motion, but filed concurrently with our MSJ, so as to not cause any delay in the proceedings.  The purpose of this email is to

provide the parties with advance notice and, also, to apprise BLM, in particular, of new forthcoming evidence demonstrating that the agency's assumptions about Piteau's work were in error, in at least one material and substantial respect.  I realize that LNC and BLM will likely oppose this potential motion on multiple grounds but we believe this is a fundamental defect and error in the EIS that needs to be brought to the attention of the court, as well as given serious consideration by BLM as to the accuracy and scientific integrity of the FEIS.

Sincerely,

Dominic M. Carollo

Carollo Law Group llc
PO Box 2456
630 SE Jackson Street
Suite 1
Roseburg, OR 97470
PH: 541-957-5900
FAX: 541-957-5923
dcarollo@carollolegal.com