UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BARTELL RANCH LLC, *et al.*, | Case No. 3:21-cv-00080-MMD-CLB |
| Plaintiffs, | ORDER |
| v. | |
| ESTER M. MCCULLOUGH, *et al.*, | |
| Defendants. | |

## I.  SUMMARY

Plaintiffs[1] and Plaintiff Intervenors[2] in this consolidated case challenge the Bureau of Land Management of the U.S. Department of Interior's[3] ("BLM") approval of Intervenor-Defendant Lithium Nevada Corporation's plan to build a lithium mine near Thacker Pass, Nevada (the "Project") via a January 15, 2021 Record of Decision ("ROD") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, the National Environmental Policy Act, 42 U.S.C. §§ 4321-61, the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701-1787, and the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 300101, *et seq.* (ECF Nos. 1, 46, 83.) *See also Western Watersheds Project, et al. v. Bureau of Land Management of the U.S. Department of the Interior, et al.*, Case No. 3:21-cv-00103-MMD-CLB, ECF No. 1 (D. Nev. Filed Feb. 26, 2021) (since consolidated into this case). Before the Court is RSIC's motion for sanctions against Defendants based on

---

[1]Bartell Ranch LLC and Edward Bartell (collectively, the "Rancher Plaintiffs"), along with Western Watersheds Project, Wildlands Defense, Great Basin Resource Watch, and Basin and Range Watch (collectively, the "Environmental Plaintiffs").

[2]Reno-Sparks Indian Colony ("RSIC") and the Burns Paiute Tribe.

[3]Ester M. McCullough, the District Manager of BLM's Winnemucca office, along with the Department of the Interior, are also named Defendants.

the manner in which Defendants produced the Administrative Record(s) ("AR(s)").[4] (ECF No. 200 ("Motion").) The Court held a hearing on the Motion on June 9, 2022. (ECF No. 245 ("Hearing").) As further explained below, though RSIC raises what the Court construes as two valid points in its Motion, RSIC has not shown it is entitled to any sanctions. The Court will accordingly deny the Motion.

**II.   BACKGROUND**

The Court again incorporates by reference the background that it included in prior orders. (ECF Nos. 92 at 2-4, 197 at 2-5.) *See also Western Watersheds*, Case No. 3:21-cv-00103-MMD-CLB, ECF No. 48 at 2.

As pertinent to the Motion, the Court adopted the parties' stipulated schedule under which Defendants had to produce the ARs as to the NHPA claims by October 1, 2021. (ECF No. 94 at 3.) Defendants timely produced the AR as to the NHPA claims. (ECF No. 113 at 2.) On November 23, 2021, BLM's Lead Geologist for the Humboldt River Field Office, Ken Loda, submitted an affidavit in which he stated that the ARs lodged with the Court constituted, in pertinent part, the AR for the complaints containing the NHPA claims. (ECF No. 136-1 at 2-3.) He concluded that affidavit with the statement, "[b]ased on my knowledge and information, I hereby certify, all records identified in the attached indices and provided to the Court and parties, constitute a true and correct copy of the relevant records as retained in the BLM's files[,]" and a further statement that everything in the affidavit was true and correct under penalty of perjury. (*Id.* at 3.)

In the end of December 2021, the Court ruled on the parties' motions regarding the scope and contents of the two ARs. (ECF No. 155 ("December 2021 Order").) As pertinent to the Motion, the Court granted Rancher Plaintiffs, RSIC, and Burns Paiute Tribe's requests that Defendants supplement the ARs with documents previously withheld as deliberative. (*Id.* at 4-6, 14-15.) The Court ordered that "Defendants must complete the administrative record with deliberative and other specific materials specified herein and

---

[4]Lithium Nevada (ECF No. 215) and Defendants (ECF No. 218) filed responses, and RSIC filed a reply (ECF No. 221).

2

file that completed version of the administrative record along with a privilege log for any documents deemed deliberative and withheld from the completed version of the administrative record within 30 days of the date of entry of this order." (*Id.* at 16.)

On January 25, 2022, Defendants moved for more time to file the completed versions of the ARs in compliance with the Court's December 2021 Order. (ECF No. 173.) Defendants explained in that motion that they needed more time to review over 6000 documents, including 800 that needed extra levels of privilege review.[5] (*Id.* at 2.) Defendants accordingly requested an extension of their deadline to February 11, 2022. (*Id.* at 3.) The Court granted that request. (ECF No. 174.)

Defendants timely filed a supplemented set of ARs on February 11, 2022. (ECF No. 178.) The supplemented ARs lodged with the Court were accompanied by another affidavit from Mr. Loda substantially similar to the earlier-filed affidavit described above. (ECF No. 178-1.) However, the statements towards the end of the affidavit were slightly different:

> 5. Based on my knowledge and information, I hereby certify, all records identified in the attached indices and provided to the Court and parties, constitute a true and correct copy of the relevant records as retained in the BLM's files and include all materials directly or indirectly considered for the BLM decisions at issue in this case. The administrative record does not include privileged materials or information. Those records are described on the privilege log submitted herewith.
>
> 6. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

(*Id.* at 3.)

Defendants later lodged another version of the ARs with the Court on April 20, 2022. (ECF No. 217.) In the notice with the manual filing (flash drives containing the ARs),

---

[5] A January 24, 2022, email from Defendants' counsel filed as an exhibit to the Motion puts the number at 8000 instead of 6000. (ECF No. 200-2.) RSIC accordingly refers to the number 8000 instead of 6000 in its Motion and reply in support thereof. (ECF Nos. 200, 221.)

3

Defendants explained that they made more changes to the content of the ARs after the version they filed on February 11, 2022. (*Id.* at 2.) Specifically:

> After lodging that administrative record, Plaintiffs and Plaintiff Intervenors' counsel then requested production of additional documents that they believed should be included in the Record and identified 32 post-decisional documents that had been added, inadvertently. Because post-decisional documents are outside the scope of an administrative record, these documents have been removed from the Record. Counsel for the Burns Paiute Tribe also noted that the version of the Final Environmental Impact Statement (FEIS) was missing bates stamps. Federal Defendants agreed to complete the Record with the requested documents, removed post-decisional documents, corrected the FEIS, and updated the Record indices. Federal Defendants provided counsel for Plaintiffs, Plaintiff-Intervenor and Defendant-Intervenor with the revised index of the Record and the additional documents electronically on March 25, 2022.

(*Id.*) This notice (and the flash drives) was accompanied by a third affidavit from Mr. Loda. (ECF No. 217-1.) Mr. Loda's third affidavit explains the additions and subtractions to the ARs also described in the notice and excerpted above. (*Id.* at 3.) Mr. Loda's third affidavit also concludes with similar statements to those excerpted above and included in his second affidavit. (*Id.* at 4.)

The Court directed the parties to be prepared to address two issues in its minute order setting the Hearing.[6] (ECF No. 234.) Through entertaining argument on these two issues, the Court gained more of an understanding of BLM's process for marking documents for inclusion in ARs.

Specifically, BLM's counsel explained that individual BLM employees—or email 'custodians' as BLM's counsel referred to them—add documents to a 'case file' as they

---

[6]At the Hearing, RSIC's counsel suggested that the Court did not quite capture RSIC's arguments in its minute order setting the Hearing, clarifying that—as to both arguments—BLM and its counsel admitted that they had not individually reviewed certain documents deemed deliberative before doing so and filed certifications that turned out to be inaccurate. RSIC's counsel thus suggested its argument was stronger than implying these issues were merely logically derived from documents filed in this case, as RSIC's counsel stated the Court had done in its minute order. The Court finds this is a distinction without a difference. There is no dispute that BLM did not individually review six to eight thousand emails before withholding them as deliberative from the initial versions of the ARs, or that Mr. Loda's declarations subsequently became arguably inaccurate.

4

generate them with the expectation that this case file will eventually become the AR once a final agency action occurs, if some party seeks judicial review. BLM's counsel could not say how any individual decisions were made as to whether a document should or should not be included in the 'case file,' or whether the individual BLM employees making these initial decisions received any training as to whether a particular document is deliberative. Emails may be included in the case file, and eventually, the AR(s). Moreover, BLM's counsel defers to these initial determinations and does not conduct any audits or other review as to which documents are added to the 'case file.' However, the presumption is that documents not included in the 'case file' are deliberative and thus not part of the AR.

This is why neither BLM nor its counsel had previously reviewed the six to eight thousand emails they later sought more time to review once the Court ordered them to include deliberative documents in the ARs or note their exclusion in a privilege log. Consistent with their normal practice, neither BLM nor its counsel looked outside the case file. Once the Court ordered BLM to include deliberative documents, BLM searched for all emails related to the Project, and then made more individualized determinations as to whether any of them should, for example, continue to be withheld under the deliberative process privilege.

More generally, BLM's counsel explained that BLM itself was responsible for preparing the administrative record, and BLM's counsel does not generally second-guess BLM's decisions about the content of the administrative record. However, BLM's counsel also highlighted at the Hearing that they faithfully complied with the Court's orders directing them to include or log documents initially withheld as deliberative and emphasized that there was no prejudice to any of the other parties because BLM ultimately did produce two full and complete ARs about two weeks before the summary judgment briefing process began.

**III.    DISCUSSION**

As further explained below, the Court ultimately agrees with two of the points raised in RSIC's Motion, but nonetheless finds that RSIC has not shown it is entitled to any

5

sanctions. Specifically, Defendants permissibly withheld documents from the initial versions of the ARs as deliberative, but later admitted they had not reviewed between six and eight thousand of those documents before withholding them as deliberative—though BLM's counsel also represented at the Hearing she was aware of no authority requiring BLM to review each document before withholding it. But nonetheless, and as RSIC points out, how could BLM's counsel have known that those documents were deliberative if they had not yet reviewed them? BLM's counsel essentially conceded at the Hearing that she could not.

Moreover, the affidavits that accompanied the versions of the ARs lodged with the Court arguably contain incorrect statements because of the way Defendants produced several versions of the ARs in this case. The Court uses the phrase arguably because Mr. Loda's statements included caveats such as 'based on my knowledge and information.' But considering these two points together, the Court agrees that RSIC has highlighted a defective process in its Motion. And even BLM's counsel admitted that there were some 'speed bumps' in the process leading to full production of the ARs here. That said, Defendants and their counsel's actions do not appear to have been taken intentionally in bad faith, nor were they reckless coupled with some other factor such as an intent to harass—and RSIC does not even really argue they were. Thus, sanctions under 28 U.S.C. § 1927 or the Court's inherent powers are unavailable to RSIC here. Moreover, the Court agrees with Defendants that sanctions are unavailable under Fed. R. Civ. P. 37(b) in this case, without holding that Rule 37(b) sanctions are never available in any case including an APA claim. And in any event, any prejudice to the other parties due to Defendants' counsel's conduct in producing the ARs was not so great to warrant the severe sanctions RSIC seeks in its Motion—were those sanctions even available.

To start, there was nothing impermissible or nefarious about Defendants' decision to withhold deliberative documents from the first versions of the ARs that they produced. As Defendants argue, their position was supported by caselaw from the D.C. Circuit Court of Appeals and at least one other court within this District. (ECF No. 218 at 3-4, 9-11.)

1  Moreover, that same body of caselaw supported Defendants' decision not to log any omitted documents in a privilege log, because that line of caselaw holds that deliberative documents are simply not part of the administrative record. (*Id.* at 10-11.) In addition, Defendants timely produced the initial versions of the ARs. (ECF Nos. 94 at 3, 113 at 2.) Thus, the Court rejects RSIC's arguments to the extent based on the initial production of the ARs.

However, Defendants do not have a persuasive response to RSIC's valid point that Defendants excluded some six or eight thousand documents from the initial version of the ARs as deliberative without first reviewing them. (ECF Nos. 173 at 2, 200-2 (asking for more time to review six to eight thousand documents not previously included in the ARs); *see also* ECF Nos. 200 at 9-10 (noting this issue), 218 (declining to discuss in detail the six to eight thousand documents they had to review before producing the revised ARs), 221 at 8-10 (again pointing out this issue).) Defendants should have reviewed these documents instead of relying on their designation as deliberative based on the contemporaneous determinations of agency employees before withholding them from the ARs as deliberative.[7] Indeed, this issue provides another reason supporting the Court's decision to follow the District of Montana's approach in *Ksanka Kupaqa Xa'lcin v. United States Fish & Wildlife Serv.*, Case No. CV 19-20-M-DWM, 2020 WL 4193110 (D. Mont. Mar. 9, 2020) and require Defendants to include a privilege log with its revised ARs. (ECF No. 155 at 4-6.) If Defendants were required to provide a privilege log from the outset, they would have had to review all relevant documents before producing the first versions of the ARs to decide what to include in the privilege log. Thus, they could not have overlooked six to eight thousand documents so easily. And this issue further illustrates the

---

[7]In a sense, the Hearing raised more questions than it answered because the Court cannot say whether the individual employees making these determinations receive any training or are otherwise qualified to determine whether a document is 'deliberative.' Moreover, the decisions made by these unknown employees are apparently not reviewed by BLM's counsel. It is accordingly difficult to see how these determinations are entitled to any of the presumptions of deference or completeness (as to the ARs) upon which Defendants have subsequently relied.

7

1 pitfalls of deferring entirely to the agency to create its own ARs—also avoided by the approach suggested in *Ksanka Kupaqa Xa'lcin*—because it is not clear Defendants ever would have reviewed these six to eight thousand documents excluded from the initial ARs if the Court had not ordered Defendants to either include deliberative documents or note their exclusion in a privilege log. The Court accordingly rejects the contrary body of caselaw perhaps epitomized by *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) suggesting that deliberative documents are simply not part of the ARs and may therefore be withheld without disclosing their existence—that body of caselaw leads to subpar results with the production of ARs as evidenced by the issues raised in the Motion. The Court further notes that it finds the process leading to the productions of the ARs in this case defective.

Similarly, there is no genuine dispute that Mr. Loda's declarations to the effect that the ARs were complete the second time he offered an affidavit were arguably inaccurate because Defendants later made some changes to the ARs and had Mr. Loda submit a third affidavit saying that the ARs were complete *that* time.[8] (*Compare* ECF No. 178-1 *with* 217-1.) But as noted, and contrary to RSIC's strenuous argument, Mr. Loda's statements were only arguably inaccurate because they included the qualifier, "[b]ased on my knowledge and information[.]" (ECF Nos. 178-1 at 3, 217-1 at 4.) That qualifier saves Mr. Loda from any reasonable inference of recklessness or intentional conduct. Moreover, Mr. Loda explains in the third affidavit that the additions to and subtractions from the ARs ultimately rendering the statements in his second affidavit inaccurate came about because of discussions between the parties' counsel and inadvertence—none of which speaks to intentional or reckless conduct. (ECF No. 217-1 at 3.) In sum, Defendants were at most

---

[8]The Court does not find there is anything even arguably inaccurate in Mr. Loda's first declaration because he simply states that the documents he was certifying 'constitute the record' and are accurate copies. (ECF No. 136-1 at 2-4.) That affidavit also contains the 'based on my knowledge and information' caveat. (*Id.* at 4.) And as discussed *supra*, the first ARs reflected Defendants' legally permissible though ultimately unpersuasive argument that the ARs do not properly include deliberative records. Seen as an extension of that position—presumably adopted by Defendants' counsel, not Mr. Loda in any event—Mr. Loda's statements are not inaccurate.

8

careless in preparing the revised ARs to comply with the Court's December 2021 Order, because they later had to prepare new versions of the ARs and have Mr. Loda submit a third affidavit that showed his second affidavit was arguably inaccurate.

But none of the argument or evidence presented by RSIC in its Motion or at the Hearing—and discussed *supra*—tends to evidence intentional conduct, much less bad faith. Indeed, RSIC ultimately concedes as much in its reply brief, writing, "RSIC may be forgiven for concluding that at some point, 'inadvertence' gives way to 'recklessness,' and 'recklessness' forms the basis for a conclusion of 'intentionality[,]'" and then declining to specify precisely which sanction is appropriate here. (ECF No. 221 at 14.) And because the Court does not find that the errors described above evidence bad faith, the Court also finds that any sanction under either Section 1927 or the Court's inherent powers would be inappropriate. Indeed, even recklessness is insufficient to sanction an attorney under the Court's inherent powers, though "an award of attorney's fees is justified when reckless conduct is 'combined with an additional factor such as frivolousness, harassment, or an improper purpose.'" *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008) (citation omitted). Similarly, the Court may find bad faith under Section 1927 either when subjective bad faith is present or when "'an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent.'" *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). None of this describes Defendants' counsels' conduct here.

And while the Court will not foreclose the possibility of ever awarding Rule 37(b) sanctions in a case that involves an APA claim,[9] the Court finds that it would be improper

---

[9]Because unlike in this case, the Court may preside over a case that involves both an APA claim and one or more discovery orders violated by a party. Plaintiffs proffer an example of that type of case, distinguishable from this case because the Court has not entered any discovery orders here: *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 26 (1st Cir. 2006). (ECF No. 200 at 5.) The *Diaz-Fonseca* court explained:

> All of the defendants violated discovery orders either by missing clearly established deadlines or by representing to the court that they had complied fully with their

to award Rule 37(b) sanctions here. The Court has not entered an order under Rule 26 in this case, there have been no depositions, no party has filed a motion to compel discovery in the traditional sense, and there have not been any physical or mental examinations. Thus, none of the specifically-mentioned examples in Rule 37(b)(2)(A) apply. And the Court does not find that its December 2021 Order is "an order to provide or permit discovery[,]" *see id.*, because it was not—it was an order to correct the ARs. And as the Court has mentioned in various prior orders, discovery in the traditional sense is inappropriate here because this is a case where the Court is "limited to the administrative record." *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005). Thus, nothing that has happened in this case is 'discovery' in the sense contemplated by Rule 26—it has instead been an extended exercise in determining what constitutes the administrative record before BLM at the time it decided to approve the ROD so the Court may evaluate that decision under the appropriate standards of review. This case has proceeded on a stipulated schedule and is based entirely on the contents of the ARs. Said otherwise, no traditional discovery has occurred in this case, so the traditional remedies for discovery violations do not apply.

And even if RSIC had shown it was legally entitled to sanctions here—and as explained *supra*, it has not—the Court would hesitate to award any sanctions for two additional reasons. First, the Court is unpersuaded that RSIC has been legitimately prejudiced by Defendants' counsel's handling of the production of the ARs in this case.

---

obligations, even when their submissions (timely or otherwise) were incomplete, vague, or evasive. The court's discovery orders of March 11 and April 27, 2004 explicitly warned defendants that failure to comply fully and on time would result in sanctions, including the striking of pleadings and the entry of default. Under these circumstances, the district court was within its discretion in imposing sanctions.

451 F.3d at 26 (footnote omitted). Thus, while this out-of-circuit case is of course not binding on the Court, the Court may find it persuasive if presented with a different case where a party repeatedly failed to comply with discovery orders in the sense contemplated by Rule 37(b). In addition, the Ninth Circuit does not appear to have spoken to whether Rule 37(b) sanctions are available in APA cases. But the Court need not decide that unsettled question of law. The Court merely finds Rule 37(b) sanctions are not available in this case.

The scope and contents of the ARs now appear to be correct, and merits briefing has not yet concluded. Indeed, according to BLM and Lithium Nevada's counsel at the Hearing, BLM ultimately produced the complete ARs before merits briefing began. And for example, RSIC's argument about how it was prejudiced because the Court did not grant its motion for a preliminary injunction (ECF No. 200 at 21) is unpersuasive because the Court denied that motion before Defendants were required to produce any AR as to the NHPA claims. (ECF Nos. 92 (issued September 3, 2021), 94 at 3 (providing that Defendants would provide the NHPA AR by October 1, 2021).) And RSIC's argument it was prejudiced because the Court denied its motion for leave to amend (ECF No. 200 at 21) is unpersuasive because, for example, the Court denied that motion in part because the proposed amended complaint attempted to assert claims on behalf of an unclear number of additional tribes who were not RSIC. (ECF No. 167 at 6-8.) That finding would not have changed regardless of what was in the ARs.

Second, RSIC has not made a persuasive showing that its requested sanctions are commensurate to the scale of Defendants' violations. Most notably, RSIC seeks case-dispositive sanctions right as the merits briefing process is getting underway. (ECF No. 200 at 22-25.) RSIC proffers no applicable law supporting its request for a default judgment vacating the ROD and remanding to BLM. And the Court is aware of no such authority. It would be an abuse of the Court's discretion to allow RSIC's attempted end-run around the merits briefing process because RSIC caught Defendants in two 'gotchas.' While it is now clear that the Court will be unable to resolve this case on any particular timetable, it wishes to resolve this case on the merits. As even RSIC concedes, public policy favors it. (*Id.* at 24 (quoting *Adriana Intern. Corp. v. Thoerenm*, 913 F.2d 1406, 1412 (9th Cir. 1990)).)

**IV.     CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines

11

that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that RSIC's motion for sanctions (ECF No. 200) is denied.

DATED THIS 10th Day of June 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE