Laura K. Granier (SBN 7357)
Jessica L. Freitas (SBN 16079)
HOLLAND & HART LLP
5441 Kietzke Lane, Suite 200
Reno, NV 89511-2094
(775) 327-3000
(775) 786-6179 fax
lkgranier@hollandhart.com
JLFreitas@hollandhart.com

Hadassah M. Reimer, Esq (Wyo. Bar No. 6-3825)
*Admitted Pro Hac Vice*
Holland & Hart LLP
P.O. Box 68
Jackson, WY 83001
Tel: 307-734-4517
hmreimer@hollandhart.com

*Attorneys for Defendant-Intervenor*
*Lithium Nevada Corp.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BARTELL RANCH, LLC, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>ESTER M. McCULLOUGH, et al.,<br><br>　　　　　　　　Defendants,<br><br>and<br><br>LITHIUM NEVADA CORP.,<br><br>　　　　　　　　Defendant-Intervenor. | *Lead Case:*<br>**Case No. 3:21-cv-00080-MMD-CLB**<br><br>**LITHIUM NEVADA CORP.'S MOTION TO STRIKE OR IN THE ALTERNATIVE FOR LEAVE TO FILE A SURREPLY TO BARTELL RANCH LLC AND EDWARD BARTELL'S REPLY IN SUPPORT OF THE MOTION FOR EXTRA RECORD EVIDENCE** |

　　　　Defendant-Intervenor Lithium Nevada Corp. ("Lithium Nevada") moves to strike or, in the alternative, for leave to file a sur-reply to respond to new arguments presented for the first time in the Reply in Support of Bartell Ranch, LLC and Edward Bartell's (collectively, "BRL") motion for extra-record evidence. ECF 235. Lithium Nevada met and conferred with counsel for BRL regarding a possible motion to strike the new arguments or, in the alternative, for leave to file a sur-reply, but BRL rejected any agreement and will oppose this motion.

1

## I. INTRODUCTION

This Court has consistently held that new evidence and information cannot be submitted after an opposition has been filed. *See, e.g.*, *Shafer v. Moore Law Grp.*, No. 3:20-cv-00525- MMD-CLB, 2021 U.S. Dist. LEXIS 174185, at *3 (D. Nev. Sep. 14, 2021) ("[T]o the extent that a party raises a new argument or proffers new evidence and information in a reply brief, that argument or evidence is improper because the opposing party is deprived of an opportunity to respond." (citation omitted)). The submission of new evidence or information in a final reply brief is particularly inappropriate when the evidence was available when the initial motion was filed. *Pacquiao v. Mayweather*, No. 2:09-cv-2448-LRH-RJJ, 2010 U.S. Dist. LEXIS 92343, at *3–4 (D. Nev. Aug. 13, 2010). BRL's Motion asserted that extra-record evidence should be considered because the proposed evidence allegedly shows that Piteau "never was in direct contact with [BLM's contractor] ICF … and had no knowledge of any independent evaluation on the part of BLM." ECF 207 at 13. In response, Lithium Nevada cited numerous documents in the administrative record demonstrating BLM's detailed independent evaluation of Piteau's data and conclusions. ECF 216 at 20–23. In Reply, rather than address Lithium Nevada's arguments or dispute the record evidence, BRL asserts entirely new arguments. BRL apparently abandons the basis of the initial motion—that Piteau supposedly never spoke directly to BLM—for a new argument, asserting now that BLM was required to have physically "visit[ed] spring and stream locations," otherwise the legally-required independent evaluation is "impossible." ECF 235 at 15 & n.25.

Similarly, the Motion only raised concerns of whether certain springs were measured at their orifice. ECF 207 at 5 ("Piteau (1) measured some springs at their orifice as opposed to point of maximum flow"). The Reply now makes new arguments regarding SP-048, a spring objectively not measured at its orifice and not falling under BRL's original criticism, and SP-035, a spring that was not even mentioned in the Motion, in an effort to support BRL's contention that the extra-record evidence is needed to demonstrate that Piteau did not follow the Level 2 Stevens Protocols. BRL's new arguments should be stricken because of the prejudice created by depriving Lithium Nevada the opportunity to respond. *See Tovar v. U.S.*

2

*Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) (striking portions of reply brief that presented new information).

## II. ARGUMENT

BRL's two new arguments raised for the first time in the Reply should be struck or, Lithium Nevada should be granted leave to file a sur-reply to briefly address them.[1] BRL's Motion argued that "[i]ndependent evaluation entails … analyzing baseline data *submitted* by the project proponent or consultant." ECF 207 at 14 (emphasis added). BRL's argument in the Motion was that the proffered extra-record evidence somehow proved that BLM did not conduct any such analysis because Mr. Cluff stated he did not directly communicate with BLM. On Reply BRL now contends that it is exclusively "concerned with [] BLM's failure to *independently visit spring and stream locations* to determine whether Piteau's measurements accurately depicted baseline conditions," which BRL now argues is "impossible" unless BLM visited the springs to "groundtruth[]" the data. ECF 235 at 15 & n.25. Because BRL has raised this new argument for the first time in its Reply, Lithium Nevada would be prejudiced if denied the opportunity to respond. BRL's Reply argues that BLM is legally required to physically re-evaluate the springs itself. Lithium Nevada would argue this is not required under regulation or applicable caselaw as it would explicitly require BLM to "redo" Piteau's data collection. Notably, the proffered extra-record testimony does not address this new argument—whether or not BLM re-visited the springs Piteau measured is not mentioned at all in the extra-record transcripts. Thus, in addition to being a new argument, it does not even appear to advance BRL's objective in bringing the Motion.

Similarly, BRL's new arguments disputing Piteau's measurements at SP-048 and SP-035 are incorrect and also do not support inclusion of the proffered transcripts. BRL did not

---

[1] BRL's new argument that BLM must independently re-visit all springs and streams to have "independently evaluate[d] the information [Piteau] submitted," 40 C.F.R. § 1506.5(a) (2020) (emphasis added), has no basis in regulation or caselaw. "NEPA permit[s] the BLM to require an applicant to participate in the NEPA process by providing environmental information to the agency," with "[t]he intent … that 'acceptable work not be redone, but that it be verified by the agency.'" S. Fork Band v. U.S. DOI, No. 3:08-CV-00616-LRH-RAM, 2010 U.S. Dist. LEXIS 88510, at *12 (D. Nev. Aug. 25, 2010) (quoting 40 C.F.R. § 1506.5(a)).

3

cite either SP-048 or SP-035 in its Motion. But BRL now quibbles with the *exact spot* Piteau should have chosen to measure SP-048's downstream flow. Lithium Nevada did cite SP-048 in its response to BRL's argument that Piteau should have measured springs downstream from the orifice as an example of BLM doing just that. But on Reply, rather than address Lithium Nevada's response, BRL presents an entirely new argument and contends that the SP-048 downstream measurement should have been from "a [specific] gaining spring reach," or a culvert beneath the road. ECF 235 at 13–14; TPEIS-0076 at AR-008510. This is a new argument that Piteau's measurements *downstream*, properly following the Stevens Protocols's recommendation that BRL cited, are also somehow deficient. Lithium Nevada would argue that Piteau is entitled to make its assessment based on its expertise, and can measure where it determines there would be "gaining flow," TPEIS-0076 at AR-008510 (Q1 2018), or the representative "maximum surface discharge." TPEIS-0642 at AR-060709. BRL provides no explanation for its bald statement that Piteau's SP-048 measurement, taken "not [at] … the source but rather some distance downstream" as the Stevens Protocols recommended, *id.*, constitutes a new "violat[ion] [of] the Stevens Protocols." ECF 235 at 14.

Finally, while BRL's Motion did not challenge Piteau's measurements at SP-035, on Reply BRL contends, for the first time, that Piteau incorrectly measured SP-035 as having "zero flow," which Lithium Nevada did not have the opportunity to address because BRL did not raise in the Motion. ECF 235 at 13. Lithium Nevada would argue that this measurement accurately reflected Piteau's photographed observations, and the record evidence that BRL cites does not show otherwise. TPEIS-0076, Q2 2018 App. A at p.15. In BRL's Motion, it only challenged those measurements taken at the orifice of SP-047. ECF 207 at 5, 8. BRL cannot now bring in new arguments on Reply claiming that where Piteau appeared to follow the Stevens Protocols' flow measurement suggestion, that Piteau was committing *a new and different measurement* error downstream for SP-048 and point to SP-035 as a *new example* of a spring measured at its orifice incorrectly. ECF 235 at 13. And neither contention supports BRL's Motion for extra-record evidence, because the record fully answers both charges. TPEIS-0076 at AR-008510 (explaining that Piteau measured SP-048 in Q1 2018 downstream

4

from the orifice where there was "good channel conditions to measure flow"); TPEIS-0713 at AR-067619–20 (explaining that SP-035 "was categorized separately" from the area BRL's expert claimed would have resulted in higher flow and reiterated that "[n]o surface flow was observed discharging from [SP-035]"). Ultimately, BRL's proffered exhibits simply reinforce Piteau's measurements and are unnecessary to the AR. ECF 208-2 at 318 (Mr. Cluff: "Where we defined SP 35, there wasn't a point of discharge. There was standing water in this vegetated area and we sampled it there."). By raising these new arguments in the reply, BRL unfairly deprives Lithium Nevada of a reasonable opportunity to respond to them. Accordingly, the new arguments should be struck or, leave to file a brief sur-reply granted.

## V. CONCLUSION

BRL's Motion argued that a sentence in the proffered transcript on Mr. Cluff's lack of knowledge of BLM's process for providing oversight evinced proof that BLM did not "independently evaluate" Piteau's work. After receiving copious evidence in opposition that detailed BLM's review of Piteau's data and reports, BRL raised new arguments in the Reply: now BLM can only have exercised oversight if it "groundtruth[ed]" Piteau's data. ECF 235 at 15 n.25. But the proffered extra-record evidence BRL offers is irrelevant to this new argument, as BRL did not ask Mr. Cluff whether BLM re-visited the springs. *See generally* ECF 208, Exs. 1 & 2. Furthermore, BRL's attempt to point to new spring measurements on Reply as evidence that Piteau did not follow the Stevens Protocols should not be allowed, as there are clear responses to these charges in the record that Lithium Nevada would assert in response.

For the foregoing reasons, Lithium Nevada's respectfully requests that the Court strike BRL's new arguments raised for the first time in its Reply in ECF 235 at 13 line 4 to 14 line 2 and ECF 235 at 15 lines 5–20. *Tovar*, 3 F.3d at 1273 n. 3; *see also Martin v. Hermiston Sch. Dist. 8R*, 499 F. Supp. 3d 813, 827 (D. Or. 2020) (declining to review a declaration "because Defendants submitted it for the first time in their reply, could have filed it with their motion, and Plaintiffs did not have a chance to respond."). In the alternative, if the arguments are not struck, Lithium Nevada requests leave to file a sur-reply, to respond to the new information and arguments BRL raised for the first time in the Reply.

5

Dated: June 10, 2022.

/s/ *Laura K. Granier*
Laura K. Granier (SBN 7357)
Jessica L. Freitas (SBN 16079)
HOLLAND & HART LLP
5441 Kietzke Lane, 2nd Floor
Reno, Nevada 89511

*Attorneys for Defendant-Intervenor Lithium Nevada Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2022, I filed the foregoing using the United States District Court CM/ECF, which caused all counsel of record to be served electronically.

/s/ *Laura K. Granier*
Laura K. Granier (SBN 7357)

17744492_v1