O. KENT MAHER (Nev. Bar No. 316)
kent@winnemuccalaw.com
PO Box 130
33 W Fourth Street
Winnemucca, Nevada 89446
Ph: (775) 623-5277
Fax: (775) 623-2468

*Local Counsel for Plaintiffs*

DOMINIC M. CAROLLO (Or. Bar. No. 093057)
*Pro Hac Vice*
dcarollo@carollolegal.com
Carollo Law Group LLC
Mail:   P.O. Box 2456
        Roseburg, OR 97470
Office: 2315 Old Highway 99 South
        Roseburg, OR 97471
Ph: (541) 957-5900
Fax: (541) 957-5923

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **BARTELL RANCH, LLC,** a Nevada limited liability company and **EDWARD BARTELL**, <br><br>          Plaintiffs <br><br> vs. <br><br><br> **ESTER M. MCCULLOUGH**, Winnemucca District Manager, **BUREAU OF LAND MANAGEMENT**, <br><br>          Defendants, <br><br>  and <br> **LITHIUM NEVADA CORP.**, <br>          Defendant-Intervenor. | Case No.: 3:21-cv-00080-MMD-CLB <br><br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE** |

## I.      Introduction

Lithium Nevada Corporation's ("LNC") tactic in defending this litigation seems to have transformed into meritless attacks on Plaintiffs' filings in an attempt to strip the record of vital information[1] and get in the last word on motions Plaintiffs have filed. LNC has now filed yet another motion to strike, or in the alternative for leave to file a sur-reply (ECF 248).[2] This motion targets Plaintiffs' reply brief in support of their motion for extra-record evidence (ECF 207). This motion, like LNC's motion to strike most of the Bartell Declaration, is entirely devoid of factual and legal support. Therefore, the Court should give it short shrift and summarily deny it.

## II.      Argument

On April 5, 2022, the Bartell Plaintiffs filed a motion for extra-record evidence, seeking to have the Court admit two transcript excerpts from the Nevada Department of Water Resources' hearing on LNC's water right transfer applications. ECF 207. These transcripts contained testimony from Mr. Tyler Cluff, the lead hydrogeologist in charge of the water resources analysis for the Thacker Pass Mine, detailing how LNC's contractor Piteau Associates conducted the seep and spring survey for the Thacker Pass Mine. As Federal Defendant Bureau of Land Management ("BLM") explained in its cross-motion for summary judgment, "Lithium Nevada hired the contractor, Piteau Associates, to complete several water quality and quantity impact assessment

---

[1] For instance, on May 20 LNC filed a motion to strike nearly the entirety of Mr. Bartell's standing declaration. ECF 226. LNC's reasoning in that motion to strike was that only the first twelve paragraphs of Mr. Bartell's declaration pertained to standing. This was clearly erroneous and borderline frivolous because LNC's motion rested on either a fundamental misunderstanding of the most-basic Article III standing requirements and/or a fundamental misunderstanding of Ninth Circuit law concerning the use of declarations to establish standing in cases reviewed pursuant to the Administrative Procedures Act.

[2] Federal Defendant the Bureau of Land Management ("BLM") has not joined this motion, nor did BLM join LNC's prior motion to strike the declaration of Edward Bartell (ECF 226). Similarly, BLM did not join LNC's motion to strike portions of the declarations supporting standing for environmental plaintiffs (ECF 243)—a motion which substantially mirrors LNC's motion to strike the declaration of Edward Bartell.

Page **1– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

reports…These reports…established baselines by identifying and measuring the water resources in the Project area and modeled the potential impact of the Project to those resources." ECF 238 at 16. "Piteau Associates surveyed the Project area to collect baseline data of ground water, seeps, and springs. This recently collected data, in conjunction with existing information provided by the Nevada Department of Water Resources, formed the baseline for the Project analysis." ECF 238 at 19.

LNC and BLM filed responses in opposition to Plaintiffs' motion for extra-record evidence. Plaintiffs thereafter filed a joint reply in support of their motion for extra-record evidence, which was responsive to both LNC and BLM's response briefs. Now, LNC has filed a motion to strike portions of this reply brief, or, alternatively, for leave to file a sur-reply, because, as LNC states, "[Plaintiffs] assert[] entirely new arguments." ECF 248 at 2.

Motions to strike and motions for leave to file a sur-reply are generally disfavored. *Flynn v. Love*, No. 319CV00239MMDCLB, 2020 WL 5607652, at *1 (D. Nev. Sept. 18, 2020) ("motions to **strike** are 'heavily **disfavored**' because 'they are often used as delaying tactics, and because of the limited importance of pleadings in federal practice', and because they propose 'a drastic remedy.'") (citations omitted) (emphasis in original); *Cordova Carballo v. Barr*, No. 220CV02196APGBNW, 2021 WL 3009100, at *2 (D. Nev. July 15, 2021), *report and recommendation adopted sub nom. Sandor Anival Cordova Carballo v. Barr*, No. 220CV02196APGBNW, 2021 WL 4047450 (D. Nev. Sept. 3, 2021) ("Pleadings have limited importance in federal practice, so motions to strike are generally disfavored. *Cortina v. Goya Foods*, Inc., 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (citation omitted)). In determining whether to strike, the Court views the targeted pleading in light most favorable to the pleader. *Grano v. Sodexo Mgmt., Inc.*, 2020 WL 7074905, at *7 (S.D. Cal. Dec. 3, 2020).") (emphasis added); *Avery*

Page **2**–  **PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

*v. Barsky*, No. 3:12-CV-00652-MMD, 2013 WL 1663612, at *2 (D. Nev. Apr. 17, 2013) ("sur-replies 'are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter.'") (citation omitted); *Int'l Inst. of Mgmt. v. Org. for Econ. Cooperation & Dev.*, No. 218CV1748JCMGWF, 2019 WL 1299347, at *1 (D. Nev. Mar. 21, 2019). Furthermore, the party seeking a sur-reply has the burden of showing that "the reply filed by the moving party raised new arguments that were not included in the original motion." *Toxco, Inc. v. Chu*, 801 F. Supp. 2d 1, 5 (D.D.C. 2011) (citation omitted). Because motions to strike and sur-replies are heavily disfavored, because LNC has failed to demonstrate that Plaintiffs' reply raised new arguments or evidence, and because Plaintiffs' reply in fact did not raise new arguments or evidence, LNC's motion to strike/for leave to file a sur-reply should be denied.

## A. LNC's Assertions.

LNC's motion complains of three purported instances where Plaintiffs allegedly raised new arguments in Plaintiffs' reply in support of their motion for extra-record evidence. First, LNC complains that Plaintiffs argued for the first time that BLM was required to visit springs and streams to independently evaluate Piteau's spring and seep data. Second, LNC asserts that Plaintiffs improperly argued that SP-048 is an example of Piteau failing to abide by the Stevens Protocols for flow measurements. Third, LNC argues that Plaintiffs improperly addressed Piteau failing to abide by the Stevens Protocols for flow measurements at SP-035.

Each of LNC's assertions are entirely meritless for numerous reasons. First, LNC's motion glaringly omits *any reference* to BLM's response to Plaintiffs' motion for extra-record evidence. In fact, it appears that LNC is either unaware, forgot, or is ignoring the fact that Plaintiffs' reply brief was responsive not just to LNC's response, *but also to BLM's response*. Second, LNC mischaracterizes Plaintiffs' arguments to make it appear that they are "new" arguments when, in

**Page 3– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

fact, they were merely clarifications of arguments stated in Plaintiffs' motion or responsive to arguments made by both LNC and BLM. LNC curiously argues that Plaintiffs are unable to respond to issues raised in LNC and BLM's response briefs—an unsupportable proposition. For the foregoing reasons LNC's motion to strike/for leave to file a sur-reply should be denied.

### 1.  BLM's Duty to Independently Evaluate Springs.

LNC alleges that Plaintiffs' reply brief raised a new argument asserting that BLM must physically re-evaluate springs to meet the agency's duty to independently evaluate the data proffered by Piteau Associates. LNC argues:

> BRL's Motion argued that "[i]ndependent evaluation entails … analyzing baseline data *submitted* by the project proponent or consultant." ECF 207 at 14 (emphasis added). BRL's argument in the Motion was that the proffered extra-record evidence somehow proved that BLM did not conduct any such analysis because Mr. Cluff stated he did not directly communicate with BLM. On Reply BRL now contends that it is exclusively "concerned with [] BLM's failure to *independently visit spring and stream locations* to determine whether Piteau's measurements accurately depicted baseline conditions," which BRL now argues is "impossible" unless BLM visited the springs to "groundtruth[]" the data. ECF 235 at 15 & n.25.

ECF 248 at 3. LNC blatantly mischaracterizes Plaintiffs' motion, ignores the contents of their response and BLM's response, and further mischaracterizes Plaintiffs' reply brief.

Plaintiffs' motion asserts that the Court should admit the excerpts from the Nevada Department of Water Resources hearing on LNC's water rights applications, in part, because they evidence BLM's failure to independently evaluate Piteau's spring surveys. Plaintiffs' motion states:

> Piteau's errors in collecting the water resources baseline and failure to follow the Stevens Protocol (despite stating in the FEIS that this protocol was followed) places great importance on BLM's independent evaluation, or lack thereof, of Piteau's data and analysis…. Independent evaluation entails independently reviewing comment responses, participating in public meetings, investigating communications between the project proponent and NEPA contractor, editing NEPA documents, and analyzing baseline data submitted by the project proponent

or consultant…. Exhibit 1 demonstrates to the Court that BLM failed to comply with 40 CFR 1506.5—a relevant factor to the BLM's NEPA analysis…. Exhibit 2 shows that Piteau failed to record the location of spring measurements, failed to record springs at their point of maximum flow, knowingly trespassed to collect spring flow data, failed to return intellectual property taken without permission from Plaintiff Bartell Ranch, and more. *See* n. 3, *supra*. *However, this all may have been avoided if BLM had independently evaluated Piteau's data and analysis, revealing Piteau's failure to abide by the Stevens Protocols and the erroneous spring and seep measurements*. Unfortunately, because the BLM did not independently evaluate Piteau's work product (as admitted in Exhibit 1), the errors which Mr. Cluff admitted in Exhibit 2 influenced the integrity and accuracy of BLM's NEPA analysis.

ECF 207 at 13-17 (emphasis added).

LNC is correct to the extent they allege that Plaintiffs' motion for extra-record evidence did not outrightly assert that BLM had a legal obligation to visit springs to independently evaluate Piteau's data.[3] Plaintiffs' motion asserted that BLM could have discovered Piteau's failures to follow certain Stevens Protocols, such as the protocol requiring recordation of spring measurements at the point of maximum flow, if BLM independently evaluated Piteau's data and analysis. Plaintiffs' motion even quotes TPEIS-1411, in which a BLM employee states "[m]ore time to review the baselines and *to see the sites in the field* would have been helpful[,]" in support of Plaintiffs' argument that BLM did not satisfy its duty to independently evaluate Piteau's data (emphasis added). Thus, Plaintiffs' motion clearly and directly asserted that BLM's duty to independently evaluate Piteau's data was neglected because BLM did not visit spring locations (TPEIS-1411) and that BLM could have discovered Piteau's errors if BLM independently evaluated Piteau's data—an evaluation which could obviously require visiting spring locations to see if Piteau measured springs in the correct location.

---

[3] Plaintiffs' reply brief did not make this assertion either, which will be discussed below.

Page **5**–  **PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

LNC and BLM's responses to Plaintiffs' motion attempt to refute BLM's duty to independently evaluate Piteau's baseline data. LNC focuses on BLM's evaluation of Piteau's *analysis* of the impacts of the Thacker Pass Mine without ultimately addressing BLM's duty to actually evaluate Piteau's baseline *data*.[4] BLM's response similarly conflates BLM's evaluation of Piteau's *analysis* with BLM's duty to independently evaluate Piteau's *data*. BLM argues: "Bartell offers no authority for the proposition that, in overseeing a contractor's work, BLM must independently verify every piece of data; that BLM evaluated and approved the proposed work plan, as well as the reports and models prepared from the data collected under it, suffices."[5] ECF 224 at 16.

Because BLM and LNC both mischaracterized the degree of BLM's oversite and conflated BLM's evaluation of Piteau's reports and analysis with BLM's duty to evaluate Piteau's data, Plaintiffs recognized a need to further explain in their reply brief that the extra-record evidence offered pertained to BLM's duty to independently evaluate Piteau's *baseline data*. Therefore, Plaintiffs explained: "The lack of independent evaluation Plaintiffs are concerned with does not relate to Piteau's model or analysis of the modelled impact. What Plaintiffs are concerned with is BLM's failure to independently visit spring and stream locations to determine whether Piteau's *measurements* accurately depicted baseline conditions—a factor BLM was required to consider in

---

[4] There is a vital distinction between Piteau's *analysis* and Piteau's *data* which LNC fails to recognize. If the baseline data is incorrect, Piteau's analysis cannot accurately estimate the impact of the mine on the baseline conditions in Thacker Pass. The extent to which BLM may have evaluated Piteau's analysis is irrelevant if the baseline is incorrect and was not itself independently evaluated.

[5] With this statement BLM largely concedes that they did not independently evaluate Piteau's baseline data. Instead, BLM evaluated Piteau's proposed work plan *and the reports and models prepared from the data collected under the work plan*. What BLM did not do, however, was evaluate the data itself.

Page **6– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

the NEPA process."[6] ECF 235 at 20. Plaintiffs reply goes on to explain: "it is impossible to know whether *data* is accurate without ground truthing. Plaintiffs pointed out errors in Piteau's data at the earliest stage of NEPA (the scoping process). TPEIS-0138 AR-018766. Still BLM failed to ground truth data, blindly assuming Piteau's data to be accurate."

Plaintiffs' reply brief is squarely within the scope of their motion, and explains to the Court how BLM and LNC both ignore BLM's duty to independently evaluate Piteau's baseline data by instead focusing on BLM's evaluation of Piteau's analysis. "When arguments raised for the first time in reply fall within the scope of the matters the opposing party raised in opposition, and the reply does not expand the scope of the issues presented, leave to file a sur-reply will rarely be appropriate." *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 188 (D.D.C. 2012) (simplified) (quotations omitted). A sur-reply is inappropriate when a reply merely "expands on previously-made arguments[.]" *Baptist Mem'l Hosp. v. Sebelius*, 765 F. Supp. 2d 20, 31 (D.D.C. 2011), *aff'd sub nom. Baptist Mem'l Hosp., Inc. v. Sebelius*, No. 11-5112, 2012 WL 1859132 (D.C. Cir. May 14, 2012); *see also United States v. Shadoan*, No. 121CV00560TWPMJD, 2021 WL 5281093, at

---

[6] LNC misinterprets Plaintiffs' reply to state that BLM's failure to visit springs and streams was *itself* a factor the Court must consider. However, what Plaintiffs' Reply actually states is that BLM's failure to visit springs bears on their duty to independently evaluate data and ensure an accurate baseline—factors the Court must consider. LNC still asserts that this is a new "legal" argument. LNC is incorrect. Plaintiffs did not assert that BLM has a general legal obligation to visit every spring survey location. "Whether an agency has independently evaluated an EIS is a question of fact, to be determined on a case-by-case basis." *Sierra Club v. Marsh*, 714 F. Supp. 539, 557 (D. Me.), amended, 744 F. Supp. 352 (D. Me. 1989), *aff'd*, 976 F.2d 763 (1st Cir. 1992) (quotations omitted) (quoting *Citizens for Balanced Environment & Transportation, Inc. v. Secretary of Transportation*, 515 F.Supp. 151, 158 (D.Conn.), *aff'd*, 650 F.2d 455 (2d Cir.1981). Instead, Plaintiffs asserted that, in this case, for BLM to sufficiently evaluate Piteau's baseline to a degree that would have revealed Piteau's errors (as asserted in Plaintiffs' motion, ECF 207 at 13-17)—something BLM did not do as evidenced by TPEIS-1411 (also cited in Plaintiffs' motion)—BLM should have at least visited *some* spring locations. Because BLM did not do so BLM did not independently evaluate Piteau's baseline data. Ultimately, it is not material for the Court to determine precisely *how* BLM should have verified the accuracy of Piteau's data because, here, it is virtually undisputed that BLM did virtually *nothing* to verify accuracy.

Page **7– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

*3 (S.D. Ind. Nov. 12, 2021) ("*An 'expanded argument' is not the same thing as a new one* and is not grounds for leave to file a surreply.") (emphasis added). The degree of the expansion, however, is the critical inquiry. For instance, where a reply brief greatly expands on conclusory sentences in the opening brief, a sur-reply may still be proper. *See Wilson v. Cruz*, No. 2:12-CV-00051-LDG, 2013 WL 5947766, at *1 (D. Nev. Nov. 4, 2013). However, where a reply brief simply articulates arguments raised in the initial brief differently while depending on the same legal and factual foundation, a sur-reply is inappropriate. *See Great Am. Ins. Co. v. Berl*, No. CV 17-03767 SJO, 2017 WL 8180627, at *2 (C.D. Cal. Oct. 23, 2017) ("Although the Defendants' Motions may not have articulated the arguments in the exact same way as in the Replies, the underlying legal and factual arguments are the same."); *Overpeck v. FedEx Corp.*, No. 18-CV-07553-PJH, 2021 WL 4846928, at *1 (N.D. Cal. Sept. 14, 2021) ("Plaintiffs' opening class certification brief argued that 'it is standard practice for both [package and delivery] and linehaul drivers to stay 'on duty' for more than 5 consecutive hours,' and their reply similarly argues that 'the drivers are continuously on duty throughout their shifts and therefore whatever 'breaks' they manage to take are in violation of the 'off duty' requirement for meal and rest periods.' … This is not a new argument presented for the first time in reply."); *Lexington Ins. Co. v. Swanson*, No. C05-1614MJP, 2007 WL 1585099, at *5 (W.D. Wash. May 23, 2007), *clarified on denial of reconsideration*, No. C05-1614MJP, 2007 WL 1725184 (W.D. Wash. June 12, 2007) ("The argument and authority raised by Swanson in her reply relate to prejudice resulting from Lexington's control of the defense. Swanson addressed the issues of prejudice and control of the defense in her original motion for summary judgment.").

The five sentences LNC appears to be concerned with in Plaintiffs' reply brief are neither new arguments nor great expansions on arguments raised in their motion. Instead, Plaintiffs' reply brief articulates differently the same arguments made in their motion. For instance, in their motion

Plaintiffs assert that BLM could have discovered the errors in the baseline data had BLM independently evaluated the data, and cites TPEIS-1411 for the assertion that BLM did not independently evaluate Piteau's data, stating "BLM admits spring measurements 'appeared' to have been collected in the wrong locations and '[m]ore time to review the baselines and to see the sites in the field would have been helpful.'"  Meanwhile, in Plaintiffs' reply, Plaintiffs explain that their motion is concerned with BLM's failure to verify the accuracy of Piteau's data, including by visiting spring locations, not BLM's failure to independently evaluate Piteau's reports and analysis. This is merely a re-articulation of the same argument brought in the motion—that BLM (and BLM's contractors) failed to independently evaluate Piteau's baseline data because BLM accepted the data without taking any actions to actually evaluate the adequacy or accuracy of the data, as evidenced by the extra-record evidence and TPEIS-1411 in the record. That BLM and LNC *missed or ignored Plaintiffs' argument* by not addressing BLM's failure to evaluate baseline data, instead arguing that BLM's evaluation of Piteau's "proposed work plan, as well as the reports and models prepared from the data collected" (ECF 224 at 16) sufficed, was nothing more than a "litigation gamble." *See United States v. Baroid Corp.*, 346 F. Supp. 2d 138, 144 (D.D.C. 2004) ("This was Anchor's opportunity to make its case regarding the separate agreements. That Anchor failed to put forth its best case in its opposition is not grounds for permitting a sur-reply…. Anchor 'took a litigation gamble,' … by not fully addressing the separate agreements in its opposition brief, and it lost. Anchor's motion for leave to file a sur-reply must be denied.") (citation omitted). That LNC may now be regretting its litigation strategy decision is insufficient grounds for a sur-reply or motion to strike. Rather, it renders LNC's instant motion meritless.  LNC's motion to strike/for leave to file a sur-reply on this ground should be denied.

**Page 9–  PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

## 2.  Plaintiffs' Reply Addresses LNC's Argument Regarding SP-048.

In an extraordinarily-puzzling move LNC asserts that Plaintiffs' discussion of SP-048 in their reply brief is an improper attempt to make new arguments for the first time on reply, despite the fact that it was LNC that raised SP-048. LNC argues:

> Lithium Nevada did cite SP-048 in its response to BRL's argument that Piteau should have measured springs downstream from the orifice as an example of BLM doing just that. But on Reply, rather than address Lithium Nevada's response, BRL presents an entirely new argument and contends that the SP-048 downstream measurement should have been from 'a [specific] gaining spring reach,' or a culvert beneath the road."[7]

ECF 248 at 4. Given that LNC admits to raising the issue of SP-048 in their own response, and further admits that Plaintiffs' reply refutes LNC's argument relating to SP-048, the Court should deny LNC's motion to strike/motion for leave to file a sur-reply.

Plaintiffs' motion did not mention SP-048. However, Plaintiffs' motion explained "the Stevens Protocol require spring measurements to be taken at point of maximum discharge" and thereafter quoted the extra-record evidence, which stated: "[Piteau] attempted to collect flow measurements as well as water quality samples as close to the orifice of the spring as possible. If it is a gaining reach… there would be additional flow upwelling further down the reach." ECF 207 at 8. LNC's response brief attempts to misdirect the Court and mischaracterize Plaintiffs' argument. LNC's response asserts "Piteau clearly measured certain springs by their 'gaining

---

[7] LNC badly misconstrues Plaintiffs' argument for purposes of its motion to strike or leave to file sur-reply. Plaintiffs' Reply did *not* assert that SP-048 should have been measured from "a [specific] gaining spring reach, or a culvert beneath the road."  Instead, and addressed infra, Plaintiffs asserted what they always have: that the Stevens Protocols require springs to be measured at their point of maximum discharge. For SP-048, there happens to be evidence in the record that Piteau failed to do just that, because a downstream measurement of the spring demonstrated higher flows than the spring reach where Piteau took their baseline survey. The Court should not be persuaded by LNC's attempt to misconstrue Plaintiffs' argument and put words into Plaintiffs' mouth.

Page **10– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

flow,'" suggesting that measuring springs by their gaining flow complies with the Stevens Protocols, and cites SP-048 as an example of Piteau measuring springs by their gaining flow.

LNC's arguments ignore the crux of Plaintiffs' argument: that the Stevens Protocols assert that springs should be measured at the point of <u>maximum discharge</u>.[8] That springs may be measured within their gaining flow is irrelevant if they nevertheless are still not measured at their point of maximum discharge. LNC's response brief referenced Piteau's measurement of SP-048 to argue that Piteau satisfied the Stevens Protocols for flow measurements because Piteau measured SP-048 "downstream of the orifice[.]" ECF 216 at 14. In doing so, LNC ignored a critical part of Piteau's measurement of SP-048—that Piteau may have measured SP-048 downstream of the orifice *but admittedly did not measure SP-048 at the point of maximum discharge*. Plaintiffs' reply brief refutes LNC's arguments and reference to SP-048 by pointing out that SP-048 is, in fact, another example of Piteau's failure to follow the Stevens Protocols—not an example where Piteau followed the protocols, as LNC asserts it was.

LNC appears to now be regretting its decision to reference SP-048, seeking to either strike this portion of Plaintiffs' reply brief or, alternatively, get leave to file a sur-reply to address the SP-048 issue. Either of these forms of relief would be clearly erroneous.

As discussed *supra*, a motion to strike or a motion for leave to file a sur-reply should be denied when the reply does "not expand the scope of the issues presented or raise any matters for the first time, but merely addressed issues raised in the [defendants'] opposition." *Hisp. Affs.*

---

[8] LNC's motion to strike/motion for leave to file sur-reply further mischaracterizes Plaintiffs' argument. In their motion LNC asserts that the argument in Plaintiffs' motion was "whether certain springs were measured at their orifice." ECF 248 at 2. But that was never Plaintiffs' argument. Instead, Plaintiffs' argument was always whether springs were measured at the point of *maximum discharge* (regardless of whether that is at the orifice or some point downstream of the orifice), because *that* is what the Stevens Protocols deem necessary.

Page **11– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

*Project v. Perez*, 206 F. Supp. 3d 348, 358 (D.D.C.), *on reconsideration in part*, 319 F.R.D. 3 (D.D.C. 2016), *and aff'd sub nom. Hisp. Affs. Project v. Acosta*, 901 F.3d 378 (D.C. Cir. 2018); *see also Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 154 (D.D.C. 2015); *Lexington Ins. Co. v. Swanson*, No. C05-1614MJP, 2007 WL 1585099, at *5 (W.D. Wash. May 23, 2007), *clarified on denial of reconsideration*, No. C05-1614MJP, 2007 WL 1725184 (W.D. Wash. June 12, 2007). To the extent which arguments may "mischaracterize and/or misconstrue" points made in a response brief, courts are "more than capable of ascertaining the merits of the parties['] respective positions on its own." *Crummey v. Soc. Sec. Admin.*, 794 F. Supp. 2d 46, 63 (D.D.C. 2011), *aff'd*, No. 11-5231, 2012 WL 556317 (D.C. Cir. Feb. 6, 2012).[9] Even a new declaration which responds to a matter raised in a response may be admitted on reply. *See Bakst v. Cmty. Mem'l Health Sys., Inc.*, No. CV0908241MMMFFMX, 2011 WL 13214303, at *15 (C.D. Cal. Jan. 31, 2011).

In *Zkey Invs., LLC v. Facebook Inc.*, the court found it proper for the defendant to raise in its reply a new figure because the figure rebutted and contradicted an argument in the plaintiff's response brief. 225 F. Supp. 3d 1147, 1158 (C.D. Cal. 2016), *judgment entered*, No. CV 16-00782-RSWL-KS, 2016 WL 7049061 (C.D. Cal. Dec. 2, 2016), and *aff'd*, 708 F. App'x 681 (Fed. Cir. 2018). This case is similar. Quite clearly, LNC attempted to refute Plaintiffs' argument that Piteau failed to follow the Stevens Protocols for flow measurements by referencing SP-048 as an example of where Piteau purportedly followed the Stevens Protocols for flow measurements. Plaintiffs' reply then refuted LNC's argument by pointing out that SP-048 is, in fact, yet another instance

---

[9] Plaintiffs reply brief does not mischaracterize or misconstrue LNC's argument regarding SP-048. LNC's pending motion, however, is more akin to an allegation that Plaintiffs misconstrued LNC's argument concerning SP-048 than an allegation that Plaintiffs wrongly raised the SP-048 issue for the first time on reply. Therefore, LNC's motion should be denied.

Page **12– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

where Piteau failed to follow the Stevens Protocols. *See* ECF 235 at 18 ("SP-048, which LNC asserts is an instance where Piteau did abide by the Stevens Protocols, is yet *another* example of Piteau failing to measure springs at the point of maximum discharge."). While LNC's reliance on SP-048 clearly resulted in a backfire for LNC, that is not grounds for a motion to strike, nor a sur-reply. Because Plaintiffs' references to SP-048 in their reply brief were responsive to arguments made in LNC's response brief, LNC's motion to strike/for leave to file a sur-reply should be denied.

### 3. References to SP-035 Were Implied in Plaintiffs' Motion and Responsive to BLM's and LNC's Response Brief.

Similar to LNC's arguments concerning SP-048, LNC argues that portions of Plaintiffs' reply brief should be stricken, or leave to file a sur-reply should be allowed, because Plaintiffs' reply brief addressed Piteau's mismeasurement of SP-035. LNC's motion should be denied because Plaintiffs' motion implicitly referenced SP-035, BLM recognized as much and addressed Piteau's mismeasurement of SP-035, LNC also addressed Piteau's mismeasurement of SP-035, and Plaintiffs' reply brief was responsive to both BLM and LNC's response briefs.

Plaintiffs' motion for extra-record evidence asserts "Exhibit 2 is necessary to show that Piteau's baseline data was collected in violation of survey protocols and that Piteau mismeasured certain springs and seeps." ECF 207 at 8. Although Exhibit 2 contains testimony concerning two springs (SP-047 and SP-035) which Piteau did not measure at the point of maximum discharge, Plaintiffs' motion only discussed one of the two springs—SP-047. Still, Plaintiffs' motion implicitly argued that Piteau mismeasured SP-035, asserting that Exhibit 2 demonstrated that "Piteau mismeasured certain springs" (plural). ECF 207 at 8; *see also Fireman's Fund Ins. Co. v. Sloan Valve Co.*, No. 2:10-CV-01816-MMD, 2012 WL 4962957, at *2 (D. Nev. Oct. 16, 2012)

Page **13– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

(Partially denying sur-reply because "with the exception of Mr. Jahrling's affidavit, all other exhibits are portions of documents previously submitted in various filings. The fact that two parts comprise the Flush Valve is displayed through various other exhibits including those attached to Plaintiff's own filings. Further, the fact that the diaphragm assembly was the cause of the leak is established by Plaintiff's own expert's report.").

In point of fact, BLM recognized that Exhibit 2 addressed Piteau's mismeasurement of both SP-047 and SP-035, and that Plaintiffs' motion concerned both springs, and therefore stated: "Cluff likewise explained that Indian Springs (SP 035), which was a 'vegetated circular area' and lacked a "point of discharge" was measured in an area with "a broad upwelling . . .."" ECF 224 at 13. Thus, BLM argued that SP-035 *was not* an instance where Piteau mismeasured springs in violation of the Stevens Protocols.

LNC too recognized that Exhibit 2 contained testimony regarding where SP-035 was measured. LNC stated: "Piteau's measurements accurately recorded their observations, and BRL simply disagrees with those observations. *See* Carollo Decl. Ex. 2 at 318 (BRL Counsel accuses Mr. Cluff of failing to 'follow the Stevens protocol' **by not measuring SP-035 "at the point of maximum discharge**…." ECF 216 at 19 (emphasis added).[10]

Because BLM and LNC addressed SP-035 in their response briefs, Plaintiffs addressed BLM and LNC's argument regarding this spring in their reply brief. *See* ECF 235 at 18 ("Plaintiffs, as well as another LNC consultant, observed flow within SP-035 and Piteau has photographed

---

[10] LNC is asking for leave to respond to Plaintiff's arguments on SP-035 forgetting they *already* made the very argument they are seeking to make now. *Compare* ECF 248 at 5 (Mr. Cluff: "Where we defined SP 35, there wasn't a point of discharge. There was standing water in this vegetated area and we sampled it there.") *with* ECF 216 at 19 ("but Mr. Cluff explains that when he measured SP-035 'there wasn't a point of discharge. There was standing water'"). LNC is improperly asking for leave to re-hash the SP-035 arguments they already made, or to strike Plaintiffs' properly-argued reply to LNC and BLM's arguments.

Page **14– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

standing water within the spring and classify SP-035 as 'perennial.'… Mr. Cluff asserted that SP-035 flow was captured in a Crowley Creek gauging station—an incorrect statement since SP-035 does not flow into Crowley Creek."). These arguments were in *direct* response to BLM and LNC's arguments that SP-035 was not indicative of Piteau's failure to follow the Stevens Protocols. Therefore, a motion to strike Plaintiffs' arguments in their reply brief regarding mismeasurement of SP-035 would be improper.

Curiously, LNC's motion does not even mention that both them *and* BLM addressed SP-035 in their response briefs. LNC argues: "while BRL's Motion did not challenge Piteau's measurements at SP-035, on Reply BRL contends, for the first time, that Piteau incorrectly measured SP-035 as having 'zero flow,' which Lithium Nevada did not have the opportunity to address because BRL did not raise in the Motion." ECF 248 at 5. But LNC does not mention that both LNC *and* BLM addressed the SP-035 issue.[11] In fact, LNC's entire motion to strike/for leave to file a sur-reply *never once* cites BLM's response brief or recognizes that Plaintiffs' reply brief was a joint reply. LNC is either choosing to ignore this fact or has forgotten it altogether. Ultimately, the extent to which Plaintiffs' specifically addressed SP-035 in their motion for extra-record evidence is irrelevant. Both BLM and LNC addressed it in their response briefs, and Plaintiffs' reply "merely addressed issues raised in the [defendants'] opposition." *Hisp. Affs. Project*, 206 F. Supp. 3d at 358. Because Plaintiffs' arguments on reply addressing Piteau's mismeasurement of SP-035 were responsive to BLM and LNC's response briefs LNC's pending motion should be denied.

---

[11] LNC cannot, in good faith, assert that they "did not have the opportunity" to address the SP-035 issue when, in fact, LNC and BLM *both* addressed the SP-035 issue in their response briefs.

Page **15– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

**B.  LNC's Arguments are Unsupported.**

LNC cites only four cases as support for its motion.[12] Each of these cases is distinguishable. LNC first cites *Shafer v. Moore L. Grp.*, No. 320CV00525MMDCLB, 2021 WL 4186683, at *1 (D. Nev. Sept. 14, 2021). There, this Court found that it was improper for the defendants to assert a new argument in their reply brief. *Id.* In that case the defendant's motion contained a single argument that Defendant had express permission to contact plaintiffs. *Id.* In defendant's reply defendants forwarded a new argument that serving court documents does not constitute a "communication." *Id.* The court granted a sur-reply because the plaintiffs did not have an opportunity to respond to the newly-offered arguments. *Id. Shafer* is distinguishable. As Plaintiffs have already discussed, here Plaintiffs' reply brief simply rearticulated points already made in their motion for extra-record evidence or was directly responsive to LNC and BLM's response briefs. No new arguments were made. Instead, the brief addressed issues "within the scope of the matters the opposing party raised in opposition" or within the scope of issues presented in the motion. *See Banner Health*, 905 F. Supp. 2d at 188. Therefore, no sur-reply or motion to strike is appropriate.

LNC next cites *Pacquiao v. Mayweather*, No. 2:09-CV-2448-LRH-RJJ, 2010 WL 3271961, at *1 (D. Nev. Aug. 13, 2010). There, this Court granted a motion to strike exhibits attached to defendant's reply brief. *Id.* The Court found the exhibits were relevant to the pending motion, available when the motion was filed, but yet not included with the motion. *Id.* Therefore, the Court determined it was improper for the exhibits to be included for the first time on reply. *Id.* Here, Plaintiffs brought forth no evidence that is not already in the record. Where plaintiffs

---

[12] LNC cites a fifth case, *S. Fork Band v. U.S. DOI*, No. 3:08-CV-00616-LRH-RAM, 2010 U.S. Dist. LEXIS 88510, at *12 (D. Nev. Aug. 25, 2010), to dispute the *merits* of Plaintiffs' reply brief.

Page **16– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

addressed SP-048 and SP-035 it was in direct response to arguments made by BLM and LNC.[13] Finding this to be improper would upset well-founded caselaw permitting reply briefs to respond to arguments made by the opposing party. The Court should avoid doing just this, and find that Plaintiffs' reply brief was permissibly responsive to LNC and BLM's response briefs.

LNC also cites *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 (9th Cir. 1993). There, the court granted a motion to strike portions of a reply brief because the petitioner's brief presented evidence which was outside the record on appeal, not included in the motion, and not responsive to the respondent's brief. *Id. Tovar* is factually distinguishable and therefore does not support LNC's motion.

Finally, LNC cites *Martin for C.M. v. Hermiston Sch. Dist. 8R*, 499 F. Supp. 3d 813, 827 (D. Or. 2020). There, the defendants filed a motion with their reply in support of summary judgment that attested to the accuracy of a video. *Id*. The court declined to consider the declaration because it was new evidence submitted for the first time on reply. *Id*. Here, neither the discussion of SP-048 or SP-035 was evidence submitted for the first time on reply, as either (or both in the case of SP-035) LNC or BLM referenced this evidence during their response briefs.[14] Therefore, unlike in *Martin*, here Plaintiffs did not reference evidence for the first time in their reply brief. Ultimately, none of the cases LNC cites support LNC's motion.

---

[13] LNC does not allege that Plaintiffs raised new evidence at all, but instead allege that Plaintiffs raised new arguments. To the extent any of the "issues" LNC identified could be characterized as "evidentiary" issues, those would be limited to LNC's arguments concerning SP-048 and SP-035. Moreover, because the "issues" LNC identified are all related to new "arguments," the cases LNC cites as support which address new evidence as opposed to new arguments are simply factually distinguishable.

[14] *See* n. 10, *supra*.

Page **17**– **PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

### III.    Conclusion

LNC's motion to strike/for leave to file a sur-reply to Plaintiffs' reply in support of Plaintiffs' motion for extra-record evidence is a meritless attempt to get the last word on an increasingly-important motion.[15] LNC's arguments in support of their motion ignore the arguments made in Plaintiffs' motion for extra-record evidence as well as LNC and BLM's own arguments made in response to Plaintiffs' motion. Because Plaintiffs' reply brief addressed issues within the scope of the matters the opposing party raised in opposition or within the scope of issues presented in the motion, Plaintiffs' reply was proper on all accounts. LNC's motion must therefore be denied.

Respectfully submitted this 24th day of June, 2022.

/s/ Dominic M. Carollo
DOMINIC M. CAROLLO (Or. Bar. No. 093057)        O. Kent MAHER (Nev. Bar No. 316)
*Pro Hac Vice*                                                                    kent@winnemuccalaw.com
dcarollo@carollolegal.com                                           PO Box 130
Carollo Law Group LLC                                             33 W Fourth Street
Mail:  P.O. Box 2456                                                   Winnemucca, Nevada 89446
            Roseburg, OR 97470                                     Ph: (775) 623-527
Office: 2315 Old Highway 99 South                         *Of Attorneys for Plaintiffs*
            Roseburg, OR 97471
Ph: (541) 957-5900
*Of Attorneys for Plaintiffs*

---

[15] LNC even attempts to get the last word by raising merits issues within their motion to strike/for leave to file a sur-reply. Plaintiffs do not wish to follow LNC's footsteps by filing a motion to strike of their own. However, Plaintiffs believe it is incredibly improper that LNC brought issues pertaining to the merits of Plaintiffs' motion for extra-record evidence into LNC's motion to strike/for leave to file a sur-reply. Therefore, the Court should not consider the contents of LNC's motion to strike when evaluating Plaintiffs' motion for extra record evidence.

Page **18– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**

1

2

## <u>CERTIFICATE OF SERVICE</u>

3

4

    I hereby certify that on June 24th 2022 I filed the foregoing **PLAINTIFFS'**

5

**RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY**

6

7

**OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS'**

8

**MOTION FOR EXTRA-RECORD EVIDENCE** using the United States District Court

9

CM/ECF, which caused all counsel of record to be served electronically.

10

                      /s/Dominic Carollo

11

                      DOMINIC M. CAROLLO (Or. Bar No. 093057)

12

                      [*Pro Hac Vice*]

13

                      *Attorneys for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Page **19– PLAINTIFFS' RESPONSE IN OPPOSITION TO LNC'S MOTION FOR LEAVE TO FILE SUR-REPLY OR MOTION TO STRIKE PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR EXTRA-RECORD EVIDENCE**