1  Christopher Mixson (NV Bar#10685)
   KEMP JONES, LLP
2  3800 Howard Hughes Parkway, Suite 1700
   Las Vegas, Nevada 89169
3  702-385-6000
4  c.mixson@kempjones.com

5  Attorney for Plaintiffs

6  Roger Flynn, (CO Bar#21078) *Pro Hac Vice*
7  Jeffrey C. Parsons (CO Bar#30210), *Pro Hac Vice*
   WESTERN MINING ACTION PROJECT
8  P.O. Box 349, 440 Main St., #2
   Lyons, CO 80540
9  (303) 823-5738
10 wmap@igc.org

11 Attorneys for Great Basin Resource Watch, Basin and Range Watch, and Wildlands Defense

12 Talasi B. Brooks (Idaho Bar #9712), *Pro Hac Vice*
13 WESTERN WATERSHEDS PROJECT
   P.O. Box 2863
14 Boise ID 83714
   (208) 336-9077
15 tbrooks@westernwatersheds.org

16
17 Attorney for Western Watersheds Project

18                   UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
19

20 BARTELL RANCH LLC, et al.,            )   Case No.: 3:21-cv-80-MMD-CLB
                                          )   (**LEAD CASE**)
21          Plaintiffs,                   )
                                          )
22                                        )   ENVIRONMENTAL PLAINTIFFS'
                                          )   RESPONSE TO LNC'S
23 ESTER M. MCCULLOUGH, et al.,           )   MOTION TO STRIKE PORTIONS
                                          )   OF PLAINTIFFS' STANDING
24          Defendants,                   )   DECLARATIONS
                                          )
25                                        )
   LITHIUM NEVADA CORPORATION,            )
26                                        )
                                          )
27          Intervenor-Defendant.         )
   _____)
28

                                                                                   1

WESTERN WATERSHEDS PROJECT, et al.,

        Plaintiffs,

RENO SPARKS INDIAN COLONY, et al.,

        Intervenor-Plaintiff,

BURNS PAIUTE TRIBE,

        Intervenor-Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,

        Defendants,

LITHIUM NEVADA CORPORATION,

        Intervenor-Defendant.

Case No.: 3:21-cv-103-MMD-CLB
(**CONSOLIDATED CASE**)

## **INTRODUCTION**

LNC, but not the Federal Defendants, moves to strike portions of the Environmental Plaintiffs' declarations that were submitted to establish Plaintiffs' standing. LNC moves to strike "Paragraphs 13 and 14 of Exhibit A (Declaration of John Hadder, ECF 202-1), Paragraphs 13, 18, 19, and 28 of Exhibit B (Declaration of Kelly Fuller, ECF 202-2), Paragraphs 31 and 32 of Exhibit C (Declaration of Katie Fite, ECF 202-3), and Paragraphs 11 and 17 of Exhibit D (Declaration of Kevin Emmerich, ECF 202-4)." LNC Motion 3 (ECF No. 243). LNC wrongly asserts that Plaintiffs are using these paragraphs to improperly submit extra-record evidence or make legal arguments. LNC Motion 3.

But LNC misses the point of these declarations and the challenged paragraphs – that they are properly submitted to establish Plaintiffs' standing – which Plaintiffs must do at the summary judgment phase of the case. It should be noted that neither LNC nor BLM contest Plaintiffs'

standing.[1] LNC moves to strike only certain paragraphs of Plaintiffs' standing declarations.

Under controlling precedent, declarations to establish standing are not limited to the administrative record. Also, the declarations' statements regarding the failure of BLM to adequately involve the public in the NEPA process and prepare a legally-compliant Final EIS are not "legal arguments" as claimed by LNC. Rather, they are proper assertions of harm to Plaintiffs and their members, especially when coupled with the on-the-ground injury to Plaintiffs' members' concrete interests caused by BLM's approval of the Thacker Pass Project, based on that inadequate FEIS.

Notably, none of the Plaintiffs' standing declarations, including the challenged paragraphs, were relied upon in Plaintiffs' Summary Judgment Motion on the merits. The only citation to the declarations occurs in the one section necessarily included to establish Plaintiffs' standing and this Court's jurisdiction in this case. *See* WWP SJ Mot. 5, ECF No. 202.

## I.     The Challenged Declarations Are Not Improper Extra-Record Evidence.

A.     <u>Standing Declarations Are Not Limited to the Administrative Record.</u>

LNC ignores controlling law when it claims that statements or assertions contained in standing declarations must be limited to the administrative record and are thus improper extra-record evidence. LNC Motion 4-6. Plaintiffs are required to submit evidence to establish this Court's jurisdiction, and that evidence is not limited to the administrative record. *See, e.g.,* <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992) (Plaintiffs must establish standing by affidavits or other evidence at summary judgment stage). A plaintiff must have "standing" to bring a case in federal court because Article III of the U.S. Constitution limits the courts' jurisdiction to "[c]ases"

---

[1] The only mention of standing by LNC or BLM occurs in a footnote in BLM's summary judgment response brief/cross-motion, where BLM attempts to portray this case as WWP's "collateral attack on the validity of the mining claims, which WWP lacks standing to assert because it falls outside the Mining Law's zone of interests. *See Havasupai Tribe v. Provencio*, 906 F.3d 1155, 116 (9th Cir. 2018)." BLM Resp. 17, n. 41 (ECF No. 237). But that is not what this case is about. Rather, WWP challenges BLM's violations of FLPMA, based on the agency's erroneous and unsupported assumption that LNC had rights under the Mining Law to permanently occupy the waste dump lands, and thus, that compliance with the RMPs was not required. BLM's assertion is also misleading, as the Ninth Circuit in <u>Havasupai</u> held that conservation group plaintiffs **did have standing** to challenge the agency's determination of claim validity, because that determination was part of the agency's determination that the mining claimant had a "valid existing right" under FLPMA and the Mining Law that exempted the mining from the withdrawal of the area. 906 F.3d at 1166-67.

and "[c]ontroversies." <u>Dep't of Com. v. N.Y.</u>, 139 S. Ct. 2551, 2565 (2019).

To establish standing, plaintiffs must show (1) an "injury in fact," (2) caused by defendants' actions, and (3) the "likelihood that the requested relief will redress the alleged injury." <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 103 (1998) (citations and quotation marks omitted). To demonstrate standing for a procedural claim – such as the violations of NEPA asserted here – a plaintiff "must show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." <u>W. Watersheds Project v. Kraayenbrink</u>, 632 F.3d 472, 485 (9th Cir. 2011). For an environmental interest to be "concrete," there must be a "geographic nexus between the individual asserting the claim and the location suffering an environmental impact." <u>Id.</u> For plaintiffs with concrete interests who assert a procedural injury, the redressability and immediacy elements of standing are relaxed. *See* <u>Lujan</u>, 504 U.S. at 560-61 n. 7, n. 8.

Nevertheless, the plaintiff "bears the burden of establishing" standing. <u>Id.</u> The evidence necessary to show injury to plaintiffs, as well as causation and redressability, often is not part of the agency's administrative record, especially because they are based on a plaintiff's interests in the environment. *See* <u>Friends of the Earth v. Laidlaw Env't. Services</u>, 528 U.S. 167, 183 (2000) ("[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity."). As a result, courts allow plaintiffs to submit declarations and other extra-record materials to establish their standing. *See, e.g.,* <u>Lujan</u>, 504 U.S. at 561 (in response to a summary judgment motion, a plaintiff must set forth "by affidavit or other evidence" specific facts supporting standing).

The Ninth Circuit has previously declined to strike standing declarations on grounds that they were supposedly extra-record evidence. In <u>Northwest Environmental Defense Center v. Bonneville Power Admin.</u>, 117 F.3d 1520 (9th Cir. 1997), the Ninth Circuit rejected the argument raised by LNC. The petitioners had submitted four affidavits in an attempt to establish their standing before the Ninth Circuit. <u>Id.</u> at 1527.  The defendants objected to the affidavits and "moved to strike [them] on the grounds that petitioners inappropriately attempted to supplement

4

the administrative record and expand the scope of this litigation." Id. The court handily denied the motion to strike, noting that before it could even reach the merits of petitioners' claims, it needed to be sure that the petitioners had standing to challenge the agency decisions. Id. at 1527-28. *See also* Sierra Club v. E.P.A., 292 F.3d 895, 898 (D.C. Cir. 2002)("We consider the standing issues, mindful of our independent obligation to be sure of our jurisdiction."); Sierra Club v. U.S. EPA, 762 F.3d 971, 976 n. 4 (9th Cir. 2014). Although Northwest Environmental Defense Center involved declarations submitted with a direct challenge to agency action in the appeals court, and not at the summary judgment phase, the Ninth Circuit's holding works the same in both types of cases.

District Courts in the Ninth Circuit have held the same. "A plaintiff may submit declarations and other extra-record materials to prove standing." Montana Wildlife Federation v. Bernhardt, 2021 WL4865257, *1 (D. Mont. 2021)(citing Northwest Environmental Defense Center). "In an action under the APA, the court generally may review only the administrative record, 5 U.S.C. §706(2)(F), but it may consider extra-record evidence that allows plaintiffs to establish standing." Central Sierra Environmental Resource Center v. U.S. Forest Service, 916 F. Supp. 2d 1078, 1086 (E.D. Cal. 2013)(*citing* Northwest Environmental Defense Center and Didrickson v. U.S. Dept. of Interior, 982 F.2d 1332, 1340 (9th Cir. 1992)). *See also* Env'l Protection Information Ctr. v. Blackwell, 389 F. Supp. 2d 1174, 1221 (N.D. Cal. 2004)(denying motion to strike declarations, that while seemingly offering expert testimony, were limited to establishing standing).

Courts in other jurisdictions agree:

> While a court's review of the merits in an APA case is generally limited to the administrative record, a court may consider extra-record materials for purposes of determining whether it has jurisdiction over the matter before it. *See* Sierra Club v. Yeutter, 911 F.2d 1405, 1421 (10th Cir. 1990)(holding that district court did not abuse its discretion in considering extra-record evidence in order to determine whether it had jurisdiction); Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.,117 F.3d 1520, 1528 (9th Cir. 1997)(considering extra-record evidence 'not in order to supplement the administrative record on the merits, but to determine whether [the court has] jurisdiction').

Colorado Environmental Coalition v. Office of Legacy Management, 819 F. Supp. 2d 1193, 1202 (D. Colo. 2011). As another court recently held, relying on decisions from the Supreme Court,

Ninth Circuit, and D.C. Circuit:

> [T]he record rule does not apply to non-merit issues such as standing. This type of evidence does not run afoul of the record rule because courts consider it "not in order to supplement the administrative record on the merits, but rather to determine [their own] jurisdiction." *Nw. Envir. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1528 (9th Cir. 1997). Courts routinely rely on extra-record evidence to support standing in APA cases. *See, e.g., Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-54 (2010) (relying on declarations to find that plaintiffs had Article III standing in an APA case); *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 507 (D.C. Cir. 2010) (same).

Texas v. Biden, 2021 WL4552547, *2 (N.D. Texas, 2021).

Thus, LNC's argument that factual assertions supporting Plaintiffs' standing are improper extra-record evidence is unfounded. Extra-record evidence is permitted to prove standing and Plaintiffs have not sought to use the declarations for any purpose other than establishing their standing. The Court need only consider the declarations if standing is questioned, and not when resolving the merits of Plaintiffs' claims on the merits.

B.   **The Challenged Portions of the Declarations Were Properly Submitted to Establish Standing.**

LNC moves to strike "Paragraphs 13 and 14 of Exhibit A (Declaration of John Hadder, ECF 202-1), Paragraphs 13, 18, 19, and 28 of Exhibit B (Declaration of Kelly Fuller, ECF 202-2), Paragraphs 31 and 32 of Exhibit C (Declaration of Katie Fite, ECF 202-3), and Paragraphs 11 and 17 of Exhibit D (Declaration of Kevin Emmerich, ECF 202-4)." LNC Motion 3 (ECF No. 243).

Although LNC asserts in the beginning of its Motion that all of the listed portions of all of the declarations "should be stricken for two main reasons" (extra-record evidence and legal arguments), it later limits its argument on the asserted "extra-record" claim to just paragraphs 18, 19, 20, and 28 of Exhibit B (Fuller Decl.). LNC Motion 5. Because LNC has not provided any argument to strike the other paragraph in Exhibit B contested by LNC (paragraph 13), as well as all of the other listed paragraphs in the other declarations on this ground, LNC has conceded that these paragraphs should not be stricken based on LNC's "extra-record" claim.

Regarding paragraphs 18, 19, 20, and 28 of the Fuller Declaration, LNC relies on the legally-erroneous position that plaintiff declarations cannot include extra-record evidence that is used to establish standing. LNC Motion 5-6. Yet as detailed above, that position is contrary to

controlling precedent. Thus, these paragraphs cannot be stricken on that ground.

Indeed, these paragraphs, especially paragraphs 18 and 20, detail the injury caused to Ms. Fuller from BLM's inadequate and rushed NEPA process. Paragraph 18 points out how BLM's NEPA process for other mines in the region involved much longer public comment and review times, highlighting the truncated nature of BLM's NEPA review of the Thacker Pass Project in comparison. ECF No. 202-2, ¶18. Similarly, paragraph 20 states that "as a result of this rushed process, the Thacker Pass lithium mine's FEIS overlooks numerous issues—including by writing off issues that WWP raised in comments. In particular, the FEIS relies on the assumption that BLM cannot direct the mine development in ways necessary to protect wildlife." Id. ¶20. These statements evidence the injury to Ms. Fuller's rights to participate in the NEPA process, and Ms. Fuller may attest to these things based on her personal knowledge. See Fed. R. Civ. P. 56(c)(4)(declaration must be made on personal knowledge); ECF No. 202-2, ¶1 (attesting statements made on personal knowledge).

In addition, Ms. Fuller may properly attest to injuries from the rushed NEPA process, especially because she has established concrete interests in the area by virtue of her use and enjoyment and specific plans to return. See ECF No. 202-2, ¶¶23-31(demonstrating interests). LNC objects to statements Ms. Fuller made regarding some aspects of harms to her concrete interests from the Project approval in ¶28: "Because [the Project Area] is some miles removed from towns and U.S. Highway 95, it feels safe to camp alone there, which is always a concern for me as a woman. Once construction of the Thacker Pass Mine starts, I will no longer feel safe camping alone there." Id. ¶28.

LNC labels this "speculation." LNC Motion 5. Yet, LNC also objects to Ms. Fuller's substantiation of that purported "speculation" based on her knowledge of research showing that "increases in crime and violence against women when outside workers come into rural areas to construct resource extraction projects such as mines and oilfields." Fuller Decl. ¶28. LNC calls this improper "extra-record" evidence, but the statement is based on Ms. Fuller's personal knowledge of her research and she has sworn under penalty of perjury that she could truthfully testify to this and other statements in her declaration if called as a witness. ECF

No. 202-2, ¶1; *see* Fed. R. Civ. P. 56(c)(4)(declaration must be made on personal knowledge). LNC cannot simply demand that the Court disbelieve a declarant's sworn statement, which is, itself, evidence. *See* Lujan, 504 U.S. at 561 (evidence of standing set forth by affidavit or other evidence "will be taken as true" for purposes of a summary judgment motion).

Regarding paragraph 19 of the Fuller Declaration, there too, Ms. Fuller discusses her injury from BLM's rushed process of preparing the FEIS – the failure to allow adequate time for public comment, especially in light of the COVID-19 pandemic. Although LNC is correct that Plaintiffs' Summary Judgment Motion does not assert claims on behalf of the affected Tribes and indigenous communities, the failure of BLM to allow adequate time for public participation, including by Native Tribes, supports Ms. Fuller's statements about injury to her interests from the "unusually short" comment period conducted during an "unusually chaotic and difficult time for much of the public." ECF No. 202-2, ¶18. Indeed, LNC does not dispute that the record contains no comments from the Tribes. LNC Motion 5. Nevertheless, Plaintiffs ask only that the Court consider Fuller ¶19 as it supports Plaintiffs' injuries from BLM's rushed procedures surrounding the Project approval. To the extent the Court finds that paragraph irrelevant to those injuries, Plaintiffs do not object if the Court strikes it.

Thus, LNC's Motion to Strike paragraphs 18, 20, and 28 from the Fuller Declaration, based on an unfounded "extra-record" argument should be rejected. The Court should strike paragraph 19 of the Fuller Declaration only if it finds that paragraph not relevant to Plaintiffs' procedural injuries from BLM's rushed public process surrounding the Project approval.

## II.   The Challenged Declarations Are Properly Submitted to Prove Injury to Plaintiffs' Uses and Interests in the Lands, Waters and Wildlife Affected by the Project, As Well As Plaintiffs' Rights Under NEPA to Fully Participate in an Adequate NEPA Process.

LNC argues that the challenged paragraphs should be stricken because "they contain improper legal arguments and conclusions." LNC Motion 6. But that is not what these paragraphs do. First, they are statements of Plaintiffs' members that establish injury-in-fact to their uses and interests in the lands and resources that will be adversely affected, and in many cases outright eliminated, by the Project. As noted, Plaintiffs must establish standing at the summary judgment phase of the case and thus these statements are needed to establish this Court's jurisdiction.

Second, the challenged paragraphs help establish the procedural injury to Plaintiffs' members resulting from BLM's rushed and inadequate NEPA process, which, because it is asserted by Plaintiffs and their members with concrete interests in the public lands and resources that will be adversely affected by BLM's actions at Thacker Pass, is cognizable under Supreme Court and Ninth Circuit precedent. As noted above, none of the declarations were cited or relied upon by Plaintiffs on the merits, and are solely meant to establish standing in this case.

A.      Paragraph 13 of the Fuller Declaration Is Properly Submitted to Establish Standing.

LNC's attack on the challenged paragraphs are a mish-mash of short and generalized assertions, faulting Plaintiffs for discussing how the Project will adversely affect sage-grouse (paragraph 13 of the Fuller Declaration, Exhibit B), while challenging the other declarations based on Plaintiffs' assertions that they were injured by BLM's failure to conduct an adequate review under NEPA and FLPMA. LNC is wrong on both counts as Plaintiffs' declarants properly attested to harms to their concrete interests from BLM's substantive and procedural legal violations. This section will focus on LNC's challenge to paragraph 13 of the Fuller Declaration, as it regards the Project's impacts to Ms. Fuller's enjoyment of, and concern for, the imperiled population of sage-grouse that will be affected by the Project. The following section will rebut LNC's challenges to the paragraphs in the other declarations.

LNC does not challenge that Plaintiffs will suffer injury-in-fact from the Project, that BLM's approval of the Project based on the FEIS will cause that injury, or that a favorable ruling from this Court vacating the Record of Decision and FEIS will redress these injuries. Rather, LNC argues, in one brief sentence, that paragraph 13 of the Fuller Declaration "incorrectly contends that the Project is incompatible with applicable sage grouse protections." LNC Motion 7.

Paragraph 13, like several other paragraphs, which LNC has not challenged (*see* Fuller paragraphs 26, 27, 31, 32, and 33), discusses Ms. Fuller's concerns, based on her personal knowledge and experience, regarding impacts to habitat for sage-grouse and other wildlife species from open pit mining and the Thacker Pass Project in particular.

> Mining devastates the sagebrush steppe ecosystem, which is notoriously difficult to restore successfully. Mining's effects on sage-grouse are not well-studied, but recent research shows sage-grouse exhibit avoidance behavior and increased mortality risk in mined areas. This

> makes sense, since mining begins by removing sagebrush and other vegetation that sage-grouse depend upon to support their lifecycle and involves extensive human occupancy and disturbance. In addition, because sagebrush habitats are so difficult to restore, especially from extensive disturbances such as those caused by mining, sage-grouse habitat loss from mining is virtually permanent, displacing sage-grouse from former habitats for generations. Because locatable mineral development is deemed incompatible with sage-grouse, BLM and the Forest Service originally proposed to withdraw certain high value sage-grouse habitats from locatable mineral entry.  And expert scientists recommend excluding "priority habitats" for sage-grouse like most of Thacker Pass from mining.

Fuller Decl. ¶13. The fact that LNC disagrees with Ms. Fuller's belief that the Project will cause devastating impacts to sage-grouse habitat (the focus of paragraph 13) does not mean that a Plaintiff cannot include such statements in a standing declaration.

LNC is basically arguing that because it believes that Ms. Fuller is "incorrect" in her concerns about the Project's impacts to sage-grouse, then those concerns cannot be included in a declaration to establish standing. But those concerns have long been recognized as supporting cognizable injury-in-fact. "[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." Lujan, 504 U.S. at 562-63. So are "aesthetic and environmental well-being." Sierra Club v. Morton, 405 U.S. 727, 734-35 (1972). Thus, paragraph 13, which details Ms. Fuller's concerns with the Project's impacts to sage-grouse, whether LNC agrees with it or not, is properly before this Court to help support Plaintiffs' standing.

B.   The Hadder, Fite, and Emmerich Declarations All Properly Assert Injury to Plaintiffs' Rights to Adequate Public and Agency Review Under NEPA.

Similar to its one-sentence challenge to paragraph 13 of the Fuller Declaration, LNC uses one sentence to attack paragraphs 13 and 14 of Exhibit A (Hadder Declaration), less than one sentence to attack paragraphs 31 and 32 of Exhibit C (Fite Declaration), and one sentence to argue against paragraphs 11 and 17 of Exhibit D (Emmerich Declaration). LNC Motion 7. For all of these, LNC asserts that a Plaintiff's standing declaration cannot contain statements attesting to that person's injury to themselves and their organization from an agency's failure to fully involve the public in the NEPA process and to prepare a legally-compliant FEIS. But that is not the law, as it contradicts controlling Supreme Court and Ninth Circuit precedent. It is well established that:

> The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy. Thus, under our case law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.

<u>Lujan</u>, 504 U.S. at 572, n.7. As noted, "[t]o demonstrate standing to bring a procedural claim – such as one alleging a NEPA violation – a plaintiff 'must show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." <u>WildEarth Guardians v. U.S. Dept. of Agriculture</u>, 795 F.3d 1148, 1154 (9th Cir. 2015)(quoting <u>Western Watersheds Project v. Kraayenbrink</u>, 632 F.3d 472, 485 (9th Cir. 2011)).

Plaintiffs have demonstrated they have concrete interests that will be affected by BLM's NEPA violations. This is not a case where Plaintiffs assert injury from an agency's NEPA violations standing alone, as was the case in <u>Summers v. Earth Island Institute</u>, 555 U.S. 488 (2009), where plaintiffs failed to show that their members used the specific lands affected by the challenged logging projects. Rather, as all of the declarations show, and as uncontested by either LNC or BLM, Plaintiffs' members use and enjoy the lands, waters, and wildlife that will be directly and adversely affected, and in many cases, eliminated by, the Project, as approved by BLM's ROD, which relied upon the inadequate FEIS and fast-tracked NEPA process.

All of the challenged paragraphs assert a cognizable injury to Plaintiffs' members' rights to an adequate NEPA process, especially when coupled with the uncontested imminent injury to these members' on-the-ground uses and interests from Project development. Paragraph 13 of Exhibit A (Hadder Decl.) attests to how: "The failure of BLM to prepare an adequate Environmental Impact Statement (EIS) and to fully involve the public, including myself and GBRW members, in the agency's decision-making, adversely affects my and GBRW's members' ability to participate in the NEPA, FLPMA, and other public review processes." ECF No. 202-1, ¶13. Paragraph 14 states that: "BLM failed to adequately involve the public in the agency's review of the Project's impacts to wildlife, cultural/historical, environmental, and other issues, impacts, and alternatives – depriving me and other members of GBRW of our rights to fully participate in the public process under NEPA and federal law." <u>Id.</u> ¶14.

Paragraph 31 of the Fite Declaration similarly attests that: "The failure of BLM to prepare an adequate Environmental Impact Statement (EIS) and to fully involve the public, including myself and WLD's members, in the agency's decision-making, adversely affects my and WLD's members' ability to participate in the NEPA, FLPMA, and other public review processes." ECF No. 202-3, ¶31. Paragraph 32 states that: "BLM failed to adequately involve the public in the agency's review of the Project's impacts to wildlife, environmental, and other issues, impacts, and alternatives – depriving me and other members of WLD of our rights to fully participate in the public process under NEPA and federal law." Id. ¶32.

Mr. Emmerich's Declaration (Exhibit D) similarly declares the injury to his rights caused by BLM's inadequate and truncated NEPA process: "BLM's failure to comply with the public information and review requirements of NEPA regarding the Project and its impacts further injures my rights and interests." ECF No. 202-4, ¶11. "In addition to these immediate, substantive, and irreparable harms to the environment and my uses of the affected lands, the BLM's failure to comply with the public notice, comment, and review requirements of NEPA, has significantly harmed my ability, and the ability of BRW and its members, to fully and adequately participate in the public participation process mandated by these laws. The BLM's approval of the Project, without full compliance with NEPA, irreparably damages my rights to participate in the public process under these laws." ECF No. 202-4, ¶17.

It should be noted that LNC does not challenge Ms. Fuller's Declaration (Exhibit B), as it does for the other three declarations, on the grounds that Ms. Fuller improperly raised "legal arguments" when asserting that BLM violated her rights to participate in an adequate NEPA process. Yet Ms. Fuller similarly attested to BLM's violation of her rights: "Perhaps as a result of this rushed process, the Thacker Pass lithium mine's FEIS overlooks numerous issues—including by writing off issues that WWP raised in comments." ECF No. 202-2, ¶20. "I am harmed, and WWP's members and supporters are harmed, by BLM's perfunctory approach to NEPA analysis for this massive project that will destroy ecological values of these public lands virtually forever." Id. ¶21.

The NEPA procedures Plaintiffs' assert BLM violated at Thacker Pass are designed to protect the concrete interests of Plaintiffs in protecting public lands, water, and wildlife that they use and value. *See* Paragraphs 13 and 14 of Exhibit A (Declaration of John Hadder, ECF 202-1); Paragraphs 13, 18, 19, and 28 of Exhibit B (Declaration of Kelly Fuller, ECF 202-2); Paragraphs 31 and 32 of Exhibit C (Declaration of Katie Fite, ECF 202-3); and Paragraphs 11 and 17 of Exhibit D (Declaration of Kevin Emmerich, ECF 202-4).

NEPA is our "basic national charter for protection of the environment." 40 C.F.R. §1500.1(a). It "prevent[s] or eliminate[s] damage to the environment and biosphere by focusing government and public attention on the environmental effects of proposed agency action." Marsh v. Or. Nat. Res. Council, 490 U.S. 360, 371 (1989). "NEPA establishes 'action-forcing' procedures that require agencies take a 'hard look' at environmental consequences." Center for Bio. Diversity v. Dept. of Interior, 623 F.3d 633, 642 (9th Cir. 2010). An EIS "ensures that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts." Id. "[I]t guarantees that the relevant information will be made available to the larger audience that may also play a role in both the decisionmaking process and the implementation of that decision." Id.

By rushing the process and denying adequate opportunity for public input, BLM impoverished its analysis, defeating the purpose of NEPA. This, in turn, harmed Plaintiffs' interests in participating in the decisionmaking process. Ultimately, it resulted in BLM overlooking numerous issues, including issues raised by WWP in comments, as asserted by Ms. Fuller. Thus, these are not improper "legal arguments," as argued by LNC. They are proper assertions of injury long-recognized by the Supreme Court and Ninth Circuit.

## **CONCLUSION**

Accordingly, LNC's Motion to Strike should be DENIED, with arguably the exception of paragraph 19 of Exhibit B (Fuller Declaration), if this Court finds it is not needed to demonstrate Plaintiffs' standing in this case.

Respectfully submitted this 12th day of July, 2022.

*/s/ Christopher Mixson*

Christopher Mixson (NV Bar#10685)
KEMP JONES, LLP
3800 Howard Hughes Parkway, Suite 1700
Las Vegas, Nevada 89169
702-385-6000
c.mixson@kempjones.com

Attorney for Conservation Group Plaintiffs

*/s/ Roger Flynn*
Roger Flynn, (Colo. Bar #21078)
Jeffrey C. Parsons, (Colo. Bar #30210)
WESTERN MINING ACTION PROJECT
P.O. Box 349, 440 Main St., #2
Lyons, CO 80540
(303) 823-5738
wmap@igc.org

Attorneys for Plaintiffs GBRW, BRW, and WD

*/s/ Talasi Brooks*
Talasi B. Brooks (ISB #9712)
Western Watersheds Project
P.O. Box 2863
Boise ID 83701
(208)336-9077
tbrooks@westernwatersheds.org

Attorney for Plaintiff WWP

Certificate of Service

I, Roger Flynn, certify that I served the foregoing on July 12, 2022, by filing it with this Court's ECF filing system, where all parties are represented.

*/s/ Roger Flynn*

14