O. KENT MAHER (Nev. Bar No. 316)
kent@winnemuccalaw.com
PO Box 130
33 W Fourth Street
Winnemucca, Nevada 89446
Ph: (775) 623-5277
Fax: (775) 623-2468

*Local Counsel for Plaintiffs*

DOMINIC M. CAROLLO (Or. Bar. No. 093057)
*Pro Hac Vice*
dcarollo@carollolegal.com
Carollo Law Group LLC
Mail:   P.O. Box 2456
Roseburg, OR 97470
Office: 2315 Old Highway 99 South
Roseburg, OR 97471
Ph: (541) 957-5900
Fax: (541) 957-5923

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **BARTELL RANCH, LLC,** *et al.*, | Case No.: 3:21-cv-00080-MMD-CLB |
| Plaintiffs, | |
| vs. | **BARTELL PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL** |
| **ESTER M. MCCULLOUGH,** *et al.*, | |
| Defendants, | |
| and | |
| **LITHIUM NEVADA CORP.,** | |
| Defendant-Intervenor. | |

**MOTION**

Plaintiffs Bartell Ranch, LLC and Edward Bartell (collectively, "Plaintiffs") respectively submit this Emergency Motion under Local Rule 7-4 for an Injunction Pending Appeal pursuant to Federal Rule of Civil Procedure 62(d).[1] Plaintiffs move the Court for an injunction of Federal Defendant the Bureau of Land Management's ("BLM") Record of Decision ("ROD") approving the Thacker Pass Mine, and Lithium Nevada Corporation's ("LNC") related imminent physical disturbances associated with the Thacker Pass Mine, while an appeal of the Court's Feb. 6, 2023 and Feb. 7, 2023 orders and judgment is considered by the United States Court of Appeals for the Ninth Circuit.[2] Due to the imminence of the construction and ground disturbance on Thacker Pass, Plaintiffs filed its Notice of Appeal on February 22, 2023 (ECF 288), appealing the Court's judgment dated February 7, 2023 (ECF 280). Plaintiffs respectfully request that the Court enjoin LNC from commencing ground disturbance at Thacker Pass pursuant to BLM's ROD to preserve the *status quo* while Plaintiffs seek review from the Ninth Circuit. In support of this motion, Plaintiffs specifically join in, and incorporate by reference, the Environmental Plaintiffs' emergency motion for injunction pending appeal, ECF 284, and supporting materials.  This motion

---

[1] Pursuant to Local Rule 7-4(a), Plaintiffs attempted to delay the impending ground disturbances relating to the Thacker Pass Mine by conferring with opposing counsel. The Declaration of Dominic Carollo, submitted herewith as "Exhibit 1," describes these unsuccessful conferral efforts. Conferral revealed that LNC planned to begin construction and ground clearing at Thacker Pass as soon as BLM approved the reclamation bond, which could occur at any time. Counsel for LNC, BLM, and Plaintiffs did agree to delay construction until March 6 to allow this Court to consider Plaintiffs' and Environmental Plaintiffs' respective emergency motions.

[2] Construction on Thacker Pass has been described as "imminent," however the parties have agreed to a short delay of construction for this Court's consideration of Plaintiffs' and Environmental Plaintiffs' respective emergency motions. *See* Declaration of Edward Bartell in Support of Bartell Plaintiffs' Emergency Motion for Injunction Pending Appeal ¶ 18 ("Bartell Decl.") (submitted herewith as "Exhibit 2.").

is further supported by the following memorandum of points and authorities, the declaration of Edward Bartell submitted herewith, and the filings of record.

## JURISDICTION

Pursuant to Federal Rule of Civil Procedure 62(d), "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modified, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." The relief Plaintiffs sought in this case was, *inter alia*, to "[enjoin] Defendants from allowing construction to commence on the LNC Mine through ground-clearing, site preparation, or other such actions until such time as Defendants have fully complied with law[.]" ECF 1 at 21. In the Court's opinion and order and judgment (ECF 279 and 280) the Court denied the relief sought by Plaintiffs, and permitted LNC to begin construction and ground clearing on Thacker Pass. Thus, this motion is proper under Rule 62(d). *See Nat. Res. Def. Council v. Sw. Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (the district court has jurisdiction to consider injunction motions under FRCP 62 after appeal is filed).

## MEMORANDUM

### I.   INTRODUCTION

Plaintiffs submit this motion for injunction pending appeal to request the Court to enjoin the Thacker Pass Mine and related disturbances while Plaintiffs appeal to the Ninth Circuit is considered. This Court has already determined that the BLM's approval of the Thacker Pass Mine violates the mining law, consistent with *Ctr. for Biological Diversity v. United States Fish & Wildlife Serv.*, 33 F.4th 1202 (9th Cir. 2022) ("*Rosemont*"). However, the Court nevertheless is allowing the Thacker Pass Mine to proceed while the ROD is being reconsidered on remand, so

that BLM and LNC may attempt to prove that certain of their mining claims are valid. Unfortunately, this ruling allows LNC to proceed with its mine while appeals of the Court's decision are pending before the Ninth Circuit. Plaintiffs therefore request this emergency injunction pending appeal to enjoin imminent environmental damage while the lawfulness of the Thacker Pass Mine is being considered.

## II.    LEGAL STANDARD

A motion for an injunction pending appeal is evaluated under the same four-factor test for preliminary injunction motions. "A court may only grant a stay pending appeal upon a showing that: (1) the petitioner is likely to succeed on the merits of his appeal; (2) irreparable harm will result in the absence of a stay; (3) the balance of equities favors a stay; and (4) a stay is in the public's interest." *In re Ahern Rentals, Inc.*, No. 3:12-CV-0676-LRH-VPC, 2013 WL 273403, at *2 (D. Nev. Jan. 23, 2013) (citing *Winters v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 376 (2008)). "A stay should issue if failing to do so would 'destroy [the plaintiff's] rights to secure meaningful review' on appeal." *NCTA – Internet & Tel. Ass'n v. Frey*, 2020 WL 2529359, at *2 (D. Me. 2020) (*quoting Providence Jour. Co. v. Fed. Bur. of Invest.*, 595 F.2d 889, 890 (1st Cir. 1979)).

## III.   ARGUMENT

### 1.  Likelihood of Success on the Merits.

#### a.  LNC's Invalid Mining Claims Cannot Provide the Surface Estate for Water and Power Transmission Lines.

Plaintiffs herein join and incorporate by reference the arguments contained in Environmental Plaintiffs' emergency motion for injunction pending appeal, ECF 284. Specifically, Plaintiffs incorporate Environmental Plaintiffs' arguments concerning the applicability of *Rosemont*, 33 F.4th 1202 to this proceeding, the process for establishing claim validity, and

Page **3**– BARTELL PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

Environmental Plaintiffs' arguments regarding the Ninth Circuit's remand without vacatur doctrine, and its inapplicability to this proceeding (sections I-III, pages 11-19 of Environmental Plaintiffs' memorandum in support of emergency motion for injunction pending appeal).

Plaintiffs further assert that an injunction of the BLM's ROD is appropriate here given the BLM's reliance on invalid mining claims to approve LNC's occupancy of the land underlying its water and power transmission lines associated with the Thacker Pass Mine. The ultimate holding of *Rosemont* is that "discovery of valuable minerals is essential to the right to any occupancy— temporary or permanent—*beyond the occupancy necessary for exploration*." *Rosemont*, 33 F.4th at 1220 (emphasis added). While in *Rosemont* this holding was specifically applied to mine waste piles, the *Rosemont* opinion does not suggest that the Ninth Circuit intended its holding to be so limited.[3] Rather, *Rosemont* is applicable anytime the Federal Government approves the occupancy of an invalid mining claim(s) as part of a mining project approval. *See id.* (to "create valid rights ... a discovery of mineral is essential." (quoting *Union Oil Co. of Cal. v. Smith*, 249 U.S. 337, 346, 39 S.Ct. 308, 63 L.Ed. 635 (1919)); *id.* (Section 22 of the Mining Law grants two rights: "(1) the right to explore and purchase all valuable mineral deposits in lands belonging to the United States; and (2) the right to occupation and purchase of the lands in which valuable mineral deposits are found." (quoting *Davis v. Nelson*, 329 F.2d 840, 844–45 (9th Cir. 1964)); *id.* ("As soon as exploration on a claim is finished, the right to continue to occupy that claim is contingent on the discovery of valuable minerals, whether or not the occupation will be permanent… A right of occupancy lasts only so long as there are "valuable" minerals on the claim.").

---

[3] Plaintiffs recognize that the Court interprets *Rosemont* differently, and has concluded that *Rosemont* is limited to waste piles, and does not extend to other mine-related occupancy, such as water and power transmission lines. Plaintiffs nevertheless raise this issue again here, for the Ninth Circuit's consideration of the scope of the *Rosemont* decision.

Here, the Court has decided to read *Rosemont* narrowly, stating: "[t]he Court does not read *Rosemont* as extending beyond land a mining project proponent intends to cover with waste rock and mine tailings. Such lands were squarely *Rosemont*'s focus. *Rosemont* does not address production wells, water lines, or power transmission lines." *Bartell Ranch LLC v. McCullough*, No. 321CV00080MMDCLB, 2023 WL 1782343, at *7 (D. Nev. Feb. 6, 2023). However, *Rosemont* does not support such a limited holding, and therefore applies to the other aspects of the Thacker Pass Mine where LNC and BLM are relying on invalid mining claims to provide the requisite "surface estate" for physical occupancy.

In particular, Plaintiffs point the Court to the power and water transmission lines that have been approved pursuant to BLM's ROD.[4] Similar to the tailings stack, LNC's right to occupy the land underlying its water and power transmission lines is derived from LNC's mining claims. *See* TPEIS-0384 AR-045771 ("LNC owns 492 unpatented lode mining claims that provide the necessary surface and subsurface mineral estate for the Project."). Also similar to the tailings stack, the mining claims underlying the planned water and power transmission lines have not been

---

[4] While in this motion Plaintiffs point the Court to the water and power lines specifically, the Court correctly recognized that "Plaintiffs argued *Rosemont* also requires BLM to make a validity determination as to all land required for the Project beyond the mine pit." *Bartell Ranch*, 2023 WL 1782343, at *7; ECF 262 at 48, n. 57 ("With respect to claims *within* the Caldera only the proposed location of the mine pit is within an area of known mineralization. *See* TPEIS-0457 AR-052868. The remainder of the project, even that within the confines of the McDermitt Caldera, does not contain currently known zones of lithium mineralization. *Id*."). Plaintiffs assert that *Rosemont* applies to other project elements beyond the mine pit, waste rock stacks, and tailings stack. Plaintiffs merely focus on the water and power lines here because they have been approved in areas outside the McDermitt Caldera in areas admittedly devoid of mineralization. In doing so Plaintiffs do not waive their broader argument that *Rosemont* applies whenever BLM approves mine-related occupancy on invalid mining claims.

Page **5**– BARTELL PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

deemed valid. Thus, the holding of *Rosemont* extends to BLM's approval of miles-long water and power transmission lines in reliance on LNC's invalid mining claims.[5]

The only factor which distinguishes BLM's approval of the tailings stack in reliance on LNC's invalid claims from BLM's approval of the power and water transmission lines in reliance on LNC's invalid claims is that LNC has already admitted that its mineral claims underlying the power and water transmission lines cannot be proven valid. The record already acknowledges that valuable lithium deposits on Thacker Pass are limited to the McDermitt Caldera. TPEIS-0384 AR-046077 ("[l]ithium mineralization in the Thacker Pass Project is entirely contained within the lacustrine sediments of the McDermitt Caldera."). However, LNC's water and power transmission lines are located, in large part, outside the McDermitt Caldera. *Compare* TPEIS-0384 AR-045701 *with* TPEIS-0384 AR-045706 (demonstrating that the water and power transmission lines approved as part of the Thacker Pass Mine are outside the McDermitt Caldera). Nevertheless, BLM relied upon LNC's invalid claims outside the Caldera to give LNC the "surface estate" necessary to construct its water and power transmission lines. *See* TPEIS-0384 AR-045771.

Extending *Rosemont* to BLM's approval of LNC's power and water transmission lines as part of the Thacker Pass Mine reveals that, like the tailings stack, the power and water transmission lines also cannot be built in reliance on invalid mining claims; i.e., LNC's invalid mining claims cannot provide the surface estate necessary to allow LNC to occupy land with its power and water transmission lines. Here, BLM relied on LNC's invalid mining claims as justification for granting LNC's occupancy of those claims with water and power transmission lines. There are admissions

---

[5] The water and power lines approved as part of the Thacker Pass Mine will stretch for seven miles. TPEIS-0384 AR-045759. These transmission lines will cause 267.7 acres of disturbance—only 30 acres less than the west waste rock storage facility and the east waste rock storage facility *combined*. *See* TPEIS-0384 AR-045797. This is a significant amount of surface disturbance.

Page **6**– BARTELL PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

in the record that there are no valuable minerals within these claims. Therefore here, like in *Rosemont*, BLM's reliance on invalid claims for the approval of surface occupancy is unlawful. Because Plaintiffs have a likelihood of success on these grounds, this factor supports an injunction pending appeal.

   **b.  Water and Power Transmission Lines are Subject to the *Rosemont* Occupancy Test.**

   The Court, in part, rejected Plaintiffs' above argument on summary judgment because "Lithium Nevada's counsel asserted at the Hearing that those [water and power] facilities are covered under separate authorizations." *Bartell Ranch*, 2023 WL 1782343, at \*7. However, notwithstanding counsel's assertions, *the record* indicates that LNC's water and power transmission lines were approved as part of LNC's mining plan of operations, and thus were approved in the <u>same authorization</u> as the tailings stack, which the Court concluded violates *Rosemont*'s occupancy test. *See* TPEIS-0452 AR-052541 ("It is my decision to approve the Plan of Operations NVN-098586")[6]; TPEIS-0384 AR-045759 (mining plan of operations NVN-098586 includes water and power lines in addition to the mine pit, waste rock facilities, processing facilities, etc.); *Bartell Ranch*, 2023 WL 1782343, at \*6 ("the Court finds that under *Rosemont*, BLM was required to make a validity determination as to the waste dump and mine tailings land before issuing the ROD"). What is more, LNC's "492 unpatented lode mining claims that provide the necessary surface and subsurface mineral estate for the Project" provide the surface estate for the tailings stack and water and power transmission lines alike. *See* TPEIS-0384 AR-045771; TPEIS-0384 AR-045502. As a factual matter, then, BLM's approval of water and power

---

[6] The Thacker Pass ROD did contain two authorizations—one for case file NVN-098582 (the North-South Exploration project) and one for case file NVN-098586 (the Thacker Pass Mine project). The water and power transmission lines, as well as the mine pit, processing facilities, and waste rock piles and tailing stack, are included in case file NVN-098586.

transmission lines as part of the Thacker Pass Mine project is not a separate authorization. Rather, it is just one aspect of the same authorization.[7]

There may be a separate question of whether BLM's approval of water and power transmission lines as part of the Thacker Pass Mine project falls under a different BLM regulation and, if so, whether that matters under *Rosemont*. This Court found that the BLM's approval of waste rock dumps and a tailings stack under 43 C.F.R. § 3809 et seq. violated *Rosemont*'s occupancy test. *Bartell Ranch*, 2023 WL 1782343, at *6. During summary judgment briefing, LNC argued that the water and power transmission lines are permissible pursuant to different BLM regulations at 43 C.F.R. § 3715 et seq. The ROD explains that LNC must operate its plan of operations "in accordance with the BLM's regulations at 43 CFR 3809" and that "[i]t is also my determination that the uses and surface occupancy proposed in Plan NVN-098586 meets the conditions specified in the BLM regulations at 43 CFR subpart 3715." TPEIS-0452 AR-052541. Neither the ROD nor the FEIS explain what aspects of the Thacker Pass Mine constitute "surface occupancy," or whether "surface occupancy" approved pursuant to 43 C.F.R. subpart 3715 must also comply with 43 C.F.R. § 3809.

---

[7] There are other authorized projects on Thacker Pass, such as the Kings Valley Clay Mine project and the Kings Valley Lithium Exploration Project. However, Plaintiffs have reviewed these other existing authorizations, and have found that no other authorization approves the construction of LNC's water and power transmission lines. Only the Thacker Pass Mine project, approved in the ROD at TPEIS-0452 AR-052541, authorizes these water and power transmission lines. *See also* TPEIS-0384 AR-045797 (LNC's table of estimated disturbance areas shows that the power lines and water lines are part of the proposed Thacker Pass Mine project, not previous authorizations). Moreover, LNC's water and power lines have not been constructed as of this point. While there is an existing transmission line on Thacker Pass, owned by the local utility company, LNC's proposed transmission lines approved in the ROD are separate and distinct. *See* Declaration of Edward Bartell in Support of Bartell Plaintiffs' Emergency Motion for Injunction Pending Appeal ¶¶ 16-17 ("Bartell Decl."); TPEIS-0384 AR-045700-1.

Page **8**– BARTELL PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

To try and distinguish this case—and in particular BLM's approval of water and power lines as part of the Thacker Pass Mine—from *Rosemont*, LNC's reply brief in support of its motion for summary judgment argues that its water and power lines are permissible occupancy authorized by 43 C.F.R. § 3715.0-5. ECF 271 at 29. BLM's brief, meanwhile, did not rely on 43 C.F.R. § 3715 et seq., and instead strictly relied on 43 C.F.R. § 3809 to argue that BLM's regulations do not require "that Lithium Nevada possessed valid mining claims before approving the Project." ECF 268 at 24.

The District Court rejected BLM and LNC's arguments attempting to distinguish *Rosemont* on the basis of 43 C.F.R. § 3809, holding that 43 C.F.R. § 3809 requires that mining plans of operations must be "[c]onsistent with the mining laws[.]" *Bartell Ranch*, 2023 WL 1782343, at *6 (citing 43 C.F.R. § 3809.420(a)(3)). The Court did not address LNC's arguments regarding 43 C.F.R. § 3715 et seq.

Ultimately, LNC's arguments centered around 43 C.F.R. § 3715 et seq. are nothing more than a red herring. The District Court found that the mining laws, as interpreted by *Rosemont*, applied to plans of operations approved pursuant to 43 C.F.R. § 3809 because 43 C.F.R. § 3809.420(a)(3) requires that such plans must be operated "[c]onsistent with the mining laws[.]" *Bartell Ranch*, 2023 WL 1782343, at *6. Similarly, 43 C.F.R. § 3715.1 explains that any occupancy approved pursuant to 43 C.F.R. § 3715 et seq. must be allowable under the mining laws. Because both 43 C.F.R. § 3809 et seq. and 43 C.F.R. § 3715 et seq. require that the approved plan of operations and occupancy be consistent with the mining laws, the Ninth Circuit's interpretation of the mining laws in *Rosemont* governs. Therefore, *Rosemont*'s holding that "discovery of valuable minerals is essential to the right to any occupancy—temporary or permanent—beyond the occupancy necessary for exploration" naturally extends to occupancy

approved pursuant to 43 C.F.R. § 3715 et seq. LNC's arguments and assertions are foreclosed by *Rosemont*. 33 F.4th at 1220.

In summary, Plaintiffs are likely to succeed on the merits of their argument that BLM's approval of the construction of water and power transmission lines based on LNC's mining claims in an area admittedly devoid of mineralization is unlawful.[8]

## 2. Irreparable Harm Will Result in the Absence of an Injunction.

Plaintiffs have environmental interests in the Thacker Pass Mine which will be irreparably harmed if the mine is not enjoined while the Ninth Circuit considers the legal questions at issue.

"[E]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often . . . irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Amoco Prod. Co. v. Vill. Of Gambell, Alaska*, 480 U.S. 531, 545 (1987); *see also Southeast Alaska Conservation Council v. U.S. Army Corps of Engineers*, 472 F.3d 1097, 1100 (9th Cir. 2006) ("Ongoing harm to the environment constitutes irreparable harm warranting an injunction."). In deserts like those found on Thacker Pass, "once the desert is disturbed, it can never be restored." *Save Our Sonoran v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005).

---

[8] Herein, Plaintiffs focus on their likelihood of success under *Rosemont* and, in incorporating by reference Environmental Plaintiffs' injunction motion, the Court's decision to remand without vacatur. However, Plaintiffs also contend that they are likely to prevail on their NEPA claims and that the Court erred in multiple respects in granting defendants' motion for summary judgment against Plaintiffs' NEPA claim. In particular, but without limitation, Plaintiffs contend that the Court misunderstood Plaintiffs' NEPA claim to be primarily premised on a "battle of experts" between Plaintiffs' experts and BLM and LNC's consultants and erred in finding that this case is distinguishable from *Oregon Nat. Desert Ass'n v. Jewell*, 840 F.3d 562 (9th Cir. 2016). In fact, one of the overarching premises of Plaintiffs' NEPA claims is that BLM and LNC's *own data* is inaccurately reported and represented to the public, and in material respects, in the water resources baseline relied upon in the FEIS and ROD and that this was caused by BLM's failure to independently verify the accuracy of the water resources baseline and ensure the scientific integrity of the same.

There is no question that Plaintiffs have environmental interests in the Thacker Pass desert. *See* ECF 275 at 4 ("Ed Bartell describes various environmental interests in his declaration, and Rancher Plaintiffs' operative complaint also includes various allegations going to environmental harm," which includes harms to sage grouse and threatened Lahontan cutthroat trout"). Unfortunately, with the Court having decided not to vacate BLM's unlawful approval of the Thacker Pass Mine, Plaintiffs' environmental interests are in imminent danger. *See* Bartell Decl. ¶¶ 1-9, 18 (construction on Thacker Pass "is imminent."); *see also* TPEIS-0384 AR 045794 (authorizing LNC's "pre-production waste rock removal and stripping concurrent with process facility construction," which includes removal of all vegetation at the project site); TPEIS-0384 AR 045625 ("The site preparation and construction activities are expected to include a combination of scraping, dozing, grading, compacting, and material transfers…. The pre-production waste rock removal operations would include drilling, blasting, waste hauling, and material transfers."); TPEIS-0384 AR 045738 (LNC's vegetation removal will occur in sage grouse priority habitat).

If LNC is authorized to conduct expansive vegetation removal, excavation, and blasting activities while the Thacker Pass Mine is on review at the Court of Appeals, Plaintiffs' environmental interests will be devastated. *See* Bartell Decl. ¶¶ 9, 12-15. This extends beyond just the area of the mine pit and processing plants, but also to the land wherein LNC plans to construct its water pipeline and power transmission lines. *Id*. ¶¶ 15-22. Unfortunately, LNC's water pipeline and power transmission lines will pass directly through a sage grouse lek, removing vital habitat for the species Plaintiffs care so deeply about. *Id*. ¶¶ 1-9; TPEIS-0384 AR 045737, AR-045701 (depicting the location of a sage grouse lek of "unknown" status, in comparison to LNC's approved water and power transmission lines).

Plaintiffs' enjoyment of Thacker Pass is directly tied to the continued existence of the desert ecosystem, and the wildlife which live within it. Bartell Decl. ¶¶ 1-15. If LNC is allowed to clear this ecosystem, destroying it and the wildlife within it, Plaintiffs' enjoyment of Thacker Pass will be eliminated. *Id.* ¶¶ 18-19; *Save Our Sonoran*, 408 F.3d at 1126 ("once the desert is disturbed, it can never be restored.").

Without an injunction, Plaintiffs will be irreparably harmed by LNC's destruction. Therefore, this factor weighs in favor of an injunction pending appeal.

### 3. The Balance of Equities and Public Interest Favor an Injunction.

Without an injunction, Plaintiffs' enjoyment of Thacker Pass will be forever destroyed. With an injunction, LNC's ability to mine Thacker Pass—something already deemed unlawful by this Court under the current ROD—will be merely delayed. Plaintiffs' permanent and irreparable injuries outweigh the temporary delay LNC will experience if an injunction is issued. *See League of Wilderness Defs. v. Connaughton*, 752 F.3d 755, 765-66 (9th Cir. 2014) ("plaintiffs' irreparable environmental injuries outweigh the temporary delay intervenors face in receiving a part of the economic benefits of the project."). Plaintiffs herein join and incorporate by reference the arguments contained in Environmental Plaintiffs' emergency motion for injunction pending appeal, ECF 284. In particular, Plaintiffs join and incorporate section V and VI of Environmental Plaintiffs' memorandum (pages 23-25). Preserving the status quo in this case is the only way Plaintiffs' environmental interests can be adequately protected while the Ninth Circuit weighs the lawfulness of the Thacker Pass Mine. The impacts this will have on LNC are menial, as an injunction will only temporarily delay LNC's ability to begin operations under BLM's unlawful ROD. Therefore, these factors weigh in favor of an injunction pending appeal.

## IV.    NO MORE THAN A NOMINAL BOND IS APPROPRIATE

Federal Rules of Civil Procedure 65(c) and 62(d) authorize the Court to require a bond in order to obtain an injunction, as the Court deems proper. However, this may be waived or reduced "where requiring security would effectively deny access to judicial review." *Cal. ex rel. Van de Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1325-26 (9th Cir. 1985); *see also Friends of the Earth v. Brinegar*, 518 F.2d 322, 323 (9th Cir. 1975). Here, Plaintiffs cannot post more than a nominal bond in order to obtain an injunction. Bartell Decl. ¶ 22. To require otherwise would be to deny Plaintiffs access to judicial review and meaningful judicial recourse, as Plaintiffs would be unable to post a bond, and LNC would be able to irreparably destroy Plaintiffs' interests.

## V.    CONCLUSION

For the reasons provided herein Plaintiffs respectfully request that this emergency motion for injunction pending appeal be granted.

Respectfully submitted this 22nd day of February, 2023.

/s/ *Dominic M. Carollo*
DOMINIC M. CAROLLO (Or. Bar. No. 093057)
*Pro Hac Vice*
dcarollo@carollolegal.com
Carollo Law Group LLC
Mail: P.O. Box 2456
　　　Roseburg, OR 97470
Office: 2315 Old Highway 99 South
　　　Roseburg, OR 97471
Ph: (541) 957-5900
*Of Attorneys for Plaintiffs*

O. Kent MAHER (Nev. Bar No. 316)
kent@winnemuccalaw.com
PO Box 130
33 W Fourth Street
Winnemucca, Nevada 89446
Ph: (775) 623-527
*Of Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2023 I filed the foregoing **BARTELL PLAINTIFFS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL** using the United States District Court CM/ECF, which caused all counsel of record to be served electronically.

/s/Dominic Carollo
DOMINIC M. CAROLLO (Or. Bar No. 093057)
[*Pro Hac Vice*]

*Attorneys for Plaintiffs*