**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 17 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT; WILDLANDS DEFENSE; GREAT BASIN RESOURCE WATCH; BASIN AND RANGE WATCH,<br><br>        Plaintiffs-Appellants,<br><br>and<br><br>BARTELL RANCH LLC; EDWARD BARTELL,<br><br>        Plaintiffs,<br><br>RENO-SPARKS INDIAN COLONY; BURNS PAIUTE TRIBE; ATSA KOODAKUH WYH NUWU PEOPLE OF RED MOUNTAIN,<br><br>        Intervenor-Plaintiffs,<br><br>v.<br><br>ESTER M. MCCULLOUGH, District Manager; BUREAU OF LAND MANAGEMENT; U.S. DEPARTMENT OF THE INTERIOR, | No.   23-15259<br><br>D.C. Nos.<br>3:21-cv-00080-MMD-CLB<br>3:21-cv-00103-MMD-CLB<br><br>MEMORANDUM[*] |

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

| | |
|---|---|
| Defendants-Appellees,<br><br>LITHIUM NEVADA CORPORATION,<br><br>      Intervenor-Defendant-Appellee. | |
| WESTERN WATERSHEDS PROJECT; WILDLANDS DEFENSE; GREAT BASIN RESOURCE WATCH; BASIN AND RANGE WATCH; BARTELL RANCH LLC; EDWARD BARTELL,<br><br>      Plaintiffs,<br><br>RENO-SPARKS INDIAN COLONY; ATSA KOODAKUH WYH NUWU PEOPLE OF RED MOUNTAIN,<br><br>      Intervenor-Plaintiffs,<br><br>and<br><br>BURNS PAIUTE TRIBE,<br><br>      Intervenor-Plaintiff-Appellant,<br><br> v.<br><br>ESTER M. MCCULLOUGH, District Manager; BUREAU OF LAND MANAGEMENT; U.S. DEPARTMENT OF THE INTERIOR, | No.   23-15261<br><br>D.C. Nos.<br>3:21-cv-00080-MMD-CLB<br>3:21-cv-00103-MMD-CLB |

2

        Defendants-Appellees,

LITHIUM NEVADA CORPORATION,

        Intervenor-Defendant-Appellee.

---

BARTELL RANCH LLC; EDWARD BARTELL,

        Plaintiffs-Appellants,

and

WESTERN WATERSHEDS PROJECT; WILDLANDS DEFENSE; GREAT BASIN RESOURCE WATCH; BASIN AND RANGE WATCH,

        Plaintiffs,

RENO-SPARKS INDIAN COLONY; BURNS PAIUTE TRIBE; ATSA KOODAKUH WYH NUWU PEOPLE OF RED MOUNTAIN,

        Intervenor-Plaintiffs,

v.

ESTER M. MCCULLOUGH, District Manager; BUREAU OF LAND MANAGEMENT; U.S. DEPARTMENT OF THE INTERIOR,

No.   23-15262

D.C. Nos.
3:21-cv-00080-MMD-CLB
3:21-cv-00103-MMD-CLB

3

> Defendants-Appellees,
>
> LITHIUM NEVADA CORPORATION,
>
> Intervenor-Defendant-
> Appellee.

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted June 27, 2023
Pasadena, California

Before: N.R. SMITH, LEE, and VANDYKE, Circuit Judges.

Plaintiffs[1] appeal the district court's grant of partial summary judgment in favor of the Federal Defendants[2] and Lithium Nevada Corporation in Plaintiffs' actions challenging a BLM's approval of a Thacker Pass Lithium Mine Project (the "Project"). Bartell Ranch also appeals the district court's denial of its motion to admit extra-record evidence. We review the district court's grant of summary judgment de novo. *Te-Moak Tribe of W. Shoshone of Nev. v. U.S. Dep't of*

---

[1] We refer to Western Watersheds Project, Great Basin Resource Watch, Basin and Range Watch, and Wildlands Defense (collectively, "Western Watersheds"); Bartell Ranch, LLC, and Edward Bartell (collectively, "Bartell Ranch"); and the Burns Paiute Tribe collectively as the "Plaintiffs."

[2] We refer to Ester McCullough, the Bureau of Land Management ("BLM"), and the U.S. Department of Interior collectively as the "Federal Defendants."

*Interior*, 608 F.3d 592, 598 (9th Cir. 2010).  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.  Because judicial review of agency decisions under the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), and the Federal Land Policy and Management Act ("FLPMA") is governed by Section 706 of the Administrative Procedure Act, we will uphold the agency's action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.* (quoting 5 U.S.C. § 706(2)(A)).

A.  The BLM did not abuse its discretion in determinating that the Record of Decision ("ROD") does not authorize violations of applicable water-quality standards.  The ROD states that the BLM conditioned its approval on Lithium Nevada Corporation's compliance with "monitor[ing] groundwater sources according to [the Nevada Division of Environmental Protection (NDEP)] standards" and "maintain[ing] water quality and quantity for wildlife, livestock, and human consumption to State of Nevada standards."  The ROD also states that Lithium Nevada Corporation must "regularly monitor groundwater levels in designated wells" and "update the groundwater model with firsthand information."  Additionally, the ROD does not impermissibly harm the greater sage-grouse population, which are neither threatened nor endangered, *see* 43 C.F.R.

5

§ 3809.420(b)(7).  Thus, the BLM was not arbitrary, capricious, or otherwise not in accordance with law in complying with FLPMA's mandate "to prevent unnecessary or undue degradation of the lands."  43 U.S.C. § 1732(b).

B.  The BLM's approval of the Project was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with NEPA.  *See Or. Env't Council v. Kunzman*, 817 F.2d 484, 492 (9th Cir. 1987) ("The reviewing court may not substitute its judgment for that of the agency concerning the wisdom or prudence of a proposed action." (citation omitted)); *id.* ("The reviewing court may not 'fly speck' an [Environmental Impact Statement ('EIS')]." (citation omitted)).

First, the BLM properly addressed cumulative impacts in the Final Environmental Impact Statement ("FEIS"), *see* Notice of Availability of the Final Environmental Impact Statement for the Proposed Thacker Pass Project, 85 Fed. Reg. 78349, 78349 (Dec. 4, 2020), with a cumulative effects chapter that provided more than just vague and conclusory statements.  *See Ctr. for Cmty. Action & Env't Just. v. Fed. Aviation Admin.*, 61 F.4th 633, 645–47 (9th Cir. 2023).  The FEIS included cumulative effects study areas for 20 resources with supporting data, included a "Past and Present Actions" section that identified "[p]ast and present development projects and other actions" in the study area, and included a "Reasonably Foreseeable Future Actions" section that identified other development

6

predicted in the area.  Additionally, the BLM quantified impacts for many resources, including air quality.

Second, the FEIS "contain[ed] 'a reasonably complete discussion of possible mitigation measures'" for groundwater pollution, wildlife impacts (such as mitigation efforts for migratory birds, raptors, big game, nongame, and special status species), air pollution, and groundwater quantity, in compliance with NEPA.  *See Okanogan Highlands All. v. Williams*, 236 F.3d 468, 473 (9th Cir. 2000) (citation omitted).

Third, the BLM properly described baseline conditions for pronghorn antelope, greater sage-grouse, and other wildlife; and analyzed effects compared to these baselines, such as acknowledging habitat loss, in compliance with NEPA. *See Half Moon Bay Fishermans' Mktg. Ass'n v. Carlucci*, 857 F.2d 505, 508 (9th Cir. 1988) ("[A] reasonably thorough discussion of the significant aspects of the probable environmental consequences" satisfies NEPA. (citation omitted)).

Fourth, the BLM reasonably relied on springs and seeps baseflow data collected by contractor Piteau Associates ("Piteau") to create water resource

baselines in compliance with NEPA,[3] because the BLM "independently evaluate[d] the [FEIS] prior to its approval," 40 C.F.R. § 1506.5(c) (1978), *amended by* 40 C.F.R. § 1506.5 (2020), by requesting Piteau's datasets, providing comments on Piteau's reports, requesting supplemental information, and meeting with Piteau. *See id.*; *see also Friends of the Earth v. Hintz*, 800 F.2d 822, 835 (9th Cir. 1986) (citing *Save Our Wetlands, Inc. v. Sands*, 711 F.2d 634, 643 (5th Cir. 1983)).

Fifth, the BLM did not violate NEPA by failing to publicly produce records outside the formal NEPA process. *See, e.g.*, 40 C.F.R. §§ 1503.1–.4; Notice of Intent To Prepare a Draft Environmental Impact Statement and Resource Management Plan Amendment, 85 Fed. Reg. 3413, 3414 (Jan. 21, 2020); Notice of Availability of the Draft Environmental Impact Statement, 85 Fed. Reg. 45651, 45651 (July 29, 2020); 85 Fed. Reg. at 78349.

Sixth, the BLM took the requisite "hard look" at impacts on cultural resources in compliance with NEPA by "identif[ying] and document[ing]" historic

---

[3] In some instances zero-flow measurements were accurate and not the result of error; in other circumstances, the data collected by Piteau should have been "revised to say 'no measurement' as opposed to 'zero'" gallons per minute. However, the BLM's reliance on Piteau's results and methodology was not "arbitrary and capricious," because the BLM was aware of these discrepancies and explained that they were not material, and the FEIS still "conservatively assume[d] that there [was] a potential risk that drawdown associated with the mine could reduce baseflow to perennial springs." *See Idaho Wool Growers Ass'n v. Vilsack*, 816 F.3d 1095, 1105 (9th Cir. 2016).

properties "through archival background research and by conducting intensive pedestrian inventories," and by consulting three Tribes, which did "not raise[] any concerns about specific traditional areas, sacred sites, or ceremonial areas or activities in the Project area."

      C.  The BLM's identification of tribes for consultation was not arbitrary or capricious and did not violate NHPA, because the BLM reasonably and in good faith identified tribes for consultation, *see* 36 C.F.R. § 800.2(c)(2)(ii)(A).  There was no evidence before the BLM that suggested that the Burns Paiute Tribe attached religious or cultural significance to sites in the Project area.  The BLM contacted the Burns Paiute Tribe for consultation for an ethnographic assessment for the Winnemucca Resource Management Plan (RMP), which encompassed this area.  The Burns Paiute Tribe did not respond to these contacts; instead, its representative responded that the Burns Paiute Tribe "would defer consultation to the tribes that had reservations closer to the study area" and did not need to remain on the mailing list.  During the four other projects involving the Thacker Pass Project area, the BLM never had any information that the Burns Paiute Tribe claimed a cultural, religious, or historical interest in the Project area.

      2.  We review a district court's decision to remand without vacatur for an abuse of discretion.  *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1080 (9th

Cir. 2010). The district court did not abuse its discretion in ordering remand without vacatur. The district court correctly stated the legal standard and found that the BLM's sole error weighed against vacatur, *see Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015), and "there was 'at least a serious possibility that the [agency would] be able to substantiate its decision on remand,'" *see id.* (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993)).

    3. We "review the district court's decision to exclude extra-record evidence for an abuse of discretion." *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1447 (9th Cir. 1996) (citing *Friends of the Payette v. Horseshoe Bend Hydroelectric Co.*, 988 F.2d 989, 997 (9th Cir. 1993)). The district court did not abuse its discretion in denying Bartell Ranch's motion to admit extra-record evidence, because the evidence from December 2021 post-dates the ROD, *see Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018). Additionally, none of the *Lands Council* exceptions

apply to admit the extra-record evidence. *See Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).[4]

**AFFRIMED.**[5]

---

[4] We do not address whether the BLM violated FLPMA by approving the Project without requiring compliance with certain RMP provisions, because the district court awarded summary judgment to the Plaintiffs on the threshold issue; the Federal Defendants and Lithium Nevada Corporation did not appeal this issue; and, if the Plaintiffs disagree with the BLM's analysis on remand, they should make those arguments first to a district court on the appropriate record. We decline to address whether the BLM is required to inquire into the validity of Lithium Nevada Corporation's mining claims as to the water and power lines under *Center for Biological Diversity v. United States Fish and Wildlife Service*, 33 F.4th 1202 (9th Cir. 2022), because this argument was not specifically presented and developed before the district court. *See Villanueva v. California*, 986 F.3d 1158, 1164 n.4 (9th Cir. 2021).

[5] The motion of the Building and Construction Trades Council of Northern Nevada to become an amicus is GRANTED (Dkt. 72).